# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GROEB FARMS, INC. | ) | Case No. 13-58200 |
|  | ) |  |
| Debtor. | ) | Honorable Walter Shapero |
|  | ) |  |

---

**PLAN OF REORGANIZATION OF GROEB FARMS, INC.,**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

Judy A. O'Neill (P32142)
John A. Simon (P61866)
Tamar N. Dolcourt (P73425)
FOLEY & LARDNER, LLP
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI, 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800
*Proposed Counsel for the Debtor and*
*Debtor in Possession*

Dated: October 1, 2013

# TABLE OF CONTENTS

**ARTICLE I.**      **DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ..................................................................1
- A.    Defined Terms ...........................................................................................1
- B.    Rules of Interpretation ...........................................................................12
- C.    Computation of Time .............................................................................12
- D.    Governing Law .......................................................................................12
- E.    Reference to Monetary Figures ..............................................................13
- F.    Reference to the Debtor or the Reorganized Debtor ..............................13
- G.    Controlling Document ............................................................................13

**ARTICLE II.**      **DIP FACILITY CLAIMS, ADMINISTRATIVE CLAIMS, AND PRIORITY CLAIMS** ..............................................................................................**13**
- A.    Administrative Claims. ..........................................................................13
- B.    Professional Compensation ....................................................................14
- C.    DIP Facility Claims ...............................................................................14
- D.    Priority Tax Claims ...............................................................................15

**ARTICLE III.**      **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ......**15**
- A.    Classification of Claims and Interests ...................................................15
- B.    Summary of Classification .....................................................................15
- C.    Treatment of Claims and Interests. ........................................................16
- D.    Special Provision Governing Unimpaired Claims ..................................19
- E.    Subordinated Claims ..............................................................................19

**ARTICLE IV.**      **ACCEPTANCE REQUIREMENTS** ..........................................................**19**
- A.    Acceptance or Rejection of the Plan ......................................................19
- B.    Confirmation Pursuant to 1129(b) of the Bankruptcy Code....................20

**ARTICLE V.**      **MEANS FOR IMPLEMENTATION OF THE PLAN** ................................**20**
- A.    Restructuring Transactions .....................................................................20
- B.    Sources of Consideration for Plan Distributions ....................................20
- C.    New Subordinated Notes and New Warrants ..........................................21
- D.    General Unsecured Claims Litigation Trust ...........................................21
- E.    Corporate Existence ...............................................................................26
- F.    Vesting of Assets in the Reorganized Debtor .........................................26
- G.    Cancellation of Existing Securities ........................................................26
- H.    Corporate Action ...................................................................................27
- I.    New Management Incentive Plan ...........................................................27
- J.    Directors and Officers of the Reorganized Debtor .................................27
- K.    Effectuating Documents; Further Transactions ......................................28
- L.    Exemption from Certain Taxes and Fees ...............................................28
- M.    Preservation of Causes of Action ..........................................................28
- N.    Release of Avoidance Actions ...............................................................29

**ARTICLE VI.**      **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...............**29**
- A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ................................29

i

| | B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 29 |
| | C. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 29 |
| | D. | Insurance Policies | 30 |
| | E. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 30 |
| | F. | Reservation of Rights | 30 |
| | G. | Contracts and Leases Entered Into After the Petition Date | 31 |
| | H. | Nonoccurrence of Effective Date | 31 |
| | I. | Deferred Prosecution Agreement | 31 |
| **ARTICLE VII.** | | **PROVISIONS GOVERNING DISTRIBUTIONS** | **31** |
| | A. | Timing and Calculation of Amounts to Be Distributed | 31 |
| | B. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 31 |
| | C. | Securities Registration Exemption | 32 |
| | D. | Compliance with Tax Requirements | 32 |
| | E. | Allocations | 33 |
| | F. | No Postpetition Interest on Claims | 33 |
| | G. | Setoffs and Recoupment | 33 |
| | H. | Claims Paid or Payable by Third Parties | 33 |
| **ARTICLE VIII.** | | **PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** | **34** |
| | A. | Allowance of Claims or Interests | 34 |
| | B. | Claims Administration Responsibilities | 34 |
| | C. | Estimation of Claims | 34 |
| | D. | Adjustment to Claims or Interests without Objection | 34 |
| | E. | Time to File Objections to Claims | 35 |
| | F. | Disallowance of Claims or Interests | 35 |
| | G. | Amendments to Claims or Interests | 35 |
| | H. | No Distributions Pending Allowance | 35 |
| | I. | Distributions After Allowance. | 35 |
| **ARTICLE IX.** | | **SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** | **35** |
| | A. | Compromise and Settlement of Claims, Interests, and Controversies | 35 |
| | B. | Discharge of Claims and Termination of Interests | 36 |
| | C. | Release of Liens | 36 |
| | D. | **Debtor Release** | 36 |
| | E. | **Third Party Release** | 37 |
| | F. | Exculpation | 37 |
| | G. | Injunction | 38 |
| | H. | Subordination Rights | 39 |
| **ARTICLE X.** | | **CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN** | **39** |
| | A. | Conditions Precedent to the Confirmation Date | 39 |
| | B. | Conditions Precedent to the Effective Date | 39 |
| | C. | Waiver of Conditions | 40 |
| | D. | Effect of Non-Occurrence of Conditions to the Effective Date | 40 |
| **ARTICLE XI.** | | **MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** | **40** |
| | A. | Modification and Amendments | 40 |

ii

     B.     Effect of Confirmation on Modifications .................................................................41
     C.     Revocation or Withdrawal of the Plan .................................................................41

**ARTICLE XII.     RETENTION OF JURISDICTION** ...................................................................**41**

**ARTICLE XIII.    MISCELLANEOUS PROVISIONS** ...................................................................**43**
     A.     Immediate Binding Effect .................................................................43
     B.     Additional Documents .................................................................43
     C.     Payment of Statutory Fees.................................................................43
     D.     Dissolution of the Committee .................................................................43
     E.     Indemnification Provisions .................................................................43
     F.     Reservation of Rights.................................................................43
     G.     Successors and Assigns.................................................................44
     H.     Service of Documents .................................................................44
     I.     Term of Injunctions or Stays.................................................................44
     J.     Entire Agreement .................................................................44
     K.     Nonseverability of Plan Provisions .................................................................45

iii

## INTRODUCTION

Groeb Farms, Inc. (the "Debtor") proposes this plan of reorganization (together with the documents comprising the Plan Supplement, the "Plan") for the resolution of outstanding Claims against, and Interests in, the Debtor. Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*Accrued Professional Compensation*" means, at any given time, all accrued, contingent, and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting, and other services and reimbursement of expenses that are: (a) awardable and allowable under sections 328, 330, or 331 of the Bankruptcy Code or otherwise rendered allowable before the Effective Date by any retained estate Professional in the Chapter 11 Case or awardable and allowable under section 503 of the Bankruptcy Code, that the Court has not otherwise denied by Final Order; all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and after applying any retainer that has been provided to such Professional. To the extent that the Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation. For the avoidance of doubt, Accrued Professional Compensation includes unbilled fees and expenses incurred on account of services provided by Professionals that have not yet been submitted for payment, except to the extent that such fees and expenses are either denied or reduced by a Final Order by the Court or any higher court of competent jurisdiction.

2.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's Estates pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtor, (b) Allowed Fee Claims; (c) amounts owing pursuant to the DIP Order, and (e) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

3.    "*Administrative Claims Bar Date*" means the first Business Day that is 45 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

4.    "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

5.    "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim or Proof of Interest, as applicable, Filed by the applicable

1

Claims Bar Date (or for which Claim or Interest under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim is or shall not be required to be Filed), (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim or Proof of Interest, as applicable, has been timely Filed, or (c) a Claim or Interest Allowed pursuant to the Plan or a Final Order of the Court; *provided*, *however*, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest, as applicable, shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or such an objection is so interposed by the Debtor or the General Unsecured Claims Litigation Trustee, as applicable, and the Claim or Interest, as applicable, shall have been Allowed for voting purposes only by a Final Order. Any Claim or Interest that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Proof of Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Court.

6.      "*Approved*" means, with respect to the Class Action Settlement, that the Insurer has agreed to pay the Class Action Settlement Amount and the Bankruptcy Court and a United States District Court has approved the Class Action Settlement on a final basis.

7.      "*Available Insurance Proceeds*" means any applicable insurance proceeds to which the Debtor is entitled under its past and present insurance policies.

8.      "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor arising under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Case.

10.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Court.

11.      "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.      "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

13.      "*Causes of Action*" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, and usury; and any other defenses set forth in section 558 of the Bankruptcy Code, (e) any state or foreign law fraudulent transfer or similar claim; (f) any cause of action listed on the list of retained causes of action set forth in the Plan Supplement; (g) all Transshipping Claims; and (h) any cause of action described on the Debtor's Schedules or Statement of Financial Affairs. .

14.      "*Chapter 11 Case*" means the case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Court.

15.      "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

16.     "*Claims Bar Date*" means: (a) with respect to Governmental Units holding Claims that arose prior to the Petition Date, March 31, 2014, at 4:00 p.m., prevailing Pacific Time, or such other date established by the Court by which Proofs of Claims must have been Filed, and (b) with respect to all General Unsecured Claims arising prior to the Petition Date unless otherwise set forth in the Claims Bar Date Order, as well as Claims arising under section 503(b)(9) of the Bankruptcy Code, November 4, 2013, at 4:00 p.m., prevailing Pacific Time, or such other date established by the Court by which Proofs of Claims must have been Filed, in each case as set forth in further detail in the Claims Bar Date Order.

17.     "*Claims Bar Date Order*" means the an order granting the relief set forth in the *Debtor's First Day Motion for an Order Establishing Bar Date for Filing Proofs of Claim, Including 503(b)(9) Claims and Approving the Form and Manner of Notice Thereof.*

18.     "*Claims Objection Deadline*" means the deadline for objecting to a Claim, which shall be on the date that is the later of: (a) 180 days after the Effective Date, and (b) such other period of limitation as may be specifically fixed by the Debtor or the Reorganized Debtor, as applicable, or by an order of the Court for objecting to such Claims.

19.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

20.     "*Class*" means a category of holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

21.     "*Class Action*" means the prepetition uncertified class action lawsuits pending against the Debtor, captioned *Adee Honey Farms et al. v. Groeb Farms, Inc. et al.*, Case No. 13-cv-02922 (JBG), and *Moore's Honey Farm, et al. v. Groeb Farms, Inc.*, et al., Case No. 1:13-cv-02905, which have been consolidated in the United States District Court for the Northern District of Illinois.

22.     "*Class Action Claim*" means a Claim arising on account of the Class Action.

