## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GROEB FARMS, INC. | ) Case No. 13-58200 |
| | ) |
| Debtor. | ) Honorable Walter Shapero |
| | ) |

**INTERIM ORDER ON FIRST DAY MOTION (I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(C), 364(D)(1), AND 364(E) AND (B) UTILIZE CASH COLLATERAL OF PREPETITION SECURED ENTITIES PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND 4001(C), AND (IV) GRANTING RELATED RELIEF**

Upon the motion of Groeb Farms, Inc.,[1] as debtor-in-possession (the "<u>Debtor</u>") in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>), dated October 1, 2013 (the "<u>Motion</u>"), for entry of an interim order (this "<u>Interim Order</u>") and a final order (as defined in the DIP Credit Agreement (as defined below), a "<u>Final Order</u>"), under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1), and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>") and Rule 4001-2 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Local Rules</u>"), seeking, among other things:

(i)      authorization for Groeb Farms, Inc., as debtor and debtor-in-possession (the "<u>Borrower</u>") to obtain post-petition financing in the form of revolving loans drawn under a

---

[1]    All defined terms shall have the meaning ascribed to it in DIP Credit Agreement (as defined below) unless otherwise defined herein.

debtor-in-possession credit facility (the "DIP Facility"), pursuant to the terms of this Interim Order and the DIP Loan Documents (as defined below), the foregoing transactions to include:

(a)    a senior secured super-priority revolving credit facility providing for the borrowing of loans from time to time in accordance with the Approved Budget (as defined below) in an aggregate maximum principal amount of up to $27 million, of which up to $17.1 million (the "Interim Borrowing Amount") shall be available upon entry of this Interim Order, and the DIP Lender will allow $3 million to remain outstanding under the Prepetition Secured Facility;

(b)    the repayment of certain of the obligations outstanding on account of Advances (as defined in the Prepetition Secured Facility (as defined herein)) (the "Prepetition Facility Advance Repayment");

(ii)    subject to entry of a Final Order, the repayment of all of the outstanding Term Loan (as defined in the Prepetition Secured Facility) obligations outstanding under the Prepetition Secured Facility (the "Prepetition Facility Term Loan Repayment");

(iii)    authorization for the Debtor to execute and enter into that certain Senior Secured Super-Priority Priming Debtor-In-Possession Credit and Security Agreement, by and between the Borrower and the lender party thereto (the "DIP Lender"), which shall be in form and substance acceptable to the DIP Lender and substantially similar to the form attached to the Motion as Exhibit 6-A (as the same may be amended, restated, supplemented, or otherwise modified from time to time pursuant to the terms thereof, the "DIP Credit Agreement"), and any related documents and instruments delivered pursuant to or in connection therewith (collectively, the "DIP Loan Documents"), and authorization for the Debtor to perform such other and further acts as may be required in connection with the DIP Loan Documents;

4814-8802-3574.3

(iv)    authorization for the Debtor's use of proceeds of the DIP Facility, all cash and equivalents, and cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (as so defined, but excluding any cash collateral subject to prior Non-Primed Liens (as defined below), if any, "Cash Collateral"), and the collection and application of Cash Collateral, pursuant to the terms and conditions set forth in this Interim Order and the DIP Credit Agreement;

(v)    the grant of (i) valid, enforceable, non-avoidable, and fully perfected first priority priming liens on and senior security interests in (including liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) all DIP Collateral (as defined below) to the DIP Lender to secure all obligations of the Debtor under and with respect to the DIP Facility (collectively, the "DIP Obligations"), and (ii) super-priority claims (including a super-priority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code) to the DIP Lender having recourse to all prepetition and postpetition property of the Debtor's estate, now owned or hereafter acquired, including, subject to and upon entry of the Final Order, Avoidance Actions Proceeds (as defined herein) whether received by judgment, settlement or otherwise and any Debtor's rights under section 506(c) of the Bankruptcy Code and the proceeds thereof;

(vi)    the grant of adequate protection to the Prepetition Secured Lender (as defined below) under that certain Credit and Security Agreement, dated as of January 30, 2012 (as amended, restated, supplemented, or otherwise modified from time to time and in effect on the date hereof, the "Prepetition Credit Agreement"), between the Borrower and HC Capital Holdings 0909A, LLC (the "Prepetition Secured Lender"), on account of (i) the Debtor's use of Cash Collateral and (ii) the priming of the liens and security interests held by the Prepetition

3

Secured Lender under the Prepetition Credit Agreement and all security agreements, pledge agreements, mortgages, deeds of trust, and other security and ancillary documents executed by the Borrower in favor of the Prepetition Secured Lender in connection therewith (collectively, the "Prepetition Credit Agreement Collateral Documents" and, together with the Prepetition Credit Agreement, the "Prepetition Loan Documents"), as more fully set forth in this Interim Order;

(vii)    the grant of adequate protection to each holder of a debenture (the "Senior Subordinated Notes") under that certain Securities Purchase Agreement (the "Senior Subordinated Notes Agreement"), dated as of March 31, 2010 (as amended, restated, supplemented, or otherwise modified from time to time and in effect on the date hereof), between the Borrower, on one hand, and Argosy Investment Partners III, L.P., Horizon Capital Partners III, L.P., and Marquette Capital Fund I, LP, on the other hand (collectively, the "Senior Subordinated Noteholders") that executed a restructuring support agreement and has not and does not object to the relief requested by the Motion, on account of (i) the Debtor's use of Cash Collateral and (ii) the priming of the liens and security interests held by the Senior Subordinated Noteholders under the Senior Subordinated Notes Agreement and all security agreements, pledge agreements, mortgages, deeds of trust, and other security and ancillary documents executed by the Borrower in favor of the Senior Subordinated Notes in connection therewith (collectively, the "Prepetition Senior Subordinated Note Collateral Documents" and, together with the Prepetition Senior Subordinated Note Credit Agreement, the "Prepetition Senior Subordinated Note Documents"), as more fully set forth in this Interim Order;

(viii)    subject to entry of a Final Order, (i) the waiver by the Debtor of any right to seek to surcharge against the DIP Collateral or the Prepetition Collateral (as defined below)

pursuant to section 506(c) of the Bankruptcy Code or other applicable law, and (ii) the grant of rights under section 552(b) of the Bankruptcy Code;

(ix)     pursuant to Bankruptcy Rule 4001, an interim hearing (the "<u>Interim Hearing</u>") on the Motion for this Court to consider entry of this Interim Order, which, among other things, (i) authorizes Borrower to obtain from the DIP Lender under the DIP Facility an amount up to the Interim Borrowing Amount on an interim basis; (ii) authorizes the Debtor to effectuate the Prepetition Facility Advance Repayment with the proceeds of the Interim Borrowing and, upon entry of a Final Order, the Prepetition Facility Term Loan Repayment; (iii) authorizes the Debtor's use of the Cash Collateral; and (iv) grants the liens and claims provided for herein;

(x)     the scheduling of a final hearing (the "<u>Final Hearing</u>") on the Motion no later than the thirty-six (36) days following the Petition Date (as defined herein) to consider entry of a Final Order granting the relief requested in the Motion on a final basis;

(xi)     modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor, the DIP Lender, the Prepetition Secured Lender, and the Senior Subordinated Noteholders to implement the terms of this Interim Order; and

(xii)     waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order.

This Court having found that, under the circumstances, due and sufficient notice of the Motion and Interim Hearing was provided by the Debtor as set forth in Paragraph C below; and having held the Interim Hearing on October 3, 2013 after considering all the pleadings filed with this Court; and having overruled all unresolved objections to the relief

requested in the Motion; and upon the record made by the Debtor at the Interim Hearing; and after due deliberation and consideration and good and sufficient cause appearing therefore:

**BASED ON THE RECORD MADE AT THE HEARINGS, THE COURT FINDS AS FOLLOWS:**

       A.     **Petition Date**. On October 1, 2013 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition with this Court commencing the Chapter 11 Case. The Debtor is continuing to operate its business and manage its property as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

       B.     **Jurisdiction; Venue**. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 507, and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001(b), and 9014 and Local Rule 4001-2. Venue of the Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

       C.     **Notice**. The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, whether by facsimile, electronic mail, overnight courier, or hand delivery, on October 1, 2013, to certain parties in interest, including: (a) the Office of the United States Trustee for the Eastern District of Michigan, (b) the 20 largest non-insider unsecured creditors of the Debtor on a consolidated basis, (c) Kirkland & Ellis LLP, as counsel to the Prepetition Secured Lender and the DIP Lender, (d) holders of Senior Subordinated Notes, (e) the Internal Revenue Service, (f) the Securities and Exchange Commission, and (g) the United States Attorney for the Eastern District of Michigan. Under the

circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c), and (d) and the Local Rules, and no further notice of the relief sought at the Interim Hearing is necessary or required.

**BASED ON THE RECORD MADE AT THE HEARING, THE COURT IS SATISFIED WITH THE FOLLOWING REPRESENTATIONS OF THE DEBTOR:**

D. **Debtor's Stipulations With Respect to Prepetition Obligations**.

Subject to the limitations thereon described below in Paragraph 14 the Debtor hereby admits, acknowledges, agrees, and stipulates that (collectively, the "Debtor's Stipulations"):

(i) as of the Petition Date, the Debtor was truly and justly indebted to the Prepetition Secured Lender pursuant to the Prepetition Loan Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than (i)(a) $15,719,001.64 outstanding under the Advances (as defined in the Prepetition Credit Agreement), and (b) $851,947.44 outstanding under the Term Loan (as defined in the Prepetition Credit Agreement), including the CapEx Purchase Loan amount, *plus* (ii) accrued and unpaid interest with respect thereto and any additional fees, costs, and expenses (including any attorneys', financial advisors', and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents) due under the Prepetition Loan Documents.

(ii) as of the Petition Date, the Debtor was truly and justly indebted to the Senior Subordinated Noteholders pursuant to the Prepetition Senior Subordinated Note Documents, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $7,000,000 outstanding under the Senior Subordinated

Notes Agreement *plus* accrued and unpaid interest with respect thereto due under the Prepetition Senior Subordinated Note Documents.

All obligations of the Debtor arising under the Prepetition Loan Documents (including, without limitation, the "Obligations" as defined in the Prepetition Credit Agreement) and the Prepetition Senior Subordinated Note Documents shall collectively be referred to herein as the "Prepetition Obligations";

(iii)    the liens and security interests granted to the Prepetition Secured Lender (collectively, the "Prepetition First Priority Liens") in substantially all of the Debtor's assets (the "Prepetition Collateral") as more particularly described in the Prepetition Collateral Documents are (i) valid, binding, perfected, and enforceable first priority liens and security interests in the real and personal property described in the Prepetition Collateral Documents;[2] (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law, avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind; and (iii) subject and subordinate only to (A) the Carve-Out (as defined below), (B) the DIP Liens (as defined below), and (C) Permitted Liens (as defined in the Prepetition Credit Agreement) to the extent permitted under the Prepetition Credit Agreement to be senior and to the extent perfected, and the Debtor irrevocably waives, for itself and its subsidiaries and affiliates, any right to challenge or contest in any way the Prepetition First Priority Liens or the validity or enforceability under the Prepetition Obligations and the Prepetition Loan Documents;

---

[2]    Nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtor, the DIP Lender, and the Prepetition Secured Lender to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any such liens and/or security interests.

8

(iv)    the liens and security interests granted to the Senior Subordinated Noteholders (collectively, the "Prepetition Second Priority Liens") in the Prepetition Collateral, as more particularly described in the Prepetition Senior Subordinated Note Documents are (i) valid, binding, perfected, and enforceable second priority liens and security interests in the real and personal property described in the Prepetition Senior Subordinated Note Documents;[3] (ii) not subject to, pursuant to the Bankruptcy Code or other applicable law, avoidance, disallowance, reduction, recharacterization, recovery, subordination, attachment, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind; and (iii) subject and subordinate only to (A) the Carve-Out (as defined below), (B) the DIP Liens (as defined below), (C) the Prepetition First Priority Liens, and (D) Permitted Liens (as defined in the Prepetition Credit Agreement) to the extent permitted under the Prepetition Credit Agreement to be senior and to the extent perfected, and the Debtor irrevocably waives, for itself and its subsidiaries and affiliates, any right to challenge or contest in any way the Prepetition Second Priority Liens or the validity or enforceability of the Prepetition Obligations under the Prepetition Senior Subordinated Note Documents;

(v)    (a) the Prepetition Obligations constitute legal, valid, and binding Obligations of the Debtor; (b) no offsets, defenses, or counterclaims to the Prepetition Obligations exist; (c) no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Prepetition Loan Documents are valid and enforceable by the

---

[3]    Nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtor, the DIP Lender, and the Prepetition Secured Lender to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any such liens and/or security interests.

Prepetition Secured Lender against the Debtor; (e) the Senior Subordinated Notes are valid and enforceable by the Senior Subordinated Noteholders against the Debtor; (f) the Prepetition Obligations constitute allowed claims against the Debtor's estate; and (g) no claim of or cause of action held by the Debtor or its estate exists against the Prepetition Secured Lender or the Senior Subordinated Noteholders, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Loan Documents or the Prepetition Senior Subordinated Note Documents (or the respective transactions contemplated thereunder), Prepetition Obligations, Prepetition First Priority Liens, or Prepetition Second Priority Liens, including without limitation, any right to assert any disgorgement or recovery; and

(vi)     all of the Debtor's cash, including any cash in the deposit accounts, wherever located, constitutes Cash Collateral of the Prepetition Secured Lender and the Senior Subordinated Noteholders.

E.     **Budget for DIP Facility**.  Attached to the Motion as Exhibit 6-B is a cash flow forecast setting forth all projected cash receipts and cash disbursements (by line item) on a monthly basis (the "Initial Approved Budget") for the 13-week period beginning on the Petition Date.  The Initial Approved Budget is required to be updated periodically and may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and approved by the DIP Lender, without subsequent notice to or order of the Court (each such additional budget, a "Supplemental Approved Budget" and together with the Initial Approved Budget, the "Approved

10

Budget"), in accordance with the terms of the DIP Credit Agreement. The Initial Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Lender and the Prepetition Secured Lender in consenting to this Interim Order, to provide the DIP Facility and to permit the use of the Cash Collateral. The Debtor represents and warrants to the DIP Lender, the Prepetition Secured Lender and this Court that the Approved Budget includes and contains the Debtor's best estimate of all operational receipts and all operational disbursements, fees, costs, and other expenses that will be payable, incurred, and/or accrued by the Debtor during the period covered by the Approved Budget and that such operational disbursements, fees, costs, and other expenses will be timely paid in the ordinary course of business pursuant to and in accordance with the Approved Budget unless such operational disbursements, fees, costs, and other expenses are not incurred or otherwise payable. The Debtor further represents that the Initial Approved Budget is achievable and will allow the Debtor to operate in the Chapter 11 Case and pay postpetition administrative expenses as they come due. In accordance with the DIP Credit Agreement, the Debtor shall be required to provide to the DIP Lender a weekly report of actual cash receipts and disbursements on a consolidated basis (each, a "Weekly Actuals Report"), and a monthly variance report (the "Budget Variance Report") comparing the actual cash receipts and disbursements and variances from the Approved Budget of the Debtor for each four-week period. The Debtor shall be permitted a variance between projected receipts and actual receipts of fifteen (15) percent, and between projected disbursements and actual disbursements of fifteen (15) percent, on a line item basis for each four-week period.

      **F.**    **Immediate Need for Funding**. Based upon the pleadings and proceedings of record in the Chapter 11 Case, the Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the DIP

Facility and authorized use of Cash Collateral. As a result of the Debtor's financial condition, the use of Cash Collateral alone will be insufficient to meet the Debtor's immediate postpetition liquidity needs. The Debtor's ability to maintain business relationships with its vendors, suppliers, and customers, pay its employees, purchase, and supply new inventory, and otherwise finance its operations is essential to the Debtor's continued viability. In the absence of the DIP Facility and the authority of this Court to use Cash Collateral, the Debtor's business and estate would suffer immediate and irreparable harm, including, without limitation, a cessation of substantially all of its operations. The preservation, maintenance, and enhancement of the going concern value of the Debtor are of the utmost significance and importance to a successful restructuring of the Debtor under chapter 11 of the Bankruptcy Code.

        G.      **No Credit on More Favorable Terms**. Based upon the pleadings and proceedings of record in the Chapter 11 Case, the Debtor is unable to obtain sufficient interim and long-term financing from sources other than the DIP Lender on terms and subject to conditions more favorable than under the DIP Facility and the DIP Loan Documents, and is not able to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Credit Agreement without the Debtor (i) granting to the DIP Lender, subject to the Carve-Out as provided herein, (x) the DIP Super-Priority Claims (as defined below) and (y) the DIP Liens in the DIP Collateral, as provided herein and in the DIP Loan Documents, (ii) agreeing to the Prepetition Facility Advance Repayment and, upon entry of a Final Order, the Prepetition Facility Term Loan Repayment, and (iii) providing the Prepetition Secured Lender the adequate protection as provided herein.

H.    **Reasonable; Good Faith**.  The DIP Lender has indicated a willingness to provide Borrower with post-petition secured financing but solely on the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  After considering all of its alternatives, the Debtor has concluded, in an exercise of its sound business judgment, that the DIP Facility to be provided by the DIP Lender and the authorization to use the Cash Collateral to be provided by the Prepetition Secured Lender represents the best financing presently available to the Debtor. Based upon the pleadings and proceedings of record in the Chapter 11 Case, (i) the terms and conditions of the DIP Facility and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order and the DIP Loan Documents are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration, (ii) the DIP Facility has been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtor and the DIP Lender, and (iii) any credit extended, loans made, and other financial accommodations extended to the Debtor by the DIP Lender have been extended, issued, or made, as the case may be, by the DIP Lender  in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.  The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. Absent granting the interim relief sought by this Interim Order, the Debtor's estate will be immediately and irreparably harmed.  Consummation of the DIP Facility and authorization of the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Interim Order and the DIP Loan Documents are, therefore, in the best interests of the Debtor's estate and are consistent with the Debtor's fiduciary duties.

4814-8802-3574.3

I.      **Use of Cash Collateral**.  An immediate and critical need exists for the Debtor to use the Cash Collateral (in addition to the DIP Facility) to continue to operate its business, pay wages, maintain business relationship with vendors, suppliers, and customers, make capital expenditures, make adequate protection payments, and generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets.

J.      **Consent by Prepetition Secured Lender**.  The Prepetition Secured Lender has consented to, conditioned on the entry of this Interim Order (i) the financing arrangements contemplated by this Interim Order and the DIP Loan Documents and (ii) Debtor's proposed use of Cash Collateral, on the terms and conditions set forth in this Interim Order and the DIP Credit Agreement.

K.      **Adequate Protection**.  The adequate protection provided to the Prepetition Secured Lender and to the Senior Subordinated Noteholders for any diminution in the value of the Prepetition Secured Lender's or the Senior Subordinated Noteholders' respective interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the DIP Facility and use of the Cash Collateral, pursuant to the provisions of this Interim Order, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtor to protect the Prepetition Secured Lender's and the Senior Subordinated Noteholders' respective interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code.  The consent of the Prepetition Secured Lender to the priming of its liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Lender that its interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise.  The

14

adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Lender and the Senior Subordinated Noteholders from the diminution in value of their respective interests in the Prepetition Collateral and (ii) obtain the foregoing consents and agreements.

L. **Good Cause Shown; Best Interest**. The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). This Court concludes that good cause has been shown and that entry of this Interim Order is in the best interest of the Debtor's estate and creditors as its implementation will, among other things, allow for the continued operation of the Debtor's existing business and enhance the Debtor's prospects for a successful reorganization.

M. **No Liability to Third Parties**. The Debtor stipulates and the Court finds that in making decisions to advance loans to the Debtor, in administering any loans, in permitting the Debtor to use Cash Collateral, in accepting the Initial Approved Budget or any future Supplemental Approved Budget, or in taking any other actions permitted by this Interim Order or the DIP Loan Documents, the DIP Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor.

N. **Section 552**. In light of the subordination of its liens and super-priority administrative claims (i) in the case of the DIP Lender, to the Carve-Out and the Non-Primed Liens and (ii) in the case of the Prepetition Secured Lender to the Carve-Out, the DIP Liens, and the Non-Primed Liens, the DIP Lender and Prepetition Secured Lender each are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      **Approval of Interim Order**.  The Motion is approved on the terms and conditions set forth in this Interim Order.  Any objections that have not previously been withdrawn are hereby overruled.  This Interim Order shall become effective immediately upon its entry.

2.      **Approval of DIP Loan Documents; Authority Thereunder**.  The Debtor is expressly authorized, empowered, and directed to execute and deliver, and on such execution and delivery, directed to perform all of its obligations under, the DIP Loan Documents, including the DIP Credit Agreement, which is approved and incorporated herein by reference, and such additional documents, instruments, and agreements as may be required or requested by the DIP Lender pursuant to the DIP Credit Agreement to implement the terms or effectuate the purposes of this Interim Order.  The Debtor is authorized to comply with and perform all of the terms and conditions contained therein, and directed to repay amounts borrowed, together with interest, fees (including, without limitation, the fees set forth in the DIP Credit Agreement) and premiums (as applicable) thereon and any other outstanding DIP Obligations to the DIP Lender in accordance with and subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order.  In the event of any inconsistency between the DIP Loan Documents and this Interim Order, this Interim Order shall control.

3.      **Authorization to Borrow/Use Cash Collateral**.  Upon executing the DIP Credit Agreement and the other DIP Loan Documents, (a) the Borrower is immediately authorized to borrow under the DIP Facility up to the Interim Borrowing Amount, and (b) the

Borrower is authorized and directed to cause the Prepetition Facility Advance Repayment to occur on a dollar-for-dollar basis from Cash Collateral received by the Borrower on account of accounts receivable that are paid following the entry of this Interim Order, in each case subject to the terms and conditions of this Interim Order and the DIP Loan Documents. The Debtor is authorized to use the proceeds of the DIP Facility and the Cash Collateral in the operation of the Debtor's business and to make the Prepetition Facility Advance Repayment, provided, that any proposed use of proceeds of the DIP Facility or use of Cash Collateral is consistent with the terms of the DIP Loan Documents, the Approved Budget and this Interim Order. Authorization to use Cash Collateral and any commitment to fund additional DIP Obligations under the DIP Facility will terminate pursuant to the terms of the DIP Credit Agreement or this Interim Order. In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is lifted to the extent necessary, subject to paragraph 22 hereof, to perform all acts and to make, execute, and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Loan Documents and this Interim Order, including, without limitation:

a.      The execution, delivery, and performance of the DIP Loan Documents, including, without limitation, the DIP Credit Agreement, any security and pledge agreement, and any mortgage contemplated thereby;

b.      The execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents, it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Loan

4814-8802-3574.3

Documents or the DIP Obligations; provided, however, that notice of any such modification or amendment to the DIP Loan Documents shall be provided to counsel to any Committee, to the U.S. Trustee and to the Prepetition Secured Lender, each of whom shall have fourteen (14) days from the date of such notice within which to object in writing to such modification or amendment, subject to the Debtor's right to seek expedited relief and if any Committee or the U.S. Trustee timely objects to any modification or amendment to the DIP Loan Documents, such modification or amendment shall only be permitted pursuant to an order of this Court;

      c.     The non-refundable payment to the DIP Lender and the Prepetition Secured Lender of the fees and costs and expenses provided for under the DIP Loan Documents, the Prepetition Credit Agreement, and this Interim Order, as may be due from time to time, including, without limitation, fees and expenses of Kirkland & Ellis LLP and Pepper Hamilton LLP (together, the "Lenders' Counsel"), as co-counsel to DIP Lender and the Prepetition Secured Lender (together, the "Lenders"), as provided for in the DIP Loan Documents, the Prepetition Credit Agreement, and this Interim Order, which fees and expenses shall not be subject to the approval of the Court, nor shall any recipient of any such payment be required to file with respect thereto any interim or final fee application with the Court; provided, however, that copies of any invoices (in summary form and redacted, as necessary, to protect any applicable privilege) with respect to such fees, costs, and expenses shall be provided to the U.S. Trustee and counsel to any Committee, and each such party shall have fourteen (14) days from the date of such notice within which to object in writing to such payment;

4814-8802-3574.3

d. Each borrowing under the DIP Facility up to the amount of the Interim Borrowing in accordance with the terms hereof;

e. The making of the Prepetition Facility Advance Repayment;

f. The making of the adequate protection payments provided for in this Order; and

g. The performance of all other acts required under or in connection with the DIP Loan Documents other than those conditioned on the entry of the Final Order.

4. **Termination Event.** The Debtor's authority to use the proceeds of the DIP Facility or any Prepetition Collateral, including Cash Collateral, and any commitment to fund DIP Obligations under the DIP Facility, shall each terminate upon (unless, for each subpart of this Paragraph 4, consented to by the DIP Lender) the earliest of (each a "Termination Event"):

a. 110 days following the Closing Date (as defined in the DIP Credit Agreement);

b. The 36th day following the entry of this Interim Order, unless the Final Order has been entered;

c. The date of acceleration of any outstanding borrowings under the DIP Facility pursuant to an Event of Default (as defined in the DIP Credit Agreement);

d. The first business day following the date on which this Interim Order expires by its terms or is terminated, unless the Final Order has been entered and becomes effective prior thereto;

e.     Conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Lender;

f.     Dismissal of the Chapter 11 Case, unless otherwise consented to in writing by the DIP Lender;

g.     The effective date of the Debtor's plan of reorganization confirmed in the Chapter 11 Case;

h.     The occurrence of a Senior Lender Termination Event (as defined in any RSA).

5.     **Perfection in Cash.**  Subject to the Carve Out and other provisions of this Interim Order, all financial institutions in which the Debtor's accounts are located are authorized and directed to comply with any request of the DIP Lender to turn over to the DIP Lender all funds therein without offset or deduction of any kind.  The Debtor is directed to enter into such blocked account agreements with springing cash dominion with the DIP Lender and such financial institutions as the DIP Lender may require, or alternatively, the DIP Lender may enjoy the benefit of all control agreements to which the Prepetition Secured Lender is a party without the need to enter into new blocked account agreements.

6.     **Interest on DIP Facility.**  The rates of interest to be charged for DIP Obligations funded to the Debtor pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.

7.     **Payment of DIP Fees and Expenses**.  The Debtor is authorized and directed to pay (i) all fees when due under the DIP Credit Agreement (including, without limitation, any fees provided for under the DIP Credit Agreement) in the amounts set forth in the

DIP Credit Agreement and (ii) costs, expenses, and any other fees or other amounts payable under the terms of the DIP Loan Documents and all other reasonable, documented, out-of-pocket costs, and expenses of the DIP Lender in accordance with the terms of the DIP Loan Documents (including, without limitation, the reasonable, documented, out-of-pocket prepetition and postpetition fees, costs, and expenses of the Lenders' Counsel). None of such fees, costs, and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Copies of any invoices (in summary form and redacted, as necessary, to protect any applicable privilege) with respect to such fees, costs, and expenses shall be provided to the U.S. Trustee and counsel to any Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment. In addition, the Debtor is hereby authorized and directed to indemnify the DIP Lender (and its affiliates, as well as each such parties' directors, officers, employees, agents, representatives, attorneys, consultants, advisors, and controlling persons) against any liability arising in connection with the DIP Loan Documents, to the extent set forth in the DIP Loan Documents; provided that the Debtor shall not have any obligation to indemnify or hold harmless any indemnified party with respect to any matter arising from the gross negligence or willful misconduct of such indemnified party, as determined by a court of competent jurisdiction in a final non-appealable order. All such unpaid fees, costs, and expenses and indemnities of the DIP Lender shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Loan Documents.

8. **Validity of DIP Loan Documents**. Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute, and are hereby deemed to be

4814-8802-3574.3

the legal, valid, and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the DIP Loan Documents and the terms of this Interim Order for all purposes during the Chapter 11 Case, in any subsequently converted Chapter 11 Case of the Debtor under chapter 7 of the Bankruptcy Code or after dismissal of the Chapter 11 Case. Proceeds of the Interim Borrowing, shall, until the Final Hearing, be applied only to fund postpetition administrative expenses, the Debtor's working capital, the Prepetition Facility Advance Repayment, and to pay such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement, this Interim Order, and any other orders of this Court, all subject to and in accordance with the Approved Budget. No obligation, payment, transfer, or grant of security under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law (including, without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim.

9. **DIP Super-Priority Claims**. In accordance with Bankruptcy Code sections 364(c)(1), the DIP Obligations shall constitute super-priority administrative expense claims (the "DIP Super-Priority Claims") against the Debtor with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 326, 328, 330, 331, 503(b), 506(c) (subject to the Final Order), 507(a), 507(b), 546,

726, 1113, and 1114 or otherwise, including those resulting from the conversion of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that the DIP Super-Priority Claims shall be subject to the Carve-Out (as defined below). The DIP Super-Priority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against the Debtor, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof, including, subject to and upon entry of the Final Order, Avoidance Actions Proceeds. Except as set forth in this Interim Order, no other super-priority claims shall be granted or allowed in this Chapter 11 Case.

10. **DIP Liens**. As security for the DIP Obligations, the DIP Lender is hereby granted, subject and subordinate only to the Carve-Out, (effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtor (or recordation or other filing), security agreements, lock box or control agreements, pledge agreements, financing statements, intellectual property filings, mortgages, any other similar instruments, or the possession and control by the DIP Lender of any property or otherwise) valid, binding and fully perfected, security interests in, and liens upon (the "DIP Liens") all present and after-acquired property of the Debtor of any nature whatsoever (including, without limitation, "Collateral" (as defined in the DIP Credit Agreement), all cash and cash equivalents contained in any account maintained by any of the Debtor and, subject to entry of a Final Order, all Avoidance Actions Proceeds of the Debtor or its estate (but not, for the avoidance of doubt, the Avoidance Actions)) (collectively, with all proceeds and products of any or all of the foregoing, the "DIP Collateral" and, together with the Prepetition Collateral, the "Collateral"), such DIP Liens to consist of:

4814-8802-3574.3

a. **First Lien on Cash Balances and Unencumbered Property**. Pursuant to section 364(c)(2) of the Bankruptcy Code, a continuing, enforceable, first priority, fully-perfected lien and security interest upon all of the Debtor's right, title, and interest in, to and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date (collectively, the "Unencumbered Property"); provided, however, that Unencumbered Property shall not include the Debtor's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"); provided further, however, that Unencumbered Property shall, subject only to and effective upon entry of the Final Order, include all proceeds of the Avoidance Actions and property received thereby (collectively, the "Avoidance Actions Proceeds").

b. **Liens Priming the Prepetition Secured Lender's Liens**. Pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, senior, priming, perfected lien and security interest upon all of the Debtor's right, title, and interest in, to and under all DIP Collateral that is subject to any existing lien presently securing the Prepetition Obligations, subject only to Non-Primed Liens (as defined below). Such security interest shall be senior to and prime the security interests and liens of the Prepetition Secured Lender on account of the Prepetition Obligations and the Adequate Protection Liens (as defined below) granted to the Prepetition Secured Lender, but shall be junior to any Non-Primed Liens on such property.

c. **Liens Junior to Certain Other Liens**. Pursuant to section 364(c)(3) of the Bankruptcy Code, a junior, perfected lien and security interest (other than as set

24

forth in clause (d) below) upon all of the Debtor's right, title, and interest in, to and under all DIP Collateral (other than the property described in clause (a) or (b) of this paragraph 10, as to which liens and security interests in favor of the DIP Lender will be as described in such clauses), whether now existing or hereafter acquired, that is subject to (A) any validly perfected security interest or lien in existence as of the Petition Date that is not subject to section 552(a) of the Bankruptcy Code, or (B) any valid security interest or lien perfected (but not granted) after the Petition Date (to the extent such perfection in respect of a pre-Petition Date claim is expressly permitted under the Bankruptcy Code) that is not subject to section 552(a) of the Bankruptcy Code, in each case that is senior in priority to the Prepetition First Priority Liens (the "Non-Primed Liens").

        d.        **Liens Senior to Certain Other Liens**.  The DIP Liens and the Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code, (ii) subject to entry of a Final Order, any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor, or (iii) any intercompany or affiliate liens of the Debtor.

        **11.**        **Prepetition Secured Lender Adequate Protection**.  Until the indefeasible repayment of the Prepetition Obligations, the Prepetition Secured Lender is entitled pursuant to sections 361, 363(c), and 364(d)(1) of the Bankruptcy Code to adequate protection of its interest in the Prepetition Collateral for and equal in amount to the aggregate diminution in the value thereof as a result of (a) the provisions of this Interim Order granting first priority

4814-8802-3574.3

and/or priming liens on such Prepetition Collateral to the DIP Agent for the benefit of the DIP Lender; (b) authorizing the use of Cash Collateral; (c) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or (d) otherwise, pursuant to sections 361(a), 363(c), and 364(d)(1) of the Bankruptcy Code.  The Prepetition Secured Lender is hereby granted, solely to the extent of the diminution in value of the Prepetition First Priority Liens in the Prepetition Collateral from and after the Petition Date, the following (collectively, the "Prepetition Adequate Protection Obligations"):

        a.      Adequate Protection Liens.  The Prepetition Secured Lender is hereby granted valid, enforceable, unavoidable, and fully perfected replacement liens and security interests in all Collateral and, subject to and upon entry of the Final Order, Avoidance Actions Proceeds (but not, for the avoidance of doubt, the Avoidance Actions), to the extent of any diminution in the Prepetition Secured Lender's interest in the Prepetition Collateral, which shall be junior to the DIP Liens and Non-Primed Liens and subject and subordinate to the Carve-Out (the "Prepetition Adequate Protection Liens").  The Prepetition Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Case.  Except as otherwise set forth in this Paragraph 11 or otherwise in this Interim Order, the Prepetition Adequate Protection Liens shall not be subordinated or be made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise.  The Prepetition Adequate Protection Liens shall be deemed to be perfected automatically upon the entry of this Interim Order, without the necessity of filing any UCC-1 financing statement, state or federal notice, mortgage or

4814-8802-3574.3

other similar instrument or document in any state or public record or office and without the necessity of taking possession or control of any collateral.

        b.    <u>Super-Priority Claims</u>.  The Prepetition Secured Lender is hereby granted super-priority administrative expense claims (the "<u>Prepetition Super-Priority Claims</u>") under sections 503 and 507 of the Bankruptcy Code against the Debtor's estate, including, subject to and upon entry of the Final Order, Avoidance Action Proceeds, to the extent that the Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition Collateral, which Prepetition Super-Priority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 326, 328, 330, 331, 503(b), 506(c) (subject to the Final Order), 507(a), 507(b), 726, 1113, and 1114, or otherwise and including those resulting from the conversion of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code; <u>provided</u> <u>that</u> at all times while such claim is in full force and effect pursuant to this Interim Order, the Prepetition Super-Priority Claims shall be junior in all respects to the DIP Super-Priority Claims and the Carve-Out;

        c.    <u>Fees and Expenses</u>.  The Prepetition Secured Lender is hereby granted and shall receive payments in cash from the Debtor on a current basis of all fees, costs, and expenses payable to the Prepetition Secured Lender under the Prepetition Credit Agreement as in effect on the Petition Date (the "<u>Prepetition Secured Professional Fee Payments</u>"), including but not limited to, the reasonable fees and disbursements of the Lenders' Counsel, promptly upon receipt of written invoices therefor (subject in all respects to applicable privilege or work product doctrines) and without the necessity of

4814-8802-3574.3

filing motions or fee applications, including such amounts arising (A) before the Petition Date and (B) after the Petition Date to the extent such amounts arise in connection with the Chapter 11 Case; provided, however, that none of such fees, costs, and expenses shall be subject to Court approval or U.S. Trustee guidelines, and the Prepetition Secured Lender shall not be required to file with respect thereto any interim or final fee application with this Court; provided further, however, that copies of any invoices (in summary form and redacted, as necessary, to protect any applicable privilege) with respect to such fees, costs, and expenses shall be provided to the U.S. Trustee, counsel to any Committee, and the Prepetition Secured Lender, and each such party shall have fourteen (14) days from the date of such notice within which to object in writing to such payment; provided however that if the Prepetition Secured Lender is determined by final order to be undersecured, such Prepetition Secured Professional Fee Payments shall be applied to outstanding obligations under the Prepetition Credit Agreement.

         d.     <u>Interest</u>.   The Prepetition Secured Lender is hereby granted and shall receive (a) payments in cash from the Debtor on a current basis of all accrued and unpaid interest and fees at the non-default contract rate owing under the Prepetition Credit Agreement immediately prior to the Petition Date, and (b) current monthly payments of postpetition interest (at the Base Rate plus the Applicable Margin) (each term as defined in the Prepetition Credit Agreement)) when due and payable under the Prepetition Credit Agreement (together the "Prepetition Adequate Protection Interest Payments") , provided however that if the Prepetition Secured Lender is determined by final order to be undersecured, such Prepetition Adequate Protection Interest Payments shall be applied to outstanding obligations under the Prepetition Credit Agreement.

4814-8802-3574.3

e.    Financial Reporting.  The Debtor shall provide the Prepetition Secured Lender with the financial and other reporting as described in the DIP Credit Agreement (the "Periodic Reporting Materials"); and

f.    Right to Seek Additional Adequate Protection.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Lender to request additional forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request; provided, however, that any such further or different adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Lender granted under this Order and the DIP Loan Documents.

**12.    Senior Subordinated Noteholder Adequate Protection**.    Senior Subordinated Noteholders shall (x) receive the Periodic Reporting Materials, and (y) be granted valid, enforceable, unavoidable, and fully perfected replacement liens and security interests in all Collateral (the "Senior Subordinated Noteholder Adequate Protection Liens"), subordinate to the Carve-Out.  The Senior Subordinated Noteholder Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Case.  Subject to section 510(a) of the Bankruptcy Code and any subordination agreement by and among the Prepetition Secured Lender and the Senior Subordinated Noteholders, the Senior Subordinated Noteholder Adequate Protection Liens shall be *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. The Senior Subordinated Noteholder Adequate Protection Liens shall be deemed to be perfected automatically upon the entry of this Interim Order, without the necessity of filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in

any state or public record or office and without the necessity of taking possession or control of any collateral.

13. **No Waiver of Prepetition Credit Agreement Provisions; Reservation of Rights**. Except as otherwise specifically provided in this Interim Order, nothing contained in this Interim Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Prepetition Credit Agreements by the Prepetition Secured Lender, including, but not limited to, the incurrence or issuance of any indebtedness by the Debtor, the incurrence of any lien in connection therewith or the making of any payment by the Debtor.

14. **Carve-Out**. To the extent unencumbered funds are not immediately available to pay administrative expenses in full, the DIP Liens, DIP Super-Priority Claims, Prepetition Super-Priority Claims, Adequate Protection Liens, and all liens, claims, and other security interests ("Prepetition Liens") held by any party, including the DIP Lender, the Prepetition Secured Lender and the Senior Subordinated Noteholders on account of any obligations, including the Prepetition Obligations, shall each be subject to the "Carve-Out," which shall be defined as the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930 plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed or authorized by the Bankruptcy Court to be paid at any time, whether by interim order, procedural order, or otherwise, all accrued and unpaid fees and expenses (the "Professional Fees") of persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code and any official committee of creditors ("Committee") appointed in this

Chapter 11 Case pursuant to section 1103 of the Bankruptcy Code (collectively, "<u>Professionals</u>") incurred at any time before or on the first Business Day (as defined in the DIP Credit Agreement) following delivery by the DIP Lender to the Debtor, its counsel, the U.S. Trustee, and lead counsel to any Committee of a written notice, which may be delivered following acceleration of the maturity of the DIP Facility, that the DIP Lender is entitled to exercise remedies under the DIP Facility, including seeking relief from the automatic stay to foreclose upon the DIP Collateral, due to an Event of Default having occurred (a "<u>Carve-Out Trigger Notice</u>"), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Professional Fees incurred after the first Business Day following delivery by the DIP Lender of the Carve Out Trigger Notice, to the extent allowed or authorized by the Bankruptcy Court to be paid at any time, whether by interim order, procedural order, or otherwise, the payment of Professional Fees in an aggregate amount not to exceed $400,000; <u>provided</u>, <u>however</u>, that no portion of the Carve-Out, proceeds of the DIP Facility, DIP Collateral, Prepetition Collateral, or Cash Collateral shall include, apply to, or be available for any fees, costs, or expenses incurred by any party, including the Debtor or any Committee or any Professionals engaged thereby, in connection with (x) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Lender or the Prepetition Secured Lender, including, without limitation, (a) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Super-Priority Claims or DIP Liens, (b) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Obligations, Prepetition Super-Priority Claims or Prepetition Liens or (y) asserting any claims or causes of action, including, without limitation, claims or actions to

31

hinder or delay the DIP Lender's assertion, enforcement, or realization on the DIP Collateral in accordance with the DIP Loan Documents or this Interim Order. Nothing contained herein is intended to constitute, nor should be construed as consent by any party to, the allowance of any Professional's fees, costs, or expenses and shall not affect the right or ability of any party in interest to object to the allowance and payment of any fees, expenses, reimbursement, or compensation described in clauses (ii), (iii), and (iv) above. The aggregate amount set forth under clauses (i), (ii), (iii) and (iv) above from time to time shall be referred to as the "Carve-Out Cap."

      **15.**    **Investigation Rights**. The Committee, if formed, shall have until forty-five (45) days from appointment of the Committee (the "Investigation Termination Date") to investigate the validity, perfection, and enforceability of the Prepetition Liens and the Prepetition Obligations, or to assert any other claims or causes of action against the Prepetition Secured Lender. If any Committee or non-debtor party-in-interest, subject to having obtained the requisite standing, determines that there may be a challenge to the Prepetition Secured Lender by the Investigation Termination Date, then upon three (3) days' written notice to the Debtor and the Prepetition Secured Lender, such Committee shall be permitted to file and prosecute an objection or claim related thereto (each, a "Challenge"), and shall have only until the applicable Investigation Termination Date to file such objection or otherwise initiate an appropriate action on behalf of the Debtor's estate setting forth the basis of any such challenge, claim, or cause of action; provided, however, that nothing contained in the DIP Loan Documents or this Interim Order shall be deemed to confer standing on any Committee or any other party in interest to commence a Challenge. If a Challenge is not filed on or before the Investigation Termination Date, then, without further action by any party or any further order of this Court:

(a) the agreements, acknowledgements, and stipulations contained in Paragraph D of this Interim Order, shall be deemed to be immediately and irrevocably binding on the Debtor and the Debtor's estate, the Committee, all parties-in-interest and any and all successors-in-interest as to any of the foregoing, and any Committee and any other party-in-interest and any and all successors-in-interest thereto, shall thereafter be forever barred from bringing any Challenge; (b) the liens and security interests of the Prepetition Secured Lender and the Senior Subordinated Noteholders shall be deemed to constitute valid, binding, enforceable, and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition Obligations shall be deemed to be finally allowed claims for all purposes in the Chapter 11 Case and any subsequent chapter 7 case, in the amounts set forth in Paragraph D and shall not be subject to challenge by any party-in-interest as to validity, priority, or otherwise; and (d) the Debtor shall be deemed to have released, waived, and discharged the Prepetition Secured Lender (whether in its prepetition or postpetition capacity), together with its respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns, and/or successors, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Obligations or their prepetition relationship with such Debtor or any affiliate thereof relating to any of the Prepetition Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority, or enforceability of the Prepetition Liens or the Prepetition Obligations, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action. Notwithstanding anything to the contrary herein: (a) if any such Challenge is timely commenced, the stipulations contained in Paragraph D and E of this Interim Order shall nonetheless remain binding on all parties-in-interest and

preclusive except to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (b) the Prepetition Secured Lender reserves all of its rights to contest on any grounds any Challenge. For the avoidance of doubt, any trustee appointed or elected in this case shall, until the Investigation Termination Date (and thereafter, if a Challenge is commenced by the Investigation Termination Date) for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph with respect to a Challenge (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, and stipulations of the Debtor in this Order.

16. **Protection of DIP Lender's Rights**. So long as there are any amounts outstanding under the DIP Credit Agreement or any other DIP Obligations are outstanding, the Prepetition Secured Lender (i) shall not take any action to foreclose upon or recover in connection with its liens and security interests, other agreements, or operation of law of this Interim Order, or otherwise exercise remedies against any DIP Collateral, except to the extent authorized herein or by any other order of this Court, (ii) shall be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents, (iii) shall not file any further financing statements, trademark filings, copyright filings, patent filings, mortgages, notices of lien or similar instruments, enter into any control agreement, or otherwise take any action to perfect its security interest in the DIP Collateral unless, solely as to this clause (iii), the DIP Lender files financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of

valid and unavoidable liens or security interests as of the Petition Date, and (iv) not seek to terminate or modify the use of Cash Collateral.

17. **Dispositions of Collateral**. In the event of any sale, lease, or other disposition of any DIP Collateral (a "<u>Collateral Disposition</u>"), the Debtor shall, as a condition to approval of such Collateral Disposition, to the extent required by the DIP Credit Agreement, immediately pay, or cause to be paid to, the DIP Lender all of the proceeds of such Collateral Disposition for application to the DIP Obligations and shall comply with all other provisions in the DIP Loan Documents and this Interim Order in connection with any such Collateral Disposition. All such proceeds of any Collateral Disposition shall be applied in accordance with the terms and conditions of the DIP Credit Agreement.

18. **Further Assurances**. The Debtor shall execute and deliver to the DIP Lender and the Prepetition Secured Lender and the Senior Subordinated Noteholders, all such agreements, financing statements, instruments, and other documents as the Lenders may reasonably request to evidence, confirm, validate, or evidence the perfection of the DIP Liens or the Adequate Protection Liens granted pursuant hereto. Further, the Debtor is authorized and directed to do and perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages, and financing statements), and shall pay fees and expenses that may be required or necessary for the Debtor's performance under the DIP Loan Documents, including, without limitation, (i) the execution of the DIP Loan Documents and (ii) the payment of the fees, costs, and other expenses described in the DIP Loan Documents as such become due.

19.     **506(c) Waiver**.  Subject to the entry of the Final Order, and except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral, or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the DIP Lender or the Prepetition Secured Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Prepetition Secured Lender.

20.     **Restrictions on Granting Post-Petition Liens**.  Other than the Carve-Out, or as otherwise provided in this Interim Order or the DIP Credit Agreement, no claim having a priority superior or *pari passu* with those granted by this Interim Order to the DIP Lender and the Prepetition Secured Lender shall be granted or permitted by any order of this Court heretofore or hereafter entered in the Chapter 11 Case, while any portion of the DIP Facility (or refinancing thereof), any DIP Loan, or any other DIP Obligations are outstanding. Except as expressly permitted by this Interim Order and the DIP Loan Documents, the Debtor will not, at any time during the Chapter 11 Case, grant mortgages, security interests, or liens in the DIP Collateral (or any portion thereof) to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.  Unless all DIP Obligations shall have indefeasibly been paid in full in cash (or as otherwise provided in this Interim Order and the DIP Loan Documents), and the Adequate Protection Obligations shall have been indefeasibly paid in cash in full, the Debtor shall not seek, and it shall constitute an Event of Default (as defined in the DIP Credit Agreement) and terminate the right of the Debtor to use Cash Collateral under this Interim Order if the Debtor seeks, or if there is entered, (i) any modification or extension of this Interim Order

36

without the prior written consent of the DIP Lender (or, to the extent the DIP Obligations shall have been indefeasibly paid in full in cash (or otherwise fully satisfied as provided in this Interim Order and the DIP Loan Documents), the Prepetition Secured Lender), and no such consent shall be implied by any other action, inaction, or acquiescence, or (ii) an order converting or dismissing the Chapter 11 Case.

     **21.**     <u>**Automatic Effectiveness of Liens**</u>.    The DIP Liens and Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable, and effective by operation of law as of the Petition Date, having the priority set forth in Paragraph 10 of this Interim Order, without any further action by the Debtor, the DIP Lender or the Prepetition Secured Lender and without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, the Federal Aviation Administration or the Library of Congress, or other documents or the taking of any other actions.   All DIP Collateral shall be free and clear of other liens, claims, and encumbrances, except as permitted in the DIP Loan Documents and this Interim Order.  If the DIP Lender or the Prepetition Secured Lender hereafter request that the Debtor execute and deliver to the DIP Lender or the Prepetition Secured Lender financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, as applicable, the Debtor is hereby directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Lender and the Prepetition Secured Lender are hereby authorized to file or record such documents in its discretion without seeking

4814-8802-3574.3

modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

22. **Automatic Stay**. As provided herein, subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence and during the continuance of any Event of Default (as defined in the DIP Credit Agreement), all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions, so long as the DIP Lender has provided three (3) business days prior written notice to the Debtor, its bankruptcy counsel, counsel to any Committee, counsel to the Prepetition Secured Lender, and the U.S. Trustee: (a) immediately terminate the Debtor's authority to use Cash Collateral and cease making any advances or issuing any letters of credit under the DIP Facility, and cease authorizing the use thereof; (b) declare all DIP Obligations to be immediately due and payable; (c) charge the default rate of interest provided for under the DIP Credit Agreement; (d) exercise rights on monies or balances in the Debtor's accounts; (e) enforce rights against the DIP Collateral in the possession or control of the DIP Lender for application towards the DIP Obligations; and (f) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents, or applicable law to effect the repayment of the DIP Obligations. Following the giving of written notice by the DIP Lender of the occurrence of an Event of Default, the Debtor and any Committee in the Chapter 11 Case shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default has occurred; provided, however, that the Court may consider these arguments or any other pertinent matters. Upon

entry of this Interim Order, the Debtor shall not have the right to contest the enforcement of the remedies set forth in this Interim Order and the DIP Loan Documents on any basis other than an assertion that no Event of Default has occurred, and, except with respect to such an assertion, no party-in-interest shall have the right to enjoin any such enforcement under section 105 of the Bankruptcy Code or otherwise, or to seek any injunctive relief inconsistent with the provisions of this Interim Order or the DIP Loan Documents. The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Loan Documents or otherwise. The Debtor shall cooperate fully with the DIP Lender in its exercise of rights and remedies against the DIP Collateral. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

23. **Credit Bid**.

a. The DIP Lender shall have the unqualified right to credit bid up to the full amount of the outstanding DIP Obligations in any sale of any DIP Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

b. The Prepetition Secured Lender shall have the unqualified right to credit bid up to the full amount of any remaining Prepetition Obligations in the sale of any Prepetition Collateral subject to the satisfaction of the DIP Obligations, or as otherwise consented to by the DIP Lender under or pursuant to (i) section 363 of the

4814-8802-3574.3

Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code.

24. **Binding Effect**. Subject to Paragraph 15, the provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Secured Lender, the Debtor, any Committee appointed in this Chapter 11 Case, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor). To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed for the estate of the Debtor, whether in this Chapter 11 Case or in the event of the conversion of the Chapter 11 Case to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

25. **Survival**. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in the Chapter 11 Case (and, to the extent not satisfied in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor having hereby waived such discharge), (ii) converting the Chapter 11 Case to a chapter 7 case, or (iii) dismissing the Chapter 11 Case, and the terms and provisions of this Interim Order as well as the DIP Super-Priority Claims and the DIP Liens in the DIP Collateral granted pursuant to this Interim Order and the DIP Loan Documents (and with respect to the entry of any order as set forth in (ii) or (iii) herein, the Adequate Protection Liens and Prepetition

Super-Priority Claims) shall continue in full force and effect notwithstanding the entry of any such order. Such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Loan Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full and discharged. In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Loan Documents.

26. **Reallocation.** For the avoidance of doubt, in the event that it is determined by this Court after a successful Challenge, if any, by the Committee, that the Prepetition Secured Lender did not maintain valid, perfected, and enforceable liens on the Prepetition Collateral, the Bankruptcy Court, after notice and hearing, reserves the right to unwind and reallocate any payments, or any portion thereof (which could include the disgorgement, recharacterization, or reallocation of interest, fees, principal, and/or other incremental consideration paid in respect thereto) made to the Prepetition Secured Lender, including the Prepetition Facility Advance Repayment, and modify any liens and claims granted pursuant to this Order, including the grant of adequate protection to the Prepetition Secured Lender.

27. **Insurance Policies**. Upon entry of this Interim Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtor which in any way relates to the DIP Collateral. The Debtor is authorized and directed to take any actions necessary to have the DIP Lender be added as an additional insured and loss payee on each insurance policy.

41

28.     **Restriction on Use of DIP Lender's Funds**.  The Debtor shall not be permitted to use the proceeds of the DIP Facility: (a) for the payment of interest and principal with respect to any indebtedness that is subordinated to the DIP Facility except as expressly set forth herein and permitted pursuant to the terms of the DIP Credit Agreement, (b) to finance in any way any adversary action, suit, arbitration, proceeding, application, motion, other litigation, examination, or investigation of any type relating to or in connection with the DIP Loan Documents, including, without limitation, any challenges to the Prepetition Obligations, or the validity, perfection, priority, or enforceability of any Prepetition Lien securing such claims or any payment made thereunder, (c) to finance in any way any action, suit, arbitration, proceeding, application, motion, other litigation, examination, or investigation of any type adverse to the interests of the DIP Lender or its rights and remedies under the DIP Credit Agreement, the other DIP Loan Documents, this Interim Order, or the Final Order without the prior written consent of the DIP Lender, (d) to make any distribution under a plan of reorganization in any Chapter 11 Case, and (e) to make any payment in settlement of any material claim, action, or proceeding, before any court, arbitrator, or other governmental body without the prior written consent of the DIP Lender.  Notwithstanding anything herein to the contrary, for so long as the Debtor is authorized to use the Prepetition Secured Lender's Cash Collateral with the consent of the Prepetition Secured Lender, no Cash Collateral of the Prepetition Secured Lender may be used directly or indirectly by the Debtor, any Committee, or any other person or entity to object to or contest in any manner the Prepetition Obligations or Prepetition Liens, or to assert or prosecute any actions, claims, or causes of action against the Prepetition Secured Lender without the consent of the Prepetition Secured Lender.

29.   **Release of Claims and Defenses**.   The Debtor hereby releases and discharges the DIP Lender and its affiliates, together with their respective agents, attorneys, officers, directors, and employees (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon, or related to, in whole or in part, any of loans under the DIP Facility or the DIP Loan Documents, any aspect of the relationship between the Debtor, on the one hand, and any or all of the Released Parties, on the other hand, relating to any of DIP Loan Documents or any transaction contemplated thereby or any other acts or omissions by any or all of the Released Parties in connection with any of the DIP Loan Documents or their prepetition relationship with the Debtor or any affiliate thereof relating to any of the DIP Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action (collectively, the "Claims and Defenses").

30.   **Protection Under Section 364(e)**.   If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation, or stay shall not affect the (i) validity of any DIP Obligations or Adequate Protection Obligations owing to the DIP Lender or the Prepetition Secured Lender incurred prior to the actual receipt by the DIP Lender or the Prepetition Secured Lender, as applicable, of written notice of the effective date of such reversal, modification, vacation, or stay, or (ii) validity or enforceability of any claim, lien, security interest, or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations or Adequate Protection Obligations owing to the Prepetition Secured Lender.   Notwithstanding any such reversal, modification, vacation, or stay, any use of Cash Collateral or the incurrence of DIP Obligations, or Adequate Protection Obligations owing to the Prepetition Secured Lender, by the

4814-8802-3574.3

Debtor prior to the actual receipt by the DIP Lender or the Prepetition Secured Lender, as applicable, of written notice of the effective date of such reversal, modification, vacation, or stay, shall be governed in all respects by the provisions of this Interim Order, and the Prepetition Secured Lender shall be entitled to all of the rights, remedies, protections, and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations, and Adequate Protection Obligations owing to the Prepetition Secured Lender.

31.     **Effect of Dismissal of Chapter 11 Case**.  If the Chapter 11 Case is dismissed, converted, or substantively consolidated, such dismissal, conversion, or substantive consolidation of the Chapter 11 Case shall not affect the rights of the DIP Lender or the Prepetition Secured Lender under their respective DIP Loan Documents, Prepetition Loan Documents, or this Interim Order, and all of the respective rights and remedies thereunder of the DIP Lender and Prepetition Secured Lender shall remain in full force and effect as if the Chapter 11 Case had not been dismissed, converted, or substantively consolidated.  If an order dismissing the Chapter 11 Case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that: (i) the DIP Liens and DIP Super-Priority Claims granted to and conferred upon the DIP Lender and the protections afforded to the DIP Lender pursuant to this Interim Order and the DIP Loan Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been paid and satisfied in full (and that such DIP Liens, DIP Super-Priority Claims, and other protections shall, notwithstanding such dismissal, remain binding on all interested parties); (ii) those primed or unprimed (as the case may be) Prepetition Liens, Adequate Protection Liens, and Prepetition Super-Priority Claims granted to and conferred upon

44

the Prepetition Secured Lender shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Prepetition Indebtedness shall have been paid and satisfied in full (and that such Prepetition Super-Priority Claims shall, notwithstanding such dismissal, remain binding on all interested parties); and (iii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens, Prepetition Liens, Adequate Protection Liens, DIP Super-Priority Claims, and Prepetition Super-Priority Claims referred to herein.

32. **Choice of Law; Jurisdiction**. The DIP Facility and the DIP Loan Documents (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, and, to the extent applicable, the Bankruptcy Code. The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or the DIP Loan Documents.

33. **Order Effective**. This Interim Order shall constitute findings of fact and conclusions of law and shall be effective as of the date of the signature by the Court, and there shall be no stay of effectiveness of this Interim Order.

34. **No Requirement to Accept Title to Collateral**. Neither the DIP Lender nor the Prepetition Secured Lender shall be obligated to accept title to any portion of the Prepetition Collateral or DIP Collateral in payment of the indebtedness owed to such party by the Debtor, in lieu of payment in cash or cash equivalents, nor shall any of the DIP Lender nor Prepetition Secured Lender be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the DIP Lender.

35. **Controlling Effect of Interim Order**. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, any prepetition agreement or any DIP Loan Document, the provisions of this Interim Order shall control.

36. **Final Hearing**. A final hearing on the Motion shall be heard before this Court on **Thursday, November 7, 2013 at 11:00 a.m**., in Courtroom 1042 at the United States Bankruptcy Court, 231 West Lafayette, Detroit, MI 48226. Any objections shall be filed with the Bankruptcy Court on or before October 31, 2013, and served upon (a) counsel for the Debtor and (b) Lenders' Counsel (c) U.S. Trustee and (d) Creditor's Committee.

37. **Committee Objection to Final Order**. Notwithstanding anything to the contrary herein, in compliance with Local Rule 4001-2, the Committee may file its objection to the Final Order within fourteen (14) days after it is served with the final order.

38. **Service of Motion and this Order**. Within 24 hours of the entry of this order Debtor shall serve a copy of the motion with its attachments and this order on all parties who are required to be served under F.R.Bankr.P.4001(d).


Signed on October 3, 2013

   /s/ Walter Shapero_____
Walter Shapero
United States Bankruptcy Judge