# EXHIBIT 6

**Documentary Evidence**

**(Settlement and Release Agreement)**

# SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Settlement Agreement") is entered into by and among Groeb Farms, Inc., as debtor-in-possession (the "Debtor"), in Case No. 13-58200 currently pending in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Case"), Ernest L. Groeb, Jr. ("E. Groeb"), Troy Groeb ("T. Groeb" and together with E. Groeb, the "Groebs"), E. Jeanne Groeb ("J. Groeb"), Groeb Farms, LLC ("Groeb LLC"), the Groeb Family Partnership ("Groeb Partnership"), the E. Jeanne Groeb Living Trust ("JG Trust"), the Ernest L. Groeb Jr. Living Trust ("EG Trust", and collectively with E. Groeb, T. Groeb, J. Groeb, Groeb LLC, Groeb Partnership and JG Trust, the "Groeb Parties"), Federal Insurance Company (the "Insurer"), and the Official Committee of Unsecured Creditors in the Bankruptcy Case (the "Committee"), Thomas Jenkins ("Jenkins"), Robert Feerick ("Feerick"), Michael Bailey ("Bailey"), Marquette Capital Fund I, LP ("Marquette"), Argosy Investment Partners III LP ("Argosy"), Horizon Partners, Ltd. ("Horizon Partners") and Horizon Capital Partners III ("Horizon Capital" and collectively with the Debtor, the Groebs, the Groeb Parties, the Insurer, the Committee, Jenkins, Feerick, Bailey, Marquette, Argosy and Horizon Partners the "Parties") this 16th day of December, 2013.

**WHEREAS**, commencing on October 1, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"); and

**WHEREAS**, Debtor asserts that it has various potential causes of action against certain of its officers and directors (the "Derivative Claim"), including T. Groeb and E. Groeb (collectively the "Insureds" as further defined below), arising from and related to information, which is disputed by the Groeb Parties, set forth in the Deferred Prosecution Agreement and all

4839-2047-7463.1

attachments and exhibits thereto filed on February 20, 2013, in case number 13-CR-137 in the United States District Court for the Northern District of Illinois, in connection with proceedings involving the Department of Justice (the "DOJ") ( the "Deferred Prosecution Events"); and

**WHEREAS**, the Insurer issued to the Debtor Forefront Portfolio Policy, No. 8208-1192 (the "D&O Policy"), which affords specified coverage for the period from May 1, 2011 through May 1, 2012 subject to all of its terms, conditions and exclusions, including a maximum aggregate limit of liability of $5,000,000, plus an additional $500,000 that is dedicated solely to claims against "Executives," as defined in the D&O Policy; and

**WHEREAS**, the Groebs assert that the D&O Policy affords coverage for the Derivative Claim; and

**WHEREAS**, on March 16, 2007, E. Groeb, T. Groeb and J. Groeb signed Covenants not to Compete (the "Non-Compete Agreements"); and

**WHEREAS**, on November 4, 2013, the Groeb Parties filed the following proofs of claim against the Debtor (collectively the "Groeb Filed Claims"):

a. Claim Number 152 filed by T. Groeb asserting multiple contingent, unliquidated causes of action against the Debtor, as well as a claim for 24.5% of a $1.5 million Note issued in conjunction with a 2007 Stock Purchase Agreement (the "Groeb Note").

b. Claim Number 154 filed by E. Groeb asserting multiple contingent, unliquidated causes of action against the Debtor, as well as a claim for the entire Groeb Note.

c. Claim Number 155 filed by J. Groeb asserting a claim on behalf of the JG Trust for 51% of the Groeb Note.

d. Claim Number 156 filed by Groeb LLC asserting a claim for $4,958.00, and other contingent and unliquidated claims related to real estate owned by Groeb LLC and leased by the Debtor in Belleview, Florida (the "Florida Property" and such lease, the "Florida Lease"); and

e. Claim Number 149 filed by United Bank & Trust as Trustee of the EG Trust asserting various contingent and unliquidated claims related to the lease of a facility in Onsted, Michigan (the "Michigan Lease"); and

**WHEREAS**, the Debtor has alleged a claim against E. Groeb and T. Groeb with respect to a February 1, 2012 Promissory Note in the face amount of $185,000 (the "Company Note"); and

**WHEREAS**, on November 8, 2013, the Debtor filed its Second Amended Plan of Reorganization [Docket No. 213] (the "Plan"); and

**WHEREAS,** on December 5, 2013, the Committee filed an adversary proceeding (Case No. 13-05410) against certain of the Groeb Parties, seeking, among other things, equitable subordination and recharacterization of the Groeb Filed Claims (the "Equitable Subordination Complaint"); and

**WHEREAS,** on December 5, 2013, the Debtor filed an objection to the allowance of the Groeb Filed Claims for voting purposes only, based on the Equitable Subordination Complaint (the "Voting Allowance Objection"); and

**WHEREAS**, by this Settlement Agreement the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in other matters, without further trial or adjudication of any issues of fact or law, and without any admission of liability or responsibility, a settlement of the matters identified herein.

3

4839-2047-7463.1

13-58200-wsd    Doc 336-6    Filed 12/16/13    Entered 12/16/13 15:30:04    Page 4 of 20

**NOW, THEREFORE**, in full consideration of the foregoing and of the mutual agreements contained herein, and intending to be legally bound, the Parties agree as follows:

1. **Definitions.**

    a. "Additional Parties" means the current or former officers or directors, shareholders, affiliates, agents, employees, professionals, including attorneys, and successors or assigns of the referenced entity.

    b. "Claims" means any past, present, or future, known or unknown, fixed or contingent, matured or unmatured, liquidated or unliquidated, claims, causes of actions, cross-claims, liabilities, rights, demands, penalties, assessments, damages, requests, suits, lawsuits, costs (including attorneys' fees and expenses), actions, defenses, remedies, administrative proceedings, or orders, of whatever nature, character, type, or description, asserted or which could be asserted, whenever and however occurring, whether at law or in equity, and whether sounding in tort or contract or any statutory or common law claim or remedy of any type.

    c. "Committee" means the Official Unsecured Creditors' Committee appointed in the Bankruptcy Case and each of its members, and professionals.

    d. "Committee Claims" means Debtor Claims, and those asserted in the Equitable Subordination Complaint with respect to any of the Groeb Claims.

    e. "Groeb Claims" means any Claims of any of the Groeb Parties, including those arising out of any alleged minority oppression, the Company Note, the Deferred Prosecution Events (which are disputed by the Groeb Parties), the Derivative Claim, the Florida Lease and the Groeb Note, except that the Groeb Claims shall not include the Groeb Excluded Claims.

f. "Groeb Excluded Claims" means:

   i. Any Claim arising under the Michigan Lease in the event of rejection of the Michigan Lease, or in the event of assumption, the cure amount;

   ii. Any Administrative Claims arising from unpaid post-petition rent, fees and other charges arising under the Florida Lease from January 1, 2013, until the date of rejection of the Florida Lease as approved by the court in the Bankruptcy Case.

   iii. Administrative Claims as defined, or otherwise allowed, in the Bankruptcy Code for damage to the Florida Property, arising after December 4, 2013.

   iv. Prepetition unsecured claims for repairs to the roof and floors of the Florida Property, subject to the Florida Lease.

   v. Claims relating to the Non-Compete Agreements, including defenses due to, among other reasons, the institution of the Bankruptcy Case by the Debtor and the failure of the Debtor to pay the Groeb Note in full.

   vi. The Allowed Groeb Claim, as defined in Section 6.g below.

   vii. Rights to enforce this Settlement Agreement.

g. "Debtor Claims" means any Claims of the Debtor, including but not limited to Claims arising out of the Company Note, the Deferred Prosecution Events, which are disputed by the Groeb Parties, and the Derivative Claim; provided, however, that the Debtor Claims shall not include the Debtor Excluded Claims.

h. "Debtor Excluded Claims" means any defenses and any Claims arising out of or on account of the Groeb Excluded Claims, including all rights and defenses available under

the Bankruptcy Code and applicable non-bankruptcy law arising out of or on account of the same contract or transactions as the Groeb Excluded Claims, provided, however, that: (a) neither such defenses or Claims shall be based upon the Allowed Groeb Claim or the Claims satisfied by the Allowed Groeb Claim; and (b) any such Claims shall only be those that would constitute compulsory counterclaims under Fed. R. Civ.P. 13, and shall be limited in amount to the amount sought in the Groeb Excluded Claims. For the avoidance of doubt, the Debtor may assert any Claims relating to the enforceability of the Non-Compete Agreements, it being acknowledged and understood that the Debtor and the Groeb Parties have reserved all rights, Claims and defenses with respect to the Non-Compete Agreements.

i. "Insureds" means the "Insured Organization" (as defined in the D&O Policy) and the "Insured Person" (as defined in the Directors & Officers Liability Coverage Section of the D&O Policy).

j. "Insurer Related Parties" means the Insurer's predecessors, successors, parents, subsidiaries, affiliates, assigns, transferees, representatives, directors, officers, employees, shareholders, members, partners, principals, agents, attorneys, trustees, insureds and reinsurers.

2. **Release and Settlement of Certain Known and Unknown Claims by the Groeb Parties.**

Subject to the conditions set forth in Section 6 of this Settlement Agreement, each of the Groeb Parties and the Additional Parties of the Groeb Parties hereby fully and irrevocably release, acquit and discharge the Debtor and its estate, the GUC Trust, the Committee, Horizon Partners, Horizon Capital, Marquette, Argosy and the Additional Parties of each of the foregoing, the Insureds, the Insurer and Insurer Related Parties of and from any Groeb Claims. For the avoidance of doubt, Claims released hereunder will not pass to the GUC Trust and the

6

4839-2047-7463.1

13-58200-wsd    Doc 336-6    Filed 12/16/13    Entered 12/16/13 15:30:04    Page 7 of 20

Groeb Parties do not release any of the Groeb Excluded Claims and do not release the Debtor and its estate, the GUC Trust, the Committee, Horizon Partners, Horizon Capital, Marquette, Argosy and the Additional Parties of each of the foregoing from Claims unrelated to the Debtor, the Bankruptcy Case, the Debtor's operations and its debts.

3. **Release and Settlement of Certain Known and Unknown Claims by the Debtor and Committee.**

Subject to the conditions set forth in Section 6 of this Settlement Agreement, the Debtor, its estate, and the Committee (and the GUC Trust, as the case may be) and the Additional Parties of each of the foregoing hereby fully and irrevocably release, acquit and discharge the Groeb Parties and the Additional Parties of the Groeb Parties and the Additional Parties of the Debtor, the Insureds, Horizon Partners, Horizon Capital, Marquette, Argosy, the Insurer and Insurer Related Parties of and from any Debtor Claims and Committee Claims. For the avoidance of doubt, the Debtor and the Committee (and the GUC Trust, as the case may be) do not release any of the Debtor Excluded Claims. Claims released hereunder will not pass to the GUC Trust. Furthermore, the Debtor, its estate and the Committee do not release any Additional Parties of the Groeb Parties from Claims unrelated to the Debtor, the Bankruptcy Case, the Debtor's operations and its debts.

4. **Release by Bailey, Feerick, Jenkins, Marquette, Argosy, Horizon Partners and Horizon Capital.**

Bailey, Feerick, Jenkins, the shareholders of the Debtor that are Parties, Marquette, Argosy, Horizon Partners, Horizon Capital and the GUC Trust, as the case may be, and the Additional Parties of each of the foregoing fully and irrevocably release, acquit and discharge the Groeb Parties and any related Additional Parties, the Debtor, Additional Parties of the Debtor, the Insureds, the Insurer and Insurer Related Parties of and from any Claims; provided, however,

such release does not include any such Claims against the Debtor, to the extent such Claims are treated as provided for in the Plan. For the avoidance of doubt, Bailey, Feerick, Jenkins, the shareholders of the Debtor that are Parties, Marquette, Argosy, Horizon Partners, Horizon Capital and the GUC Trust, as the case may be, do not release the Groeb Parties and any Additional Parties of any of the foregoing from Claims unrelated to the Debtor, the Bankruptcy Case, the Debtor's operations and its debts.

5. **Release of the Insurer.**

The Parties, other than the Insurer, hereby release and forever discharge Insurer and the Insurer Related Parties from any and all Claims arising out of, related to, based upon, by reason of, or in any way involving:

   a. the Derivative Claim;

   b. any claim for misrepresentations, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, or damages of any kind whatsoever arising out of or relating to the claim for insurance coverage for the Debtor Claims; or

   c. the Settlement Payment.

Notwithstanding the above, the Parties and any of their Additional Parties related thereto do not release any rights and/or claims to insurance proceeds for Claims not released pursuant to this Settlement Agreement, including any Claims asserted by non-parties to this Settlement Agreement, to which the D&O Policy may respond. For the avoidance of doubt, the Insureds do not release: (a) any Claims against the Insurer or the D&O Policy related to any present or future matters related to the Deferred Prosecution Events, which are disputed by the Groeb Parties, other than the Derivative Claim; (b) any Claims relating to the putative pending class actions and

complaints by any opt-outs; and (c) any and all rights for reimbursement of defense costs incurred to date relating to any of the Claims covered by the Policy, which are hereby preserved.

6. **<u>Effectiveness of Settlement Agreement Provisions, Settlement Payment, Approval of Settlement, Dismissals and Plan Support.</u>**

    a.    In exchange for the releases described in Sections 2, 3, 4 and 5 *supra*, the Groebs, Feerick, Jenkins and Bailey, shall authorize payment by the Insurer of $1.5 million from the D&O Policy to the General Unsecured Claims Litigation Trust (the "GUC Trust"), as defined in the Plan, or as further provided in Section 6.g, *infra*;

    b.    On or before December 16, 2013, the Debtor shall file a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 with the court in the Bankruptcy Case requesting (i) approval of this Settlement Agreement and (ii) a determination that the automatic stay does not apply, or that cause exists for the stay to be lifted, with respect to payment of proceeds of the D&O Policy in connection with the Settlement Payment, as defined below (the "9019 Motion"), and a motion to expedite consideration of the 9019 Motion, to permit consideration by the Court at the hearing to consider confirmation of the Plan ("Confirmation Hearing").

    c.    The Insurer will pay $1.5 million from proceeds of the D&O Policy to the GUC Trust by check payable to "Pachulski Stang Ziehl & Jones LLP (TIN# 95-3823150) in trust for the GUC Trust" and sent by overnight delivery to 919 North Market Street, 17th Floor, Wilmington, DE 19801 (the "Settlement Payment") within 30 days following the last to occur of:

        i.    entry of an order, not subject to appeal, approving the 9019 Motion (the "Approval Motion");

        ii.    entry of an order, not subject to appeal, confirming the Plan (the "Confirmation Order");

9

iii. the occurrence of the Cancellation Date without the exercise of the Cancellation Right by any Party; and

iv. the waiver of the Groeb Cancellation Right, as defined below.

d. This Settlement Agreement shall not be effective and shall be null and void, except as provided below, if any one of the following (an "Avoidance Event") occurs: (i) the 9019 Motion is denied at the Confirmation Hearing; or (ii) the 9019 Motion seeking an Approval Order is not granted by the Court on or before February 1, 2014 (the latter, the "Expiration Event"); (iii) the Groebs exercise the Groeb Cancellation Right by the Groeb Cancellation Date, as defined below; or (iv) the Cancellation Right, as defined below is exercised by any Party on or prior to the Cancellation Date, as defined below. If an Avoidance Event occurs, the Parties to this Settlement Agreement shall retain their respective rights to matters related to the Debtor Claims, the Committee Claims and the Groeb Claims and the Claims released in Sections 2, 3, 4 and 5 above and such releases shall be of no force and effect; provided however, that sections 6.f and 6.h of this Settlement Agreement shall survive notwithstanding the occurrence of the any Avoidance Event described in Section 6(d)(ii-iv) of this Settlement Agreement.

e. Upon execution of this Settlement Agreement, the Committee will agree to a stay of any of Defendants' obligations under the Equitable Subordination Complaint. Upon receipt of the Settlement Payment, the Committee will dismiss the Equitable Subordination Complaint with prejudice.

f. Each of the Groeb Parties shall affirmatively vote all of their Claims in favor of the Plan by the voting deadline previously agreed to by and among the Groeb Parties and the

Debtor, and agree to support the Plan, and the Parties agree to use best efforts to get the Plan confirmed and this Settlement Agreement approved.

g. Each of the Groeb Parties shall have a General Unsecured Claim in the aggregate amount of $1.46 million ("Allowed Groeb Claim") in addition to the Groeb Excluded Claims arising under Section 1.f.i and iv, which shall be allocated among the Groeb Parties as they determine. Except with respect to the Non-Compete Agreements, the Allowed Groeb Claim represents a full and complete satisfaction of all Claims of the Parties relating to the Company Note, the Equitable Subordination Complaint (except as to the Non-Compete Agreements), the Groeb Note and the Voting Allowance Objection (other than Groeb Excluded Claims and the Debtor Excluded Claims with respect to the Florida Lease). Any distributions on the Allowed Groeb Claim shall be paid to E. Groeb and allocated among the Groeb Parties by E. Groeb, without liability to the Debtor, the Committee or the GUC Trust, pursuant to the Groeb Filed Claims.

h. Upon execution of this Settlement Agreement, the claims constituting the Allowed Groeb Claim will be allowed for voting purposes only, and the Voting Allowance Objection shall be withdrawn.

i. Upon entry the Approval Order, the claims constituting the Allowed Groeb Claim will be allowed for all purposes under the Plan, including distributions.

j. Any distributions to be made under the Plan to any of the Groeb Parties, based on the Allowed Groeb Claim, shall be disbursed as follows: a) the first $150,000 of distributions on the Allowed Groeb Claim shall be distributed to E.Groeb, for distribution as set forth above; b) any distributions above the first $150,000 shall be split equally (50/50) between E.Groeb for

11

distribution as set forth above, and Pachulski Stang Ziehl & Jones LLP in trust for the GUC Trust, or the GUC Trust, in the event the Plan is effective.

  k. For purposes of clarity, the Parties hereto agree that any administrative claims allowed to the Groeb Parties shall not be subject to any sharing provisions described in Section 6.j, *supra*. The Groeb Parties may file such administrative claims following confirmation of the Plan, in the time frames set by the Plan.

  l. Any payment of D&O Policy proceeds is subject to the Insurer's ongoing reservation of rights, as articulated in its prior correspondence, including but not limited to its reservations under D&O section paragraphs ii(l) (definition of Loss), as modified by Endorsements no. 1 and 4; iii(a)(10) (fraudulent activity or willful violation of law exclusion) and (11) (profit exclusion), as modified by Endorsements No. 1 and 4; iii(b) (non-monetary relief exclusion) and Endorsement No. 8 (prior acts exclusion); and its reservation of the right to recoup any amounts paid in the event it is determined that such amounts are not covered under the D&O Policy. In the event that an Insured as defined in the D&O Policy seeks coverage under the D&O Policy for any future claim, such claim would be subject to all of the terms, conditions and exclusions of the D&O Policy.

  **7. <u>Right of Cancellation.</u>**

The Groebs shall have a right to cancel this Settlement Agreement pursuant to the Document Review Agreement dated December 12, 2013 (the "Groeb Cancellation Right"), which is incorporated by reference as if fully set forth herein. Subject to all other terms and conditions of the Document Review Agreement, the Document Review Agreement provides that within 24 hours of the end of the Review Period, as defined in the Document Review Agreement, the Groebs' counsel will notify Judy A. O'Neill and Brandi Walkowiak, at Foley & Lardner

LLP, Debtor's counsel, in writing by email, whether the Groebs will exercise the Groeb Cancellation Right as defined in this Settlement Agreement. If no such notice is provided within 24 hours of the end of the Review Period (the "Groeb Cancellation Date"), the Groeb Cancellation is deemed waived.

In addition, in the event that the Parties are unable to reach a settlement on or before February 14, 2014 (the "Cancellation Date"), which date can be extended by agreement among the Parties, with the Class Action Plaintiffs[1] and the Class[2] in the Consolidated Amended Class Action Complaint filed on November 22, 2013 (the "CAC") in *In re Honey Transshipping Litigation*, 13 C 2905 (N.D. Ill.) (the "Class Action"), a proposed class action, in which Class Action Plaintiffs assert claims related to alleged honey transshipping individually, on behalf of the proposed Class, including the individuals and entities represented by Ben Barnow that have filed a motion for leave to file an individual complaint at Docket #65 on November 21, 2013, the Parties shall have the right to render this Settlement Agreement null and void by notifying counsel for each of the Parties hereto in writing and each of the Parties hereto shall retain and revert to their respective rights and positions prior to the execution of this Settlement Agreement (the "Cancellation Right").

8. **Groeb Covenants Not to Compete**.

The Debtor and the Reorganized Debtor believe that the Non-Compete Agreements currently remain in full force and effect in all regards notwithstanding the Bankruptcy Case or otherwise, and that the Non-Compete Agreements shall continue to remain in full force and effect and enforceable in all regards by the Reorganized Debtor following the effective date of

---

[1] Richard Adee d/b/a Adee Honey Farms; Bill Rhodes Honey Company, LLC; Hackeberg Apiaries; Edward J. Doan d/b/a Doan's Honey Farms; and Wee Bee Honey, Inc.
[2] Class is defined in the CAC as "all individuals and entities with commercial beekeeping operations (300 or more hives) and packers of honey that produced and/or sold honey in the United States during the period from 2001 to the present."

the Plan (the "Effective Date"). E. Groeb, T. Groeb, and J. Groeb note the position of the Debtor and the Reorganized Debtor and reserve all rights to challenge the enforceability of the Non-Compete Agreements under applicable bankruptcy and non-bankruptcy law. All other Parties reserve all rights to defend and challenge any such challenge.

9. **Miscellaneous.**

a. It is expressly understood and agreed that the terms hereof are contractual and that the agreement herein contained and the consideration contemplated hereby is to compromise disputed claims and avoid litigation, and that no statement made herein, payment, or release or other consideration given shall be construed as an admission by any of the parties hereto of any kind or nature.

b. This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

c. This Settlement Agreement constitutes the entire agreement between the Parties hereto, superseding all prior oral or written representations, negotiations, understandings and agreements, on the subject matter hereof, except for the D&O Policy.

d. The Parties acknowledge and agree that the invalidity or unenforceability of any provision in this Settlement Agreement shall not affect the validity or enforceability of any other provision in this Settlement Agreement and acknowledge that the Settlement Payment will reduce the limit of liability of the D&O Policy.

e. Notwithstanding any statute, including but not limited to California Civil Code Section 1542, or provision of the common law that provides that a general release does not extend to claims that a releasor does not know or suspect to exist at the time of executing the release, the releases in Paragraphs 2, 3, 4 and 5 of this Settlement Agreement shall be deemed to

14

constitute full releases in accordance with their terms.  The Debtor, the Groeb Parties, Feerick, Jenkins, Bailey, the Insurer, the Committee (and the GUC Trust, as the case may be) and any Additional Parties of the foregoing shall be deemed knowingly and voluntarily to have waived, to the fullest extent permitted by law, the provisions, rights, and benefits of any federal law or the law of any state or territory or common law that would in any way limit the releases in Paragraphs 2, 3, 4 and 5 of this Settlement Agreement.  The Parties acknowledge and agree that without such waiver the Settlement Agreement would not have been entered into.

        f.      This Settlement Agreement was negotiated at arms' length with all Parties receiving advice from independent legal counsel.  This Settlement Agreement is executed voluntarily by each of the Parties hereto without any duress or undue influence on the part, or on behalf, of any of them.  Each of the Parties represents and warrants to each other that they have read and fully understand each of the provisions of this Settlement Agreement.  Each of the Parties represents and warrants that they are unaware of the existence of any other possible Claims that have not been and/or may be asserted, other than the CAC and Class Action (including opt-out claims related thereto), potential civil and criminal claims by the United States Department of Justice, potential contribution, indemnity and cross claims among the asserted or potential defendants in the CAC and Class Action (including opt-out claims related thereto), and potential employee relations claims against the Groeb Parties; provided, however, with respect to the Debtor and the shareholders of the Debtors that are Parties, such representation and warranty is made by the officers, directors or, in the case of an LLC, the managers, based solely on their actual knowledge, without due inquiry.  It is the intent of the Parties hereto that no part of this Settlement Agreement be construed against any of the Parties. The provisions of this Settlement

15

4839-2047-7463.1

Agreement shall be interpreted in a reasonable manner to effectuate the purposes of the Parties hereto and this Settlement Agreement.

      g.      The Debtor represents and warrants that GF Acquisition, Inc. merged into Groeb Farms, Inc. in 2007, and Groeb Farms, Inc. is the sole surviving corporate entity following that merger.

      h.      The Parties hereto expressly represent and warrant that they have not sold, granted, transferred or assigned or caused to be sold, granted, transferred or assigned to any other person, firm or corporation any portion of the Claims released herein nor any portion of any recovery or settlement to which they may be entitled. However, the Derivative Claims released hereunder shall transfer to the GUC Trust only if the Court rejects the Settlement Agreement or the Settlement Agreement is otherwise terminated in accordance with its terms.

      i.      Each of the Groeb Parties represents and warrants that it is not aware of any potential Claims by the Debtors or the Additional Parties of the Debtor that have not been and/or may be asserted, other than the CAC and Class Action (including opt-out claims related thereto), potential civil and criminal claims by the United States Department of Justice, potential contribution, indemnity and cross claims among the asserted or potential defendants in the CAC and Class Action (including opt-out claims related thereto), and potential employee relations claims against of the Groeb Parties.

      j.      This Settlement Agreement shall bind, and inure to the benefit of each of the Parties hereto and all applicable Additional Parties.

      k.      The representations, warranties, agreements, and promises made by the Parties to this Settlement Agreement and contained herein shall survive the execution of this Settlement Agreement.

l. Each party and signatory to this Settlement Agreement represents and warrants to each other party hereto that such party or signatory has full power, authority and legal right and has obtained all approvals and consents necessary, to execute, deliver and perform all actions required under this Settlement Agreement and that this Settlement Agreement constitutes a valid and binding obligation.

m. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall be considered one instrument and shall become binding when one or more counterparts have been signed by each of the Parties and delivered to the other.

n. The Bankruptcy Court shall retain jurisdiction to hear and decide all matters which arise under this Settlement Agreement.

**10. <u>Headings</u>.**

The section titles, captions, and headings contained in this Settlement Agreement are inserted only as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Settlement Agreement or the effect of any of its provisions.

**11. <u>Recitals</u>.**

The Recitals set forth at the beginning of this Settlement Agreement shall not be admissible to prove the truth of the matters asserted therein in any action or proceeding involving any of the Parties hereto (other than an action or proceeding brought to enforce the terms of this Settlement Agreement), nor does any of the Parties hereto intend such Recitals to constitute admissions of fact by any of them.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

| | |
|---|---|
| **GROEB FARMS, INC.** | **HORIZON CAPITAL PARTNERS III** |
| By: _____<br>    Rolf B. Richter<br>Its:  Chief Executive Officer | By: _____ |
| Date: _____ | Date: _____ |

**FEDERAL INSURANCE COMPANY**

By: _____

Date: _____

_____
Thomas Jenkins

Date: _____

_____
Michael Bailey

Date: _____

_____
Robert Feerick

Date: _____

**HORIZON PARTNERS, LTD.**

By: _____

Date: _____

4839-2047-7463.1

13-58200-wsd    Doc 336-6    Filed 12/16/13    Entered 12/16/13 15:30:04    Page 19 of 20

**MARQUETTE CAPITAL FUND I, LP**

By: _____

Date: _____

**ARGOSY INVESTMENT PARTNERS IIII L.P.**

By: _____

Date: _____

_____
Ernest Groeb

Date: _____

_____
Troy Groeb

Date: _____

_____
E. Jeanne Groeb

Date: _____

**GROEB FARMS, LLC**

By: _____

Its: _____

Date: _____

Official Committee of Unsecured Creditors in Case No. 13-58200

By: _____

Its: _____

Date: _____

**GROEB FAMILY PARTNERSHIP**

By: _____

Its: _____

Date: _____

**E. JEANNE GROEB LIVING TRUST**

By: _____

Its: _____

Date: _____

**ERNEST L. GROEB, JR. LIVING TRUST**

By: _____

Its: _____

Date: _____