23.     "*Class Action Settlement*" means a settlement pursuant to which holders of Class Action Claims shall be entitled to receive the Class Action Settlement Amount, provided that the settlement has been Approved.

24.     "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code, if any.

25.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

26.     "*Confirmation Date*" means the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "*Confirmation Hearing*" means the hearing held by the Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

28.     "*Confirmation Order*" means a Final Order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance acceptable to the Senior Lender Affiliate.

29.     "*Consummation*" means the occurrence of the Effective Date.

30.     "*Convenience Class Distribution*" means a distribution in Cash to satisfy in full the Unsecured Convenience Class Claims; *provided* that such distribution shall not exceed $250,000.

31.     "*Court*" means the United States Bankruptcy Court for the Eastern District of Michigan having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157

and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Eastern District of Michigan.

32.    "*Cure Claim*" means a monetary Claim based upon the Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

33.    "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include:  (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (b) Cure Claims to be paid in connection therewith, and (c) procedures for resolution by the Court of any related disputes.

34.    "*Debtor*" has the meaning set forth in the Introduction.

35.    "*Deferred Prosecution Agreement*" means that certain agreement by and between the United States Attorney's Office for the Northern District of Illinois and Groeb Farms, dated as of February 11, 2013, including all attachments thereto.

36.    "*DIP Agreement*" means that certain senior secured debtor-in-possession financing agreement, dated as of October [__], 2013, by and among the Debtor and the DIP Lenders, as amended, supplemented, or otherwise modified from time to time.

37.    "*DIP Facility*" means the DIP Agreement, together with related loan, security, collateral, and other documents.

38.    "*DIP Facility Claims*" means those claims arising under the DIP Agreement, including any accrued but unpaid interest and fees due and owing under the DIP Agreement as of the Effective Date pursuant to the terms of the DIP Agreement, the DIP Order, and/or any related documents.

39.    "*DIP Lender*" means the Senior Lender, or an affiliate thereof, including but not limited to the Senior Lender Affiliate, as well as any successors or assigns, as permitted under the DIP Facility.

40.    "*DIP Order*" means the Final Order entered by the Court approving the DIP Facility and authorizing and directing the Debtor to enter into the DIP Facility.

41.    "*Disallowed*" means, with respect to any Claim or Interest, a Claim or Interest or any portion thereof that:  (a) has been disallowed by a Final Order, (b) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or Proof of Interest or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court or otherwise deemed timely filed under applicable law or this Plan, (c) is not Scheduled and as to which no Proof of Claim or Proof of Interest or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court or otherwise deemed timely filed under applicable law or this Plan, (d) has been withdrawn by agreement of the applicable Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

42.    "*Disclosure Statement*" means the *Disclosure Statement for the Plan of Reorganization of Groeb Farms, Inc. Pursuant to Chapter 11 of the Bankruptcy Code*, filed on the Petition Date, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

43.    "*Disputed*" means a Claim or Interest that is not yet Allowed.

44.    "*Disputed Claim Amount*"  means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim:  (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed

Claim, (ii) an amount agreed to by the Debtor or the Reorganized Debtor, as applicable, and the holder of such Disputed Claim, or (iii) if a request for estimation is Filed by any party, the amount at which such Disputed Claim is estimated by the Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim: (i) an amount agreed to by the Debtor or the Reorganized Debtor, as applicable, and the holder of such Disputed Claim, (ii) the amount estimated by the Court with respect to such Disputed Claim, (iii) the amount estimated in good faith by the Debtor or Reorganized Debtor, as applicable, with respect to the Disputed Claim; or (c) zero, if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was Filed, or deemed to have been Filed, by the applicable Claims Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Court.

45. "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtor and the Senior Lender Affiliate on which: (a) no stay of the Confirmation Order is in effect, (b) all conditions precedent specified in Article X.B have been satisfied or waived (in accordance with Article X.C), and (c) the Plan is declared effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

46. "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

47. "*Estate*" means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

48. "*Exculpated Claim*" means any Claim related to any act or omission derived from, based upon, related to, or arising from the Debtor's in or out-of-court restructuring efforts, the Chapter 11 Case, the marketing process, formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan (including any term sheets related thereto), or any contract, instrument, release, or other agreement or document created or entered into in connection with the marketing process, the Disclosure Statement, the Plan, the filing of the Chapter 11 Case, the pursuit of Consummation, and the administration and implementation of the Chapter 11 Cases and the Plan, including (a) the Restructuring Support Agreement, (b) the issuance of the New Equity, (c) the execution, delivery, and performance of the Exit Facility Documents, and (d) the distribution of property under the Plan or any other agreement; *provided*, *however*, the foregoing shall not be deemed to release, affect, or limit any of the rights and obligations of the Exculpated Parties from, or exculpate the Exculpated Parties with respect to, any of the Exculpated Parties' obligations or covenants arising under the Confirmation Order, the Plan, the Plan Supplement, the Exit Facility Documents, and any contracts, instruments, releases, and other agreements or documents delivered in connection with, or contemplated by, the foregoing.

49. "*Exculpated Parties*" means each of the following in their capacity as such: (a) the Senior Lender, (b) the Senior Lender Affiliate, (c) the DIP Lender, (d) the Committee, (e) holders of Senior Subordinated Note Claims that execute an Restructuring Support Agreement that has not been terminated as of the Effective Date, (f) each holder of Class 5A Claims that executes a New Trade Agreement, subject to any reservations on Claims and/or Causes of Action to the extent set forth in the Plan or the Plan Supplement, (g) with respect to the Debtor, the Reorganized Debtor, and each of the foregoing entities in clauses (a) through (g), such Person's current equity holders, including shareholders, partnership interest holders, and limited liability company unit holders, Affiliates, partners, subsidiaries, members, officers, directors, managers serving on a board of managers, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective predecessors, successors, and assigns (in each case, solely in their capacity as such);.

50. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

51. "*Existing Equity Interests*" means any equity interest in the Debtor in existence as of the Effective Date. For the avoidance of doubt, Existing Equity Interests do not include interest in New Equity.

52. "*Exit Facility*" means the new senior secured lending facility that the Reorganized Debtor will enter into on the Effective Date, the form of which shall be included in the Plan Supplement.

53. "*Exit Facility Documents*" means the documents evidencing the Exit Facility.

54. "*Exit Fees*" mean the fees payable under the Exit Facility Documents.

55. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

56. "*Fee Claim*" means a Claim for Accrued Professional Compensation.

57. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

58. "*Final Order*" means an order or judgment of the Court (or any other court of competent jurisdiction) entered by the Clerk of the Court (or any other court) on the docket in the Chapter 11 Case (or the docket of such other court), which has not been reversed, stayed, modified, amended, or vacated, and as to which: (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall be pending, or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with rule 8002 of the Bankruptcy Rules; *provided*, *however*, that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order; *provided further*, that the Senior Lender Affiliate may agree in its sole discretion to waive the requirement that a particular order be a Final Order.

59. "*First Day Declaration*" means the *Declaration of Jack Irvin, Jr. in Support of Chapter 11 Petition and First Day Pleadings*.

60. "*General Unsecured Claim*" means any Claim against the Debtor that is not: (a) an Administrative Claim, (b) a Priority Tax Claim, (c) an Other Priority Claim, (d) an Other Secured Claim, (e) a Senior Loan Claim, (f) a Senior Subordinated Note Claim, (g) a DIP Facility Claim, or (h) a Section 510(b) Claim. General Unsecured Claims specifically include the Junior Subordinated Note Claims and the Seller Note Claims.

61. "*General Unsecured Claims Litigation Trust*" means the trust established for the benefit of the General Unsecured Claims Litigation Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the General Unsecured Claims Litigation Trust Agreement.

62. "*General Unsecured Claims Litigation Trust Agreement*" means the trust agreement that, among other things, establishes the General Unsecured Claims Litigation Trust, and describes the powers, duties, and responsibilities of the General Unsecured Claims Litigation Trustee, which trust agreement shall be substantially in the form included in the Plan Supplement, in form and substance reasonably acceptable to the Debtor and the Committee, and acceptable to the Senior Lender Affiliate.

63. "*General Unsecured Claims Litigation Trust Assets*" means the General Unsecured Claims Litigation Trust Payment, the General Unsecured Claims Litigation Trust Causes of Action, and all proceeds of the foregoing.

64. "*General Unsecured Claims Litigation Trust Beneficiaries*" means, collectively, the holders of General Unsecured Claims Litigation Trust Interests.

65. "*General Unsecured Claims Litigation Trust Causes of Action*" means any and all actual or potential Avoidance Actions and Causes of Action, exclusive of: (a) any of the foregoing that are released under the

Plan; and (b) those Causes of Action (including Avoidance Actions) directly arising from or pertaining to contracts or relationships with the holders of Trade Claims.

66.     "*General Unsecured Claims Litigation Trust Distributable Proceeds*" means all actual proceeds of the General Unsecured Claims Litigation Trust Causes of Action.

67.     "*General Unsecured Claims Litigation Trust Expenses*" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Debtor or the Committee (or any designee thereof, including the General Unsecured Claims Litigation Trustee) on account of administration of the General Unsecured Claims Litigation Trust, including any reasonable administrative fees and expenses, reasonable attorney's fees and expenses, reasonable insurance fees, taxes, and reasonable escrow expenses.

68.     "*General Unsecured Claims Litigation Trust Interests*" means the non-transferable interests in the General Unsecured Claims Litigation Trust, distributions of which will be made to holders of certain Allowed General Unsecured Claims in accordance with Article III.C.5.

69.     "*General Unsecured Claims Litigation Trust Payment*" means a one-time, non-refundable payment of $50,000 in Cash to be provided by the Debtor or the Reorganized Debtor (through the Exit Facility) to the General Unsecured Claims Litigation Trust on the Effective Date, which payment shall be used either (i) to fund a distribution to holders of General Unsecured Claims Litigation Trust Interests, (ii) to provide funding in connection with the investigation and/or prosecution of the General Unsecured Claims Litigation Trust Causes of Action, and/or (iii) for such other purposes determined by the General Unsecured Claims Litigation Trustee in its sole discretion and consistent with the General Unsecured Claims Litigation Trust Agreement and applicable law.

70.     "*General Unsecured Claims Litigation Trustee*" means the Person identified in the Plan Supplement to serve as the trustee of the General Unsecured Claims Litigation Trust and any successor thereto appointed pursuant to the General Unsecured Claims Litigation Trust Agreement.

71.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

72.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

73.     "*Indemnification Provision*" means the Debtor's indemnification provisions currently in place (whether in the by-laws, certificates of incorporation, board resolutions, indemnification agreements, contracts or employment contracts) for the current directors, officers, and employees of the Debtor.

74.     "*Insurer*" means Chubb Group of Insurance Companies.

75.     "*Intercreditor Agreement*" means (i) that certain Intercreditor Agreement, dated as of January 30, 2012, by and among Wells Fargo Bank, National Association, on one hand, and Marquette Capital Fund I, LP, Argosy Investment Partners III, L.P., and Horizon Capital Partners III, L.P., on the other hand, and the other loan parties from time to time party thereto, governing, among other things, the respective rights, remedies, and priorities of Claims and Liens held by such parties, or any similar or related agreement (and as the same may have been modified, amended, or restated), for which the interest of Wells Fargo Bank, National Association, has been assigned to Senior Lender pursuant to a Loan Purchase Agreement, (ii) that certain Subordination Agreement, dated as of January 30, 2012, by and among Ernest L. Groeb, as shareholders' representative under the stock purchase agreement, and Wells Fargo Bank, National Association, for which the interest of Wells Fargo Bank, National Association, has been assigned to Senior Lender pursuant to a Loan Purchase Agreement, and (iii) any other applicable intercreditor agreements.

76.     "*Interests*" means the common stock, limited liability company interests, and any other equity, ownership, or profits interests of the Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtor (whether or not arising under or in connection with any employment agreement).

77.     "*Interim Compensation Order*" means an order by the Bankruptcy Court establishing interim compensation procedures for Professionals.

78.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

79.     "*Junior Subordinated Notes*" means approximately $1.5 million in issued and outstanding notes pursuant to that certain 8% junior subordinated note by and between GF Acquisition, Inc., and Ernest L. Groeb, due March 16, 2014 (as amended, restated, supplemented, or otherwise modified from time to time).

80.     "*Junior Subordinated Note Claims*" means any Claim arising under the Junior Subordinated Notes, which shall be treated as unsecured creditors under the Plan, as a result of the collateral securing such Claims having insufficient value to secure any of the Claim..

81.      "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

82.     "*Management Incentive Plan*" means that certain post-Effective Date management incentive plan (acceptable to the Senior Lender Affiliate), the terms of which shall be set forth in the Plan Supplement.

83.     "*New Board*" means the initial board of directors of the Reorganized Debtor, each of whom shall be acceptable to the Senior Lender Affiliate and disclosed in advance of the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

84.     "*New Equity*" means the equity in the Reorganized Debtor issued pursuant to the Plan, the terms of which shall be governed by the New Organizational Documents.

85.     "*New Equity Distribution Calculation*" means the following calculation, which shall be utilized to determine allocation of 100% of the New Equity between DIP Facility Claims and Senior Loan Claims:  holders of DIP Facility Claims shall receive a percentage of the New Equity equal to the ratio of $7 million divided by the aggregate sum of (i) $7 million and (ii) the Senior Loan Claims.  Holders of Senior Loan Claims shall receive the remaining New Equity after taking into account the distribution of New Equity to holders of DIP Facility Claims.

86.     "*New Intercreditor Agreement*" means the intercreditor agreement that will govern the relationship between the Exit Facility and the New Subordinated Notes, a form of which shall be included in the Plan Supplement, and the terms of which shall be acceptable to the Senior Lender Affiliate and the Senior Subordinated Noteholders that execute a Restructuring Support Agreement (that is not terminated prior to the Effective Date).

87.     "*New Organizational Documents*" means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of the Reorganized Debtor (reasonably acceptable to the Senior Lender Affiliate), which forms shall be included in the Plan Supplement.

88.     "*New Subordinated Notes*" means the notes that the Reorganized Debtor shall cause to be issued on the Effective Date to holders of Senior Subordinated Note Claims (and ancillary documents, including a security agreement), the form of which shall be set forth in the Plan Supplement, and the terms of which shall be  reasonably acceptable to the Senior Lender Affiliate and the Senior Subordinated Noteholders that execute a Restructuring Support Agreement (that is not terminated prior to the Effective Date).

89.     "*New Trade Agreement*" means a uniform trade agreement reasonably acceptable to the Debtor and the Senior Lender Affiliate, a form of which shall be included in the Plan Supplement.

90.     "*New Trade Terms*" means the terms of a New Trade Agreement.

91.     "*New Warrants*" means the warrants that the Reorganized Debtor shall cause to be issued on the Effective Date for 13% of New Equity of the Reorganized Debtor, subject to the terms set forth in the Plan Supplement, which shall be reasonably acceptable to the Senior Lender Affiliate and the Senior Subordinated Noteholders that execute a Restructuring Support Agreement (that is not terminated prior to the Effective Date).

92. "*Notice and Claims Agent*" means Kurtzman Carson Consultants, LLC.

93. "*Opt-Out Claim*" means a Class Action Claim of a holder that elects to opt-out of the Class Action Settlement in the event the Class Action is certified pursuant to Bankruptcy Rule 7023(b)(3) or Fed. R. Civ. P. 23(b)(3), as applicable.

94. "*Other General Unsecured Claims*" means General Unsecured Claims that are not Trade Claims, including, without limitation, Junior Subordinated Note Claims, Seller Note Claims, Opt-Out Claims, and Class Action Claims.

95. "*Other Priority Claim*" means any allowed Claim against the Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim (including a DIP Facility Claim); or (b) a Priority Tax Claim, to the extent such claim has not already been paid during the Chapter 11 Case.

96. "*Other Secured Claim*" means any Secured Claim against the Debtor that is not: (a) a DIP Claim, (b) a Senior Loan Claim, or (c) a Senior Subordinated Note Claim.

97. "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

98. "*Petition Date*" means September 30, 2013, the date on which the Debtor's Chapter 11 Case commenced.

99. "*Plan*" has the meaning set forth in the Introduction.

100. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (acceptable to the Senior Lender Affiliate and as amended, supplemented, or modified from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules), to be Filed seven (7) days before the Voting Deadline, and additional documents or amendments to previously Filed documents, Filed before the Effective Date as amendments to the Plan Supplement, including the following, as applicable: (a) New Organizational Documents, (b) the Exit Facility Documents, (c) Schedule of Assumed Executory Contracts and Unexpired Leases, (d) the General Unsecured Claims Litigation Trust Litigation Trust Agreement, (e) a list of retained Causes of Action, (f) the Management Incentive Plan, (g) a document listing the members of the New Boards, (h) the New Intercreditor Agreement; (*i*) the New Subordinated Notes, (j) the New Warrants; and (k) the New Trade Agreement. The Debtor shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date with the consent of the Senior Lender Affiliate; *provided*, *however*, that with respect to items (h), (*i*), and (j), any amendments must be reasonably satisfactory to holders of Senior Subordinated Note Claims that execute a Restructuring Support Agreement (that has not been terminated prior to the Effective Date).

101. "*Priority Claims*" means Priority Tax Claims and Other Priority Claims.

102. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

103. "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed interests under the Plan.

104. "*Professional*" means an Entity: (a) employed pursuant to a Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code, or (b) awarded compensation pursuant to section 503(b)(4) of the Bankruptcy Code.

105.    "*Professional Fee Account*" means an interest-bearing account to hold and maintain an amount of Cash equal to the Professional Fee Amount funded by the Debtor not later than two (2) Business Days prior to the Effective Date, solely for the purpose of paying all remaining Allowed and unpaid Fee Claims. Such Cash shall remain subject to the jurisdiction of the Court.

106.    "*Professional Fee Amount*" means the aggregate unpaid Fee Claims through the Effective Date as estimated in accordance with Article II.B.

107.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

108.    "*Proof of Interest*" means a proof of Interest Filed in the Debtor in the Chapter 11 Case.

109.    "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

110.    "*Released Party*" means each of the following, each in their capacity as such: (a) the Senior Lender; (b) the Senior Lender Affiliate; (c) the DIP Lender; (d) holders of Senior Subordinated Note Claims that execute an Restructuring Support Agreement that has not been terminated as of the Effective Date; (e) the Committee; (f) the Exit Facility Lender; (g) with respect each of the foregoing entities in clauses (a) through (f) such person's current and former shareholders, affiliates, partners, subsidiaries, members, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, together with their respective predecessors, successors, and assigns (in each case in their capacity as such); and (h) the Debtor and the Reorganized Debtor and each of their respective current shareholders, affiliates, partners, subsidiaries, members, officers, directors, principals, employees, agents, managed funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

111.    "*Reorganized Debtor*" means the Debtor on and after the Effective Date.

112.    "*Restructuring Support Agreement*" means each Restructuring Support Agreement, as amended, supplemented, or otherwise modified from time to time, copies of which are attached as exhibits to the First Day Declaration.

113.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto) of certain Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan, as set forth in the Plan Supplement, as amended from time to time prior to the Confirmation Date.

114.    "*Schedules*" means, to the extent required, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

115.    "*Section 510(b) Claims*" means any Claims arising from (a) rescission of a purchase or sale of a security of the Debtor, (b) purchase or sale of such a security, or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim, which for the avoidance of doubt shall not include Senior Subordinated Note Claims or Junior Subordinated Note Claims.

116.    "*Secured*" means when referring to a Claim, a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

117.     "*Secured Tax Claims*" means any Secured Claim against the Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

118.     "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

119.     "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state or local law.

120.     "*Seller Note*" means the unsecured note in favor of the Olesanik Family Living Trust with a current outstanding balance in the approximate amount of $423,762, which was assumed by the Debtor prior to the Petition Date.

121.     "*Seller Note Claims*" means Claims arising on account of the Seller Note.[1]

122.     "*Senior Lender*" means HC Capital Holding 0909A, LLC.

123.     "*Senior Lender Affiliate*" means Honey Financing Corporation.

124.     "*Senior Loan Agreement*" means that certain Credit and Security Agreement by and between the Debtor, as borrower, and the Senior Lender, as lender and successor to Wells Fargo Bank, National Association, dated as of January 30, 2012, including payment on account of any accrued but unpaid interest (including at the default contract rate, as applicable) (as amended, restated, supplemented, or otherwise modified from time to time).

125.     "*Senior Loan Claims*" means any Claim arising under the Senior Loan Agreement.

126.     "*Senior Loan Facility*" means the Senior Loan Agreement, together with related loan, security, collateral, and other documents.

127.     "*Senior Subordinated Notes*" means approximately $7.0 million in issued and outstanding notes claims pursuant to those certain 12% senior subordinated debentures by and among the Debtor and Miller's American Honey, Inc., on one hand, and Argosy Investment Partners III, L.P., Horizon Capital Partners III, L.P., and Marquette Capital Fund I, LP, on the other hand, due March 16, 2014 (as amended, restated, supplemented, or otherwise modified from time to time), plus all accrued and unpaid interest due as of the Petition Date.

128.     "*Senior Subordinated Note Claims*" means any Claim arising under the Senior Subordinated Notes.

129.     "*Trade Claim*" means a General Unsecured Claim that arises on account of products or services provided to the Debtor on an ongoing basis with which the Debtor will continue to conduct business with during the Chapter 11 Case and after the Effective Date.

130.     "*Trade Claim Distribution*" means the distribution made to holders of Trade Claims in amount equal to 40% in an Allowed amount of the Trade Claim, pursuant to a New Trade Agreement.

131.     "*Transshipping Claim*" means any Claim in favor of the Debtor arising from transshipping, any Claim in favor of the Debtor arising from the facts set forth in the Deferred Prosecution Agreement, or any Claim in favor of the Debtor arising from the facts set forth in the Information filed with the Deferred Prosecution Agreement.

---

[1] 4.1.1 Cap summary chart shows $440,000 outstanding as of 7/31/13.

132.    "*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Michigan.

133.    "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

134.    "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

135.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in cash.

136.    "*Unsecured Convenience Class Claim*" means any Allowed General Unsecured Claim, other than Trade Claims that receive treatment pursuant to Article III.C.5(b)(i) that is $7,500 or less.

137.    "*Voting Deadline*" means [December 13], 2013 at 5:00 p.m., prevailing Eastern Time.

## B.    Rules of Interpretation

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (13) references to "Proofs of Claim" and "Holders of Claim" shall include "Proofs of Interest" and "Holders of Interests" as applicable; and (14) any immaterial effectuating provisions may be interpreted by the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further Court order.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Michigan, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control),

and corporate or limited liability company governance matters; *provided that* corporate or limited liability company governance matters relating to the Debtor or the Reorganized Debtor, as applicable, not incorporated or formed (as applicable) in Michigan shall be governed by the laws of the state of incorporation or formation (as applicable) of the Debtor or Reorganized Debtor.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

G.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document). In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## DIP FACILITY CLAIMS, ADMINISTRATIVE CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims.*

Except with respect to Administrative Claims that are Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Case or a holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment with respect to such holder's Administrative Claim, each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release and discharge of, and in exchange for, its Administrative Claim, Cash equal to the unpaid portion of its Allowed Administrative Claim, to be paid on the latest of: (a) the Effective Date, or as soon as reasonably practicable thereafter, if such Administrative Claim is Allowed as of the Effective Date; (b) the date such Administrative Claim is Allowed, or as soon as reasonably practicable thereafter; (c) the date such Allowed Administrative Claim becomes due and payable, or as soon as reasonably practicable thereafter; *provided*, *however*, that Allowed Administrative Claims that arise in the ordinary course of the Debtor's businesses shall be paid in the ordinary course of business, in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions; or (d) such other date as may be agreed upon between the holder of such Allowed Administrative Claim and the Debtor or the Reorganized Debtor, as the case may be. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order. For purposes of this Plan, all Administrative Claims arising or granted under the DIP Order shall be deemed Allowed by Final Order.

Except as otherwise provided in this Article II.A or any prior applicable Court order, and except with respect to Administrative Claims that are Fee Claims or DIP Facility Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Allowed Administrative Claims by such date that are required to, but do not, File and serve a

request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Reorganized Debtor and the requesting party no later than 30 days after the Administrative Claims Bar Date.

B.    *Professional Compensation*

      1.    <u>Applications for and Payment of Fee Claims.</u>

In accordance with this Article II.B, on the Effective Date, the Debtor shall establish the Professional Fee Account. The Debtor shall fund the Professional Fee Account with Cash in the amount of the aggregate Professional Fee Amount (which amount, for clarity, shall include only unpaid and outstanding Fee Claims) for all Professionals. The Professional Fee Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Debtor's Estates except as otherwise provided in Article II.B.2 of the Plan.

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall provide an estimate of their Fee Claims before and as of the Effective Date and shall deliver such estimate to the Debtor and Senior Lender Affiliate no later than five (5) Business Days prior to the intended Effective Date. If a Professional does not provide an estimate, the Debtor, with the consent of the Senior Lender Affiliate, may estimate the unbilled fees and expenses of such Professional and such estimate will be used to establish the Professional Fee Amount attributable to that Professional. The total amount so estimated shall be the Professional Fee Amount.

      2.    <u>Final Fee Applications and Payment of Fee Claims.</u>

After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Court orders, the Allowed amounts of Fee Claims for Professionals shall be determined by the Court. The amount of Fee Claims owing to Professionals shall be paid in Cash to Professionals from funds held in the Professional Fee Account when such Fee Claims are Allowed by a Final Order. To the extent that funds held in the Professional Fee Account are unable to satisfy the amount of Fee Claims owing to the Professionals, any Professional whose estimate was lower than the Allowed amount of its Fee Claims shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II. After all Allowed Fee Claims have been paid in full to the extent required by Article II.B.2, any excess amounts in the Professional Fee Account shall be returned to or transferred to the Reorganized Debtor.

      3.    <u>Post-Effective Date Fees and Expenses.</u>

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, shall pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtor.

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

C.    *DIP Facility Claims*

Except to the extent that a holder of an Allowed DIP Facility Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, each such holder shall receive (i) its Pro Rata share of the New Equity based on the New Equity Distribution Calculation in satisfaction of $7 million of DIP Facility Claims and (ii) payment in full, in Cash, on the Effective Date or as soon as reasonably practicable after the Effective Date; *provided*, *however*, that to the extent the Commitment Fee (as defined in the DIP Agreement) has previously been paid and included as part of the DIP Facility Claim, an amount equal to the Commitment Fee shall be waived by the DIP Lender and the Allowed DIP

Facility Claim paid in Cash, as set forth in Article III(B) below, shall be reduced by such amount to reflect the waiver.

### D. *Priority Tax Claims*

The legal and equitable rights of the holders of Priority Tax Claims are Unimpaired under the Plan. Unless the holder of such Claim and the Debtor agree to a different treatment, holders of Priority Tax Claims shall be paid, to the extent such Claims are Allowed, in the ordinary course of the Debtor's business, consistent with past practice; *provided*, *however*, that in the event the balance of any such Claim becomes due during the pendency of this Chapter 11 Case and remains unpaid as of the Effective Date, the holder of such Claim shall be paid in full in Cash on the Effective Date. In the event an Allowed Priority Tax Claim also is Secured, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. *Classification of Claims and Interests*

Pursuant to section 1122 of the Bankruptcy Code, Claims and Interests, except for Fee Claims, Administrative Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date.

The categories of Claims and Interests set forth below classify all Claims against and Interests in the Debtor for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. The treatment with respect to each Class of Claims and Interests provided for in this Article III shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

### B. *Summary of Classification*

A creditor that holds multiple Claims against the Debtor, all of which Claims are based upon or relate to the same or similar indebtedness or obligations, whether by reason of guarantee, indemnity agreement, joint and several liability or otherwise, shall be deemed to have only one Claim against the Estate in an amount equal to the largest of all such similar Allowed Claims, solely for the purposes of distributions under the Plan. For purposes of voting on the Plan, any Creditor holding such similar Claims against the Debtor may only vote the largest of all such similar Allowed Claims; *provided*, *however*, that this provision shall not prohibit the bifurcation of Claims among Classes pursuant to section 506(a) of the Bankruptcy Code, nor shall this provision apply to bifurcated Claims.

The categories of Claims and Interests are classified for all purposes, including voting, confirmation, and distribution, pursuant to the Plan as follows:

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Senior Loan Claims | Impaired | Entitled to Vote |
| 4 | Senior Subordinated Note Claims | Impaired | Entitled to Vote |

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 5A | Trade Claims | Impaired | Entitled to Vote |
| 5B | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 5C | Unsecured Convenience Class Claim | Unimpaired | Deemed to Accept |
| 6 | Section 510(b) Claims | Impaired | Deemed to Reject |
| 7 | Existing Equity Interests | Impaired | Deemed to Reject |

C.    *Treatment of Claims and Interests*

1.    <u>Class 1 – Other Priority Claims</u>

(a)    *Classification*:  Class 1 consists of all Other Priority Claims.

(b)    *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such holder shall be paid, to the extent such claim has not already been paid during the Chapter 11 Case, in full in Cash in the ordinary course of business by the Debtor or the Reorganized Debtor, as applicable, on or as soon as reasonably practicable after (i) the Effective Date, or as soon thereafter as reasonably practicable, (ii) the date on which such Other Priority Claim against the Debtor becomes Allowed, or (iii) such other date as may be ordered by the Court.

(c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.    <u>Class 2 – Other Secured Claims</u>

(a)    *Classification*:  Class 2 consists of all Other Secured Claims.

(b)    *Treatment*:  On the Effective Date, except to the extent that a holder of an Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each holder of an Allowed Other Secured Claim shall receive, at the option of the Senior Lender Affiliate:  (i) payment in full in Cash, including the payment of interest allowable under section 506(b) of the Bankruptcy Code and/or section 511 of the Bankruptcy Code, if any; (ii) reinstatement pursuant to Section 1124 of the Bankruptcy Code; (iii) the collateral securing any such Allowed Other Secured Claim, or (iv) such other consideration so as to render such Allowed Other Secured Claim Unimpaired.

In the event an Allowed Other Secured Claim may also be classified as a Secured Tax Claim, such Claim shall:  (i) be paid in full in Cash, including the payment of interest under section 506(b) of the Bankruptcy Code and/or section 511 of the Bankruptcy Code, if any, or (ii) retain any lien until such Claim is paid in full (it being understood that such Other Secured Claim may be paid in the ordinary course as and when it comes due, rather than on the Effective Date).

(c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.    <u>Class 3 - Senior Loan Claims</u>

(a)    *Classification*:  Class 3 consists of all Senior Loan Claims.

(b)    *Allowance*:  To the extent any such amounts have not been previously satisfied pursuant to the DIP Credit Facility, the Senior Loan Claims shall be Allowed in an aggregate amount equal to approximately $16,570,949.08 million, plus interest and fees due and owing under the Senior Facility as of the Effective Date pursuant to the terms of the Senior Facility or related documents, including payment on account of any accrued but unpaid interest (including at the default contract rate pursuant to the terms of the Senior Facility, if applicable), which amount shall be subject to adjustment to an amount acceptable to the Senior Lender to the extent previously satisfied by the DIP Credit Facility.

(c)    *Treatment*:  On the Effective Date, except to the extent that a holder of a Senior Loan Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for the Allowed Senior Loan Claim, each holder of a Senior Loan Claim shall receive (i) Cash in satisfaction of any Allowed Senior Loan Claim in excess of $3 million and (ii) its Pro Rata share of the New Equity in the Reorganized Debtor based on the New Equity Distribution Calculation in satisfaction of all remaining Allowed Senior Loan Claims, after which, on the Effective Date the cash collateral pledged in favor of the Senior Lender to secure the Senior Loan Claims shall be released to its respective pledgers in accordance with their respective interests therein.

(d)    *Voting*:  Class 3 is Impaired under the Plan.  Therefore, holders of Class 3 Senior Loan Claims are entitled to vote to accept or reject the Plan.

4.    <u>Class 4 – Senior Subordinated Note Claims</u>

(a)    *Classification*:  Class 4 consists of all Senior Subordinated Note Claims.

(b)    *Allowance*:  Senior Subordinated Note Claims shall be Allowed in an aggregate amount equal to $7.0 million, plus accrued but unpaid interest as of the Petition Date.

(c)    *Treatment*:  On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of a Senior Subordinated Note Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Senior Subordinated Note Claim, each holder of a Senior Subordinated Note Claim shall receive its Pro Rata share of the (i) New Subordinated Notes and (ii) New Warrants.

(d)    *Voting*:  Class 4 is Impaired under the Plan.  Therefore, holders of Class 4 Senior Subordinated Note Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5A –Trade Claims</u>

(a)    *Classification*:  Class 5A consists of all Trade Claims.

(b)    *Treatment*:  On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a holder of an Allowed Trade Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Trade Claim, each holder of a Allowed Trade Claim shall receive either:

(i)    if such holder and the Debtor enter into a New Trade Agreement, a cash recovery equal to such holder's Trade Claim Distribution, which the

17

Reorganized Debtor shall satisfy by paying 110% on each invoice for products ordered post-Effective Date with each holder that executes a New Trade Agreement until the Trade Claim Distribution has been paid in full; *provided*, *however*, that the Reorganized Company shall satisfy the Trade Claim Distribution by no later than the date that is 18 months after the Effective Date; or

(ii) its Pro Rata share of the proceeds from the General Unsecured Claims Litigation Trust.

(c) *Voting*: Class 5A is Impaired under the Plan. Therefore, holders of Class 5A Trade Claims are entitled to vote to accept or reject the Plan.

6. <u>Class 5B - Other General Unsecured Claims</u>

(a) *Classification*: Class 5B consists of all Other General Unsecured Claims.

(b) *Treatment*: On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a holder of an Allowed Other General Unsecured Claim agrees to less favorable treatment, or agrees to be an Unsecured Convenience Class Claim, in full and final satisfaction, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other General Unsecured Claim, each holder of an Allowed Other General Unsecured Claim shall receive its Pro Rata share of the proceeds from the General Unsecured Claims Litigation Trust.

(c) *Voting*: Class 5B is Impaired under the Plan. Therefore, holders of Class 5B Other General Unsecured Claims are entitled to vote to accept or reject the Plan.

7. <u>Class 5C - Unsecured Convenience Class Claims</u>

(a) *Classification*: Class 5C consists of Unsecured Convenience Class Claims.

(b) *Treatment*: On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a holder of an Allowed Unsecured Convenience Class Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Unsecured Convenience Class Claim, each holder of an Allowed Unsecured Convenience Class Claim shall receive payment in full in Cash on account of such Allowed Unsecured Convenience Class Claim pursuant to the Convenience Class Distribution.

(c) *Voting*: Class 5C is Unimpaired under the Plan. Holders of Claims in Class 5C are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 5C Unsecured Convenience Class Claims are not entitled to vote to accept or reject the Plan.

8. <u>Class 6 - Section 510(b) Claims</u>

(a) *Classification*: Class 6 consists of all Section 510(b) Claims.

(b) *Treatment*: On the Effective Date, each Allowed Section 510(b) Claim shall be cancelled without any distribution and such holders of Section 510(b) Claims will receive no recovery.

(c) *Voting*: Class 6 is Impaired under the Plan. Holders of Claims in Class 6 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the

Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

9. <u>Class 7 - Existing Equity Interests</u>

    (a)    *Classification*: Class 7 consists of all Existing Equity Interests.

    (b)    *Treatment*: On the Effective Date, Existing Equity Interests shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancelation or otherwise, and there shall be no distribution to holders of Existing Equity Interests on account of such Existing Equity Interests.

    (c)    *Voting*: Class 7 is Impaired under the Plan. Therefore, holders of Claims in Class 7 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such holders are not entitled to vote to accept or reject the Plan.

D. *Special Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

E. *Subordinated Claims*

Except as otherwise provided in the Plan, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, including, without limitation, the Intercreditor Agreement. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to direct the Debtor to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.


**ARTICLE IV.**
**ACCEPTANCE REQUIREMENTS**

A. *Acceptance or Rejection of the Plan*

1. <u>Voting Classes</u>

Classes 3, 4, 5A and 5B are Impaired under the Plan and are entitled to vote to accept or reject the Plan.

2. <u>Conclusive Presumed Acceptance of the Plan</u>

Classes 1, 2, and 5C are Unimpaired under the Plan and therefore, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

3. <u>Deemed Not to Accept the Plan</u>

Classes 6 and 7 are Impaired under the Plan, and holders of Class 6 Claims and Class 7 Interests shall not receive or retain any property under the Plan on account of such Claims and Interests and are, therefore, deemed not to accept the Plan pursuant to section 1126(g) of the Bankruptcy Code.

*B.*     *Confirmation Pursuant to 1129(b) of the Bankruptcy Code*

The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Classes of Claims and Interests that vote, or are deemed, not to accept the Plan.  The Debtor reserves the right to modify the Plan in accordance with Article XI.A hereof, to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.*     *Restructuring Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including:  (i) the execution and delivery of the Exit Facility Documents and other appropriate agreements or other documents of restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to the Bankruptcy Code or applicable state law; and (iv) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

*B.*     *Sources of Consideration for Plan Distributions*

The Reorganized Debtor shall fund distributions under the Plan as follows:

1.     Cash Consideration

Except to the extent otherwise set forth herein, all Cash consideration necessary for the Reorganized Debtor to make payments or distributions pursuant hereto shall be obtained from proceeds of the Exit Facility or the Debtor's other Cash on hand, including Cash derived from business operations.  Further, the Debtor and the Reorganized Debtor will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtor to satisfy their obligations under the Plan.

2.     Issuance and Distribution of New Equity

On the Effective Date, the Reorganized Debtor shall issue the New Equity for distribution to holders of DIP Facility Claims and Senior Loan Claims in accordance with Article II.C and Article III herein.  The issuance of the New Equity shall be authorized without the need for any further corporate action and without any further action by the holders of Claims or Interests.

All of the shares of New Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  Each distribution and issuance of the New Equity under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the New Organizational Documents and the other instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

Notwithstanding anything to the contrary herein, in no event shall more than $10 million of DIP Facility Claims and Senior Loan Claims in the aggregate be satisfied with the New Equity.

3.      <u>Exit Facility</u>

On the Effective Date the Reorganized Debtor shall enter into the Exit Facility.  Confirmation shall be deemed approval of the Exit Facility to the extent not approved by the Court previously (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtor or the Reorganized Debtor in connection therewith), and the Reorganized Debtor is authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including the Exit Facility Documents, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtor and the Senior Lender Affiliate may deem to be necessary to consummate the Exit Facility.  Proceeds of the Exit Facility shall be used to satisfy obligations outstanding under the DIP Credit Facility and to provide necessary working capital for the Reorganized Debtor.

C.    *New Subordinated Notes and New Warrants*

On the Effective Date, the Reorganized Debtor shall issue the New Subordinated Notes and the New Warrants, the terms of which shall be set forth in the Plan Supplement, for distribution to holders of Senior Subordinated Note Claims in accordance with Article III herein; *provided, however*, that the aggregate amount of the New Subordinated Notes shall not exceed $3 million and the aggregate amount of the New Warrants shall not exceed 13% of the New Equity, subject to the terms set forth in the Plan Supplement.  The issuance of the New Subordinated Notes and the New Warrants shall be authorized without the need for any further corporate action and without any further action by the holders of Claims or Interests.

Each distribution and issuance of the New Subordinated Notes and the New Warrants under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

As set forth in the New Subordinated Notes and the New Intercreditor Agreement, the New Subordinated Notes shall have a security interest in the same assets of the Reorganized Debtor as granted under the Exit Facility Documents, provided that such security interest shall be junior to the security interest granted pursuant to the Exit Facility Documents.

D.    *General Unsecured Claims Litigation Trust*

1.      <u>Creation and Governance of the General Unsecured Claims Litigation Trust.</u>

On the Effective Date, the Debtor shall transfer to the General Unsecured Claims Litigation Trust the General Unsecured Claims Litigation Trust Assets and Avoidance Actions.  The Debtor and the General Unsecured Claims Litigation Trustee shall execute the General Unsecured Claims Litigation Trust Agreement and shall take all steps necessary to establish the General Unsecured Claims Litigation Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the General Unsecured Claims Litigation Trust Beneficiaries.  In the event of any conflict between the terms of the Plan and the terms of the General Unsecured Claims Litigation Trust Agreement, the terms of the Plan shall govern.  Additionally, on the Effective Date the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the General Unsecured Claims Litigation Trust all of its rights, title, and interest in and to all of the General Unsecured Claims Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the General Unsecured Claims Litigation Trust Assets shall automatically vest in the General Unsecured Claims Litigation Trust free and clear of all Claims, liens, encumbrances, or interests subject only to:  (a) General Unsecured Claims Litigation Trust Interests, and (b) the expenses of the General Unsecured Claims Litigation Trust, as provided for in the General Unsecured Claims Litigation Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.  The General Unsecured Claims Litigation Trustee shall be the exclusive trustee of the assets of the General Unsecured Claims Litigation Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The General Unsecured Claims Litigation Trust shall be governed by the General Unsecured Claims Litigation Trust Agreement and administered by the General Unsecured Claims

Litigation Trustee. The powers, rights, and responsibilities of the General Unsecured Claims Litigation Trustee shall be specified in the General Unsecured Claims Litigation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this Article V.D. The General Unsecured Claims Litigation Trustee shall hold and distribute the General Unsecured Claims Litigation Trust Assets in accordance with the provisions of the Plan and the General Unsecured Claims Litigation Trust Agreement. Other rights and duties of the General Unsecured Claims Litigation Trustee and the General Unsecured Claims Litigation Trust Beneficiaries shall be as set forth in the General Unsecured Claims Litigation Trust Agreement. After the Effective Date, the Debtor and the Reorganized Debtor shall have no interest in the General Unsecured Claims Litigation Trust Assets except as set forth in the General Unsecured Claims Litigation Trust Agreement. In connection with the vesting and transfer of the General Unsecured Claims Litigation Trust Assets (including any General Unsecured Claims Litigation Trust Causes of Action) to the General Unsecured Claims Litigation Trust, any attorney-client, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral) expressly transferred to the General Unsecured Claims Litigation Trust shall vest in the General Unsecured Claims Litigation Trust. The Debtor and the General Unsecured Claims Litigation Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, protections, and immunities, to the extent the Debtor so desires.

2.      <u>Purpose of the General Unsecured Claims Litigation Trust.</u>

The General Unsecured Claims Litigation Trust shall be established for the purpose of pursuing or liquidating the General Unsecured Claims Litigation Trust Assets, distributing the General Unsecured Claims Litigation Trust Distributable Proceeds, if any, reconciling (and, if agreed to by the Debtor or the Reorganized Debtor, objecting to) General Unsecured Claims as provided for in the Plan and, if, as, and to the extent determined by the General Unsecured Claims Litigation Trustee pursuant to the General Unsecured Claims Litigation Trust Agreement, distributing the General Unsecured Claims Litigation Trust Payment to the General Unsecured Claims Litigation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

3.      <u>General Unsecured Claims Litigation Trustee and General Unsecured Claims Litigation Trust Agreement.</u>

The General Unsecured Claims Litigation Trust Agreement generally will provide for, among other things: (a) the payment of the General Unsecured Claims Litigation Trust Expenses, (b) the payment of other reasonable expenses of the General Unsecured Claims Litigation Trust, including the cost of pursuing the General Unsecured Claims Litigation Trust Causes of Action, (c) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation, (d) the investment of Cash by the General Unsecured Claims Litigation Trustee within certain limitations, including those specified in the Plan, (e) the orderly liquidation of the General Unsecured Claims Litigation Trust Assets, and (f) litigation of any General Unsecured Claims Litigation Trust Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such General Unsecured Claims Litigation Trust Causes of Action.

Except as otherwise ordered by the Bankruptcy Court, the General Unsecured Claims Litigation Trust Expenses shall be paid from the General Unsecured Claims Litigation Trust Assets in accordance with the Plan and General Unsecured Claims Litigation Trust Agreement.

The General Unsecured Claims Litigation Trustee, on behalf of the General Unsecured Claims Litigation Trust, may employ, without further order of the Bankruptcy Court, professionals (including Professionals previously retained by the Creditors' Committee) to assist in carrying out its duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the General Unsecured Claims Litigation Trust Assets in accordance with the Plan and the General Unsecured Claims Litigation Trust Agreement; *provided*, *however*, that the General Unsecured Claims Litigation Trustee shall provide ten Business Days' notice to the Reorganized Debtor before the payment of any such professional fees and expenses.

The General Unsecured Claims Litigation Trust Agreement may include reasonable and customary provisions that allow for indemnification by the General Unsecured Claims Litigation Trust. Any such

indemnification shall be the sole responsibility of the General Unsecured Claims Litigation Trust and payable solely from the General Unsecured Claims Litigation Trust Assets.

In furtherance of and consistent with the purpose of the General Unsecured Claims Litigation Trust and the Plan, the General Unsecured Claims Litigation Trustee, for the benefit of the General Unsecured Claims Litigation Trust, shall: (a) hold the General Unsecured Claims Litigation Trust Assets for the benefit of the General Unsecured Claims Litigation Trust Beneficiaries, (b) make distributions of General Unsecured Claims Litigation Trust Distributable Proceeds as provided herein and in the General Unsecured Claims Litigation Trust Agreement, and (c) have the power and authority to prosecute and resolve any General Unsecured Claims Litigation Trust Causes of Action, without approval of the Bankruptcy Court. The General Unsecured Claims Litigation Trustee shall be responsible for all decisions and duties with respect to the General Unsecured Claims Litigation Trust and the General Unsecured Claims Litigation Trust Assets, except as otherwise provided in the General Unsecured Claims Litigation Trust Agreement. In all circumstances, the General Unsecured Claims Litigation Trustee shall act in the best interests of the General Unsecured Claims Litigation Trust Beneficiaries and with the same fiduciary duties as a Chapter 7 trustee.

4.    Compensation and Duties of the General Unsecured Claims Litigation Trustee.

The salient terms of the General Unsecured Claims Litigation Trustee's employment, including the General Unsecured Claims Litigation Trustee's duties and compensation shall be set forth in the General Unsecured Claims Litigation Trust Agreement. The General Unsecured Claims Litigation Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

5.    Cooperation of Reorganized Debtor.

The Reorganized Debtor, upon reasonable notice, shall be required to provide information and access to pertinent documents, to the extent the Reorganized Debtor has such information and/or documents, to the General Unsecured Claims Litigation Trustee sufficient to enable the General Unsecured Claims Litigation Trustee to perform its duties hereunder. The Reorganized Debtor shall reasonably cooperate with the General Unsecured Claims Litigation Trustee in the administration of the General Unsecured Claims Litigation Trust, including, in providing documentation, witness testimony, and other evidence in support of the prosecution of the General Unsecured Claims Litigation Trust Causes of Action, at no cost or expense of the General Unsecured Claims Litigation Trust other than out of pocket expenses for copying or similar expenses; provided however, that such cooperation shall not involve violation of an attorney client privilege, unless agreed to by the Reorganized Debtor.

6.    United States Federal Income Tax Treatment of the General Unsecured Claims Litigation Trust.

For all United States federal income tax purposes, the parties shall treat the transfer of the General Unsecured Claims Litigation Trust Assets to the General Unsecured Claims Litigation Trust as: (a) a transfer of the General Unsecured Claims Litigation Trust Assets directly to the applicable holders of Allowed General Unsecured Claims, followed by (b) the transfer by the holders of such Allowed General Unsecured Claims to the General Unsecured Claims Litigation Trust of such General Unsecured Claims Litigation Trust Assets in exchange for the General Unsecured Claims Litigation Trust Interests; *provided*, *however*, that the General Unsecured Claims Litigation Trust Assets will be subject to any post-Effective Date obligations incurred by the General Unsecured Claims Litigation Trust relating to the pursuit of General Unsecured Claims Litigation Trust Assets. Accordingly, the General Unsecured Claims Litigation Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the General Unsecured Claims Litigation Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

7.    Tax Reporting.

(a)    The General Unsecured Claims Litigation Trustee shall file tax returns for the General Unsecured Claims Litigation Trust treating the General Unsecured Claims Litigation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(b)    Except to the extent definitive guidance from the Internal Revenue Service or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations, the

receipt by the General Unsecured Claims Litigation Trustee of a private letter ruling if the General Unsecured Claims Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the General Unsecured Claims Litigation Trustee) indicates that such valuation is not necessary to maintain the treatment of the General Unsecured Claims Litigation Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as reasonably practicable after the General Unsecured Claims Litigation Trust Assets are transferred to the General Unsecured Claims Litigation Trust, the General Unsecured Claims Litigation Trustee shall make a good faith valuation of the General Unsecured Claims Litigation Trust Assets. Such valuation shall be made available from time to time to all parties to the General Unsecured Claims Litigation Trust Agreement, to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(c)     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the General Unsecured Claims Litigation Trustee of a private letter ruling if the General Unsecured Claims Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the General Unsecured Claims Litigation Trustee), allocations of General Unsecured Claims Litigation Trust taxable income or loss shall be allocated by reference to the manner in which any economic gain or loss would be borne immediately after a hypothetical liquidating distribution of the remaining General Unsecured Claims Litigation Trust Assets. The tax book value of the General Unsecured Claims Litigation Trust Assets for purpose of this paragraph shall equal their fair market value on the date the General Unsecured Claims Litigation Trust Assets are transferred to the General Unsecured Claims Litigation Trust, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(d)     The General Unsecured Claims Litigation Trustee shall be responsible for payment, out of the General Unsecured Claims Litigation Trust Assets, of any taxes imposed on the General Unsecured Claims Litigation Trust or its assets.

(e)     The General Unsecured Claims Litigation Trustee shall distribute such notices to the General Unsecured Claims Litigation Trust Beneficiaries as the General Unsecured Claims Litigation Trustee determines are necessary or desirable.

8.     <u>General Unsecured Claims Litigation Trust Assets</u>.

The General Unsecured Claims Litigation Trustee shall, in consultation with the Reorganized Debtor, have the exclusive right on behalf of the General Unsecured Claims Litigation Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release, or withdraw any and all General Unsecured Claims Litigation Trust Causes of Action without any further order of the Bankruptcy Court, except as otherwise provided herein or in the General Unsecured Claims Litigation Trust Agreement; *provided*, *however*, that such consultation shall be subject to the execution and delivery of one or more joint interest, common interest, or other similar agreements in form and substance reasonably acceptable to the General Unsecured Claims Litigation Trustee and the Reorganized Debtor. From and after the Effective Date, the General Unsecured Claims Litigation Trustee, in accordance with section 1123(b)(3) of the Bankruptcy Code, and on behalf of the General Unsecured Claims Litigation Trust, shall serve as a representative of the Estates and shall, in consultation with the Reorganized Debtor, retain and possess the right to commence, pursue, settle, compromise, or abandon, as appropriate, any and all Causes of Action constituting General Unsecured Claims Litigation Trust Causes of Action in any court or other tribunal. The General Unsecured Claims Litigation Trustee shall provide the Reorganized Debtor with periodic reporting relating to the status of the General Unsecured Claims Litigation Trust Causes of Action.

For the avoidance of doubt, the General Unsecured Litigation Trust Assets shall not include any Claim or Cause of Action against a Released Party. Also for the avoidance of doubt, any proceeds of the General Unsecured Claims Litigation Trust shall be distributed Pro Rata to holders of Allowed Class 5B Claims and holders of Allowed Class 5A Claims that do not enter into a New Trade Agreement with the Debtor.

9.    General Unsecured Claims Litigation Trust Fees and Expenses.

From and after the Effective Date, the General Unsecured Claims Litigation Trustee, on behalf of the General Unsecured Claims Litigation Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the General Unsecured Claims Litigation Trust and any professionals retained by the General Unsecured Claims Litigation Trust from the General Unsecured Claims Litigation Trust Assets, except as otherwise provided in the General Unsecured Claims Litigation Trust Agreement.

10.    Distribution of Unrestricted Cash.

The General Unsecured Claims Litigation Trustee shall distribute to the General Unsecured Claims Litigation Trust Beneficiaries on account of their interests in the General Unsecured Claims Litigation Trust, at least annually, its net income plus all net proceeds from the sale of assets, except that the General Unsecured Claims Litigation Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the General Unsecured Claims Litigation Trust Assets or to satisfy Claims and contingent liabilities or pay anticipated fees and expenses.

11.    General Unsecured Claims Litigation Trust Funding.

The funding by the Debtor of the General Unsecured Claims Litigation Trust Payment shall be authorized and approved, as of the Effective Date, in all respects, without need for the consent of or notice to any Person, notwithstanding any contrary provision in any financing and/or other agreement between the Debtor or the Reorganized Debtor and any other Person, and any such contrary provision shall be deemed null and void to the extent necessary to permit such funding.

12.    Distributions to General Unsecured Claims Litigation Trust Beneficiaries.

The General Unsecured Claims Litigation Trustee may, in its discretion, distribute any portion of the General Unsecured Claims Litigation Trust Payment to the General Unsecured Claims Litigation Trust Beneficiaries at any time and/or use such funds, provided that such distribution or use is for any purpose permitted under the Plan, the General Unsecured Claims Litigation Trust Agreement, and applicable law.

13.    Cash Investments.

The General Unsecured Claims Litigation Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided, however,* that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

14.    Dissolution of the General Unsecured Claims Litigation Trust.

The General Unsecured Claims Litigation Trustee and the General Unsecured Claims Litigation Trust shall be discharged or dissolved, as the case may be, at such time as: (a) the General Unsecured Claims Litigation Trustee determines that the pursuit of additional General Unsecured Claims Litigation Trust Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such claims, and (b) all distributions of General Unsecured Claims Litigation Trust Distributable Proceeds required to be made by the General Unsecured Claims Litigation Trustee to the General Unsecured Claims Litigation Trust Beneficiaries under the Plan have been made, but in no event shall the General Unsecured Claims Litigation Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such

third anniversary (and, in the event of further extension by agreement of the Reorganized Debtor and the General Unsecured Claims Litigation Trustee, at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the General Unsecured Claims Litigation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the General Unsecured Claims Litigation Trust Assets. Upon dissolution of the General Unsecured Claims Litigation Trust, any remaining General Unsecured Claims Litigation Trust Assets shall be distributed first to all General Unsecured Claims Litigation Trust Beneficiaries in accordance with the Plan and the General Unsecured Claims Litigation Trust Agreement as appropriate; *provided, however*, that if the General Unsecured Claims Litigation Trustee reasonably determines that such remaining General Unsecured Claims Litigation Trust Assets are insufficient to render a further distribution practicable, or exceed the amounts required to be paid under the Plan, the General Unsecured Claims Litigation Trustee may transfer such remaining funds to a charitable institution qualified as a not-for-profit corporation under applicable federal and state laws selected by the General Unsecured Claims Litigation Trustee.

E.     *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the Debtor, as the Reorganized Debtor, shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which the Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan, replaced by the New Organizational Documents, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

F.     *Vesting of Assets in the Reorganized Debtor*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date all property in the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges, or other encumbrances, except for Liens securing the Exit Facility, if applicable.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

G.     *Cancellation of Existing Securities*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date:  (1) the obligations of the Debtor under the DIP Agreement, the Senior Loan Agreement, the Senior Subordinated Notes, the Seller Notes, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest shall be cancelled solely as to the Debtor, and the Reorganized Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be released and discharged; *provided, however*, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of enabling holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein; *provided further, however*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtor, except to

the extent set forth in or provided for under the Plan. On and after the Effective Date, all duties and responsibilities of the DIP Lender under the DIP Facility and the Senior Lender under the Senior Loan Facility shall be discharged unless otherwise specifically set forth in or provided for under the Plan.

## H.    Corporate Action

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including, as applicable: (1) the issuance of the New Equity; (2) selection of the directors and officers for the Reorganized Debtor; (3) execution and delivery of the Exit Facility Documents; (4) adoption of the Management Incentive Plan; (5) implementation of the restructuring transactions contemplated by this Plan; and (6) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor or the Reorganized Debtor. On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor. The authorizations and approvals contemplated by this Article V.H shall be effective notwithstanding any requirements under nonbankruptcy law.

## I.    New Management Incentive Plan

Subject to the terms of the New Management Incentive Plan, a form of which shall be included in the Plan Supplement, as soon as reasonably practicable after the Effective Date, the new board of directors of Reorganized Debtor shall be authorized to adopt the New Management Incentive Plan pursuant to which options, warrants, or another form of consideration to acquire up to 10% of the New Equity of the Reorganized Debtor shall be allocable at the discretion of the New Board of the Reorganized Debtor.

To the extent required under the Plan or applicable nonbankruptcy law, the Reorganized Debtor will file its New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in the state, province, or country of incorporation in accordance with applicable corporate laws. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents of the Reorganized Debtor will prohibit the issuance of non-voting equity securities and provide for the other restrictions required therein. After the Effective Date, the Reorganized Debtor may amend and restate its New Organizational Documents and other constituent documents as permitted by applicable corporate laws and the New Organizational Documents.

## J.    Directors and Officers of the Reorganized Debtor

As of the Effective Date, the term of the current members of the board of directors of the Debtor shall expire, and the initial boards of directors, including the New Board, as well as the officers of the Reorganized Debtor, shall be appointed in accordance with the New Organizational Documents and other constituent documents of the Reorganized Debtor.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtor will disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial Reorganized Debtor Board, as well as those Persons that will serve as an officer of the Reorganized Debtor. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtor.

K.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtor, and the officers and members of the New Board, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Equity, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except those expressly required pursuant to the Plan.  In furtherance of the foregoing, any New Organizational Documents which is contractual in nature (such as a stockholders agreement or limited liability company agreement) shall, upon the Effective Date, be deemed to become valid, binding and enforceable in accordance with its terms as to all Persons intended to be bound thereby.

L.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.[2]

M.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article IX and Article V.E hereof, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.  **To the fullest extent permitted by applicable law, no Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Debtor or Reorganized Debtor, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise set forth herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtor.  The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action, except to the extent transferred to the General Unsecured Claims Litigation Trust hereunder.  Subject to Article V.D, hereof, the Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

---

[2]     Foley note:  Consider deleting this due to 6th Circuit law.

N.      *Release of Avoidance Actions*

On the Effective Date, except as otherwise set forth herein, in the Plan Supplement, or in the Confirmation Order, the Debtor shall release any and all Avoidance Actions against the Released Parties, the Debtor and the Reorganized Debtor, and any of their successors or assigns and any Entity acting on behalf of the Debtor or the Reorganized Debtor shall be deemed to have waived the right to pursue any and all Avoidance Actions.

# ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed rejected, other than those that are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases or are the subject of pending motions to assume on the Effective Date.

Entry of the Confirmation Order shall constitute a Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated or set forth in a motion or order relating to the same, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption under applicable federal law. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Court on or after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within thirty (30) days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection; *provided*, *however*, that any such Rejection Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be subject to the cap on rejection damages imposed by section 502(b) of the Bankruptcy Code. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, the Reorganized Debtor, the Estate, or property of the foregoing parties, without the need for any objection by the Debtor or the Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of the Court. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as Other General Unsecured Claims and shall be treated in accordance with Article III.C.5 of the Plan, as applicable.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Claims under an Executory Contract and Unexpired Lease, as reflected on the Cure Notice shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the such Cure Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any Cure Claims, (2) the ability of the Reorganized Debtor or any assignee, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, payments on Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

At least fourteen (14) days before the Confirmation Hearing, the Debtor shall distribute, or cause to be distributed, Cure Notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served and actually received by the Debtor at least three (3) Business Days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or amount of the Cure Claim in the Cure Notice will be deemed to have assented to such assumption or amount of the Cure Claim. Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Schedule of Rejected Executory Contracts and Unexpired Leases after such 14-day deadline, a Cure Notice of proposed assumption and proposed amounts of Cure Claims with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or Unexpired Lease can be assumed.

In any case, if the Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtor or the Reorganized Debtor, at the direction of the Senior Lender Affiliate, will have the right to add such Executory Contract or Unexpired Lease to the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtor assumes such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and for which the Cure Claim has been paid shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Court.

D.     *Insurance Policies*

All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, unless otherwise identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtor shall be deemed to have rejected all insurance policies and any agreements, documents, and instruments related thereto.

E.     *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan, or subject to a motion to reject such agreement.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F.     *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, or, after the Effective Date, the

Reorganized Debtor shall have twenty-eight (28) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

G.      *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

H.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      *Deferred Prosecution Agreement*

Nothing herein, in the Confirmation Order, or in any other document or order in this Chapter 11 Case shall affect the respective rights and obligations of the United States and the Debtor under the Deferred Prosecution Agreement. In accordance with the requirement set forth in section 17 of the Deferred Prosecution Agreement, the Debtor obligations under the Deferred Prosecution Agreement shall be binding upon the Reorganized Debtor and the rights and benefits of the Debtor under the Deferred Prosecution Agreement shall bestow to the benefit of the Reorganized Debtor.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim (or such holder's Affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Debtor shall have no obligation to recognize any transfer of Claims occurring on or after the Effective Date.

B.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Delivery of Distributions

(a)      Delivery of Distributions to DIP Lender

Except as otherwise provided in the Plan, all distributions to holders of Allowed DIP Facility Claims shall be governed by the DIP Agreement and shall be deemed completed when made to the DIP Lender.

(a)     Delivery of Distributions to Senior Lender

Except as otherwise provided in the Plan, all distributions to holders of Senior Loan Claims shall be governed by the Senior Loan Agreement and shall be deemed completed when made to the Senior Lender.

(b)     Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims (other than holders of DIP Facility Claims and Senior Loan Claims) shall be made to:  (1) to the signatory set forth on any of the Proofs of Claim Filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtor has not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Case on the holder's behalf.  Subject to this Article VII, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtor, the Reorganized Debtor and the General Unsecured Claims Litigation Trustee shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

2.     <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date; *provided further* that undeliverable distributions to holders of General Unsecured Claims Litigation Trust Beneficiaries shall revert back to the General Unsecured Claims Litigation Trust.  After such date, all unclaimed property or interests in property shall be redistributed Pro Rata (it being understood that, for purposes of this Article VII.B.2, "Pro Rata" shall be determined as if the Claim underlying such unclaimed distribution had been Disallowed) without need for a further order by the Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

C.     *Securities Registration Exemption*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of securities, including the New Equity, as contemplated by Article III.B of the Plan, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  In addition, under section 1145 of the Bankruptcy Code, such New Equity will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, any applicable terms and limitations set forth in the New Organizational Documents and the New Warrants, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any transfer of such Securities or instruments.

D.     *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the General Unsecured Claims Litigation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made from the General Unsecured Claims Litigation Trust under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of

information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor and the General Unsecured Claims Litigation Trustee reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

E.      Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

F.      No Postpetition Interest on Claims

Unless otherwise specifically provided for in the DIP Order, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

G.      Setoffs and Recoupment

The Debtor or the Reorganized Debtor may (with the Senior Lender Affiliate's consent), but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such Claim it may have against the holder of such Claim.

H.      Claims Paid or Payable by Third Parties

1.      Claims Paid by Third Parties

The Debtor or the Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to the Reorganized Debtor to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers

under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims or Interests*

After the Effective Date, the Debtor or the Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim. Any Claim or Interest that is subject to the Claims Bar Date and as of the Claims Bar Date has been listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Proof of Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Court.

Notwithstanding anything to the contrary herein, a Class Action Claim shall not be an Allowed Class Action Claim at any time prior to a final determination as to Approval of the Class Action Settlement. If the Class Action Settlement is denied on a final basis, the Debtor, the General Unsecured Claims Litigation Trustee, or the Reorganized Debtor, as applicable, shall have thirty (30) days following the date upon which the Class Action Settlement was denied on a final basis to object to any Proofs of Claim filed in respect to Class Action Claims.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtor, by order of the Court, shall have the sole authority to: (1) File, withdraw, or litigate to judgment objections to Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court.

C.      *Estimation of Claims.*

Before or after the Effective Date, the Debtor or the Reorganized Debtor may (but are not required to) at any time request that the Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Court. In the event that the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), absent an objection to the same by the Claim holder prior to the Voting Deadline, and the Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

D.      *Adjustment to Claims or Interests without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtor or the Reorganized Debtor without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court.

E.    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

F.    *Disallowance of Claims or Interests*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor, the Reorganized Debtor or the General Unsecured Claims Litigation Trustee, as applicable.  All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim or Proofs of Interest filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and holders of such Claims or Interests may not receive any distributions on account of such Claims or Interests, unless on or before the Confirmation Hearing such late Filed Claim or Interest has been deemed timely Filed by a Final Order.**

G.    *Amendments to Claims or Interests*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Court and the Reorganized Debtor and any such new or amended Claim or Interest Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Court.

H.    *No Distributions Pending Allowance*

If an objection to a Claim Interest or portion thereof is Filed as set forth in Article VIII no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.    *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided in Article III.C.

# ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that

a holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, the Estate, and holders of Claims and Interests, and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against them and Causes of Action against other Persons.

B.      *Discharge of Claims and Termination of Interests*

        Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action that arose prior to the Effective Date of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. Any default by the Debtor with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.      *Release of Liens*

        Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan (including the Plan Supplement documents), on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns. In addition, the DIP Lender and the Senior Lender shall execute and deliver all documents reasonably requested by the administrative agent(s) for the Exit Facility to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtor to file UCC-3 termination statements (to the extent applicable) with respect thereto.

D.      **Debtor Release**

        **To the fullest extent permitted by applicable law and pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtor, the Reorganized Debtor, and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action (including Avoidance Actions), remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor and/or the Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities law, or otherwise, that the Debtor, the Reorganized Debtor, or their Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any**

Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Reorganized Debtor, the other restructuring transactions contemplated herein, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date; *provided, however*, the foregoing release shall not apply to any obligations arising on account of the Transshipping Claims, except as provided in the Confirmation Order, nor shall the foregoing release apply to any obligations under the Confirmation Order, the Plan, the Plan Supplement, the Exit Facility Documents, and any contracts, instruments, releases, and other agreements or documents delivered in connection with, or contemplated by, the foregoing.

E.      *Third Party Release*

As of the Effective Date, to the fullest extent permitted by applicable law, each Released Party and each holder of a Claim against or an Interest in the Debtor shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, equity interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of a debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, existing or hereafter arising, in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Reorganized Debtor, the restructuring transactions contemplated herein, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of claims and equity interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date; *provided, however*, the foregoing release shall not apply to any obligations arising under the Confirmation Order, the Plan, the Plan Supplement, the Exit Facility Documents, and any contracts, instruments, releases, and other agreements or documents delivered in connection with, or contemplated by, the foregoing; *provided, however*, that the foregoing release shall not apply to any obligations arising on account of the Transshipping Claims, except as provided in the Confirmation Order, nor shall the foregoing release apply to any obligations arising under the Confirmation Order, the Plan, the Plan Supplement, the Exit Facility Documents, and any contracts, instruments releases, and other agreements or documents delivered in connection with, or contemplated by, the foregoing.

F.      *Exculpation*

Except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any (1) Exculpated Claim and (2) any obligation, Cause of Action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*G.*     *Injunction*

FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE VIII HEREOF, ALL ENTITIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE VIII HEREOF.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.D OR ARTICLE VIII.E HEREOF, DISCHARGED PURSUANT TO ARTICLE VIII.B HEREOF, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.F HEREOF, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE RELEASED PARTIES OR THE EXCULPATED PARTIES: (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (3) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (4) ASSERTING ANY RIGHT OF SUBROGATION, SETOFF, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE INTERESTS, PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR EXCULPATED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF THEIR ASSETS, PROPERTY, OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO, FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE ESTATE, THE REORGANIZED DEBTOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS

**BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.**

H.      *Subordination Rights*

Any distributions under the Plan to holders shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

**ARTICLE X.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

A.      *Conditions Precedent to the Confirmation Date*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article X.C hereof):

1.      The Confirmation Order shall have been approved by the Court in form and substance reasonably acceptable to the Senior Lender Affiliate;

2.      The Court shall have found that adequate information and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan have been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017, 9019 and 3020(b);

3.      There shall be no pending defaults under the DIP Facility; and

4.      The Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, each in form and substance reasonably acceptable to the Senior Lender Affiliate, shall have been Filed subject to the terms hereof.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article X.C hereof):

1.      The Confirmation Order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

2.      There shall be no pending defaults under the DIP Facility;

3.      The Exit Facility Documents shall be in full force and effect;

4.      The Plan, including any amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but prior to the Effective Date, shall be in form and substance reasonably acceptable to the Debtor and the Senior Lender Affiliate and made in accordance with Article X.A of the Plan;

5.        The Exit Facility Documents shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of the Exit Facility, other than the occurrence of the Effective Date of the Plan, shall have been waived or satisfied in accordance with the terms thereof;

6.        The General Unsecured Claims Litigation Trust shall have been established pursuant to the General Unsecured Claims Litigation Trust Agreement.

7.        All governmental and material third party approvals and consents, including Court approval, necessary in connection with the transactions contemplated by this Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

8.        All documents and agreements necessary to implement this Plan shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements;

9.        All conditions precedent to the issuance of the New Equity, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

10.       The Professional Fee Account shall have been funded; and

11.       The Effective Date shall have occurred on or before December 31, 2013.

C.        *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article X may be waived only by written consent of the Debtor and the Senior Lender Affiliate (except to the extent a condition requires only Senior Lender Affiliate approval, in which case only written consent of the Senior Lender Affiliate shall be required); *provided*, *however*, that the Debtor may not waive entry of the Order approving the Disclosure Statement and the Confirmation Order.

D.        *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any holders of a Claim or Interest or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any holders, or any other Entity in any respect.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.        *Modification and Amendments*

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves the rights to alter, amend, or modify materially the Plan (provided that such alterations, amendments, or modifications are in form and substance acceptable to the Senior Lender Affiliate) with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan*

The Debtor (with the consent of the Senior Lender Affiliate) reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation and Consummation do not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain such jurisdiction over the Chapter 11 Case and all matters, arising out of, or related to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.    Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to:  (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Reorganized Debtor amending, modifying, or supplementing, after the Confirmation Date, pursuant to Article VI hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.    ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.    adjudicate, decide, or resolve any and all matters related to Causes of Action, including, without limitation, any of the Transshipping Claims;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.H.1 hereof;

13.     resolve any cases, controversies, suits, disputes related to the General Unsecured Claims Litigation Trust, including the General Unsecured Claims Litigation Trust Assets;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Chapter 11 Case, the Plan, the Disclosure Statement, the Confirmation Order;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine all disputes involving the existence, nature, or scope of the Debtor's release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

21.     enforce all orders previously entered by the Court;

22.     hear any other matter not inconsistent with the Bankruptcy Code;

23.     enter an order concluding or closing the Chapter 11 Case; and

24.     enforce the injunction, release, and exculpation provisions set forth in Article IX hereof.

# ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

### A. *Immediate Binding Effect*

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor or the Reorganized Debtor, as applicable, and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

### B. *Additional Documents*

On or before the Effective Date, the Debtor may File with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C. *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtor (prior to or on the Effective Date) or the Reorganized Debtor (after the Effective Date) for each quarter (including any fraction thereof) until the Chapter 11 Case are converted, dismissed, or closed, whichever occurs first.

### D. *Dissolution of the Committee*

On the Effective Date, the Committee (if any) shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Case.

### E. *Indemnification Provisions*

The Indemnification Provisions shall not be discharged or impaired by Confirmation, shall survive Confirmation and shall remain unaffected thereby after the Effective Date; *provided*, *however*, that, notwithstanding the foregoing, the right of an indemnified Person to receive any indemnities, reimbursements, advancements, payments, or other amounts arising out of, relating to, or in connection with the Indemnification Provisions shall be limited to, and an indemnified Person's sole and exclusive remedy to receive any of the foregoing shall be exclusively from, the director and officer insurance policies of the Debtor in effect on the Effective Date, and no indemnified Person shall seek, or be entitled to receive, any of the foregoing from (directly or indirectly) the Reorganized Debtor. Entry of the Confirmation Order will constitute the Court's approval of the Debtor's foregoing assumption of each of the Indemnification Provisions.

### F. *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Court shall enter the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

*G.      Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

*H.      Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or Reorganized Debtor shall be served on:

the Debtor:

        Groeb Farms, Inc.:
        10464 Bryan Highway
        Onsted, Michigan 492657313
        Attn.:  Rolf Richter

with copies to:

        Foley & Lardner, LLP
        One Detroit Center
        500 Woodward Avenue
        Suite 2700
        Detroit, Michigan 48226-3489
        Attn:  Judy A. O'Neill

the Senior Lender Affiliate:

        c/o Kirkland & Ellis LLP
        601 Lexington Avenue
        New York, New York 10022
        Attn:  Ray Schrock, P.C.

        and

        c/o Kirkland & Ellis LLP
        300 North LaSalle
        Chicago, Illinois 60654
        Attn:  Jeffrey D. Pawlitz

*I.      Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

*J.      Entire Agreement*

Except as otherwise indicated, the Plan, the Confirmation Order, the Plan Supplement, and the Exit Facility Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

44

*K.*      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

Respectfully submitted, as of the date first set forth above,

GROEB FARMS, INC.

By: _/s/ DRAFT_____
Name: Rolf Richter
Title: President and CEO of Groeb Farms, Inc.