## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GROEB FARMS, INC. | ) | Case No. 13-58200 |
| | ) | |
| Debtor. | ) | Hon. Walter Shapero |
| | ) | |

## ORDER CONFIRMING THE SECOND AMENDED PLAN OF REORGANIZATION OF GROEB FARMS, INC., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The *Second Amended Plan of Reorganization of Groeb Farms, Inc., Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or modified from time to time, the "Plan"),[1] and incorporated herein by reference, having been filed with this Court (the "Court") on November 8, 2013 [Docket No. 213] by Groeb Farms, Inc. in the above-captioned Chapter 11 Case (the "Debtor"); and the Court having entered, after due notice and a hearing, an order dated November 11, 2013 (the "Initial Solicitation Order") [Docket No. 220] (a) approving the Disclosure Statement, (b) approving the form and manner of notice of the Confirmation Hearing, (c) establishing procedures for filing objections to confirmation of the Plan, (d) approving Kurtzman Carson Consultants, LLC as the balloting agent (the "Balloting Agent"), (e) approving the proposed Solicitation Package (as defined below) relating to the Plan, and related procedures, (f) setting the Voting Record Date, (g) approving the forms of ballots to be used in connection with solicitation and voting upon the Plan, (h) establishing the voting deadline for the Plan, (*i*) approving the procedures for tabulating acceptances and rejections of

---

[1]    All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Plan.

the Plan, (j) establishing a deadline and procedures for temporary allowance of Claims for certain purposes, and (k) approving certain other related matters; and the Disclosure Statement having been transmitted to all holders of Claims in Classes 3, 4, 5A, and 5B (collectively, the "Voting Classes") as provided for by the Initial Solicitation Order; and the Court having entered, after due notice and deliberation, an order dated November 20, 2012 [Docket No. 251] (the "Supplemental Solicitation Order," and, together with the Initial Solicitation Order, the ""Solicitation Order") approving a supplemental mailing (the "Supplemental Mailing") of the Solicitation Package; and the Supplemental Mailing having been transmitted as provided for by the Supplemental Solicitation Order; and the Court having found that the Debtor filed the Plan Supplement on or before December 6, 2013, as required under the Plan and Solicitation Order; and the Court having held the Confirmation Hearing on December 19, 2013, after due notice to holders of Claims and other parties in interest in accordance with the Disclosure Statement, the Solicitation Order, title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Eastern District of Michigan (the "Local Bankruptcy Rules"); and upon all of the proceedings had before the Court, and after full consideration of: (a) the *Producer/Packer Claimants' Objection to Confirmation of Debtor's Proposed Second Amended Plan of Reorganization* [Docket No. 321] and the *Limited Objection of Proposed Class Representatives to Debtor's Second Amended Plan of Reorganization* [Docket No. 322]; (b) all other informal objections to the Plan; (c) the *First Supplement to the Second Amended Plan of Reorganization of Groeb Farms, Inc.* [Docket No. 311] and any additional supplements filed with respect thereto prior to the Effective Date (collectively, the "Plan Supplement"); (d) the *Debtor's Memorandum of Law In Support of an Order Confirming*

2

the *Second Amended Plan of Reorganization of Groeb Farms, Inc., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 363] (the "Confirmation Brief"); (e) the *Declaration of Jack Irvin In Support of the Second Amended Plan of Reorganization of Groeb Farms, Inc., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 366] (the "Irvin Declaration"); (f) the *Certification Of P. Joseph Morrow IV With Respect to the Tabulation of Ballots on the Second Amended Plan of Reorganization of Groeb Farms, Inc., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 362] (the "Voting Report"); (g) the testimony in each declaration and any additional testimony presented to the Court; and (h) all other evidence proffered or adduced at the Confirmation Hearing, including arguments of counsel made in connection therewith; and after due deliberation and sufficient cause appearing therefor, it hereby is DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.  Findings and Conclusions.  The determinations, findings, judgments, decrees, and orders set forth and incorporated in this order (the "Order") constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.  The Court hereby orders all of the findings of fact and conclusions of law contained herein.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference into, and are an integral part of, this Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

2.     <u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  The

Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334.  Venue

is proper pursuant to 28 U.S.C. §§1408 and 1409.  Confirmation is a core proceeding pursuant to

28 U.S.C. § 157(b)(2) and confirmation of a plan by this Court is a constitutional exercise of the

jurisdiction conferred by Congress on this Court.  The Court has exclusive jurisdiction to

determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and

should be confirmed.

3.     <u>Eligibility for Relief</u>.  The Debtor was and is an entity eligible for relief under

section 109 of the Bankruptcy Code.

4.     <u>Commencement of the Chapter 11 Case</u>.   On October 1, 2013 (the

"Petition Date"), the Debtor commenced a case under chapter 11 of the Bankruptcy Code.  Since

the Petition Date, the Debtor has operated its business and managed its properties as a debtor in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee or

examiner has been appointed in the Chapter 11 Case.

5.     <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11

Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other

documents filed and orders entered thereon.  The Court also takes judicial notice of all evidence

proffered or adduced and all arguments made at the hearings held before the Court during the

pendency of the Chapter 11 Case.

6.     <u>Claims Bar Date</u>.  On October 4, 2013, this Court entered an order (the "Bar Date

Order") [Docket No. 48] that, among other things:  (a) established bar dates for filing Proofs of

Claim; (b) approved the form and manner for filing Proofs of Claim; and (c) approved notice of

such bar dates.  Specifically, the Bar Date Order established the following deadlines for filing

4822-2532-6615.4

Proofs of Claim: (a) 4:00 p.m. prevailing Pacific Time on November 4, 2013, as the general bar date (the "General Bar Date"); (b) 5:00 p.m. prevailing Pacific Time on March 4, 2014, as the bar date for governmental units; (c) with respect to claims arising from the rejection of an unexpired lease or executory contract, the later of (i) the General Bar Date and (ii) 30 days from the date of the entry of an order authorizing the Debtor to reject such an unexpired lease or executory contract; and (d) supplemental bar dates as established by the Debtor with respect to certain holders of Claims and Interests who did not receive initial notice of the bar date. On November 1, 2013, this Court entered a supplemental order (the "Supplemental Bar Date Order") [Docket No. 147] that established 4:00 p.m. prevailing Pacific Time on November 26, 2013 as the bar date with respect to certain creditors identified in the Supplemental Bar Date Order.

7.      Burden of Proof. The Debtor, as proponent of the Plan in accordance with section 1121(a) of the Bankruptcy Code, has met its burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan. Further, the Debtor has proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

8.      Transmittal and Mailing of Materials; Notice. As evidenced by the Certificate of Service of P. Joseph Morrow re: Documents Served on November 12, 2013 [Docket No. 290], the *Affidavit of Publication of Notice of Hearing on Confirmation of Plan in the Wall Street Journal* [Docket No. 295], the *Affidavit of Publication of Notice of Hearing on Confirmation of Plan in the Detroit News/Detroit Free Press* [Docket No. 296], the *Affidavit of Publication of Notice of Hearing on Confirmation of Plan in the Detroit News/Detroit Free Press* [Docket No. 297], all parties required to be given notice of the Disclosure Statement, the Plan, and Confirmation Hearing (including the deadline for filing and serving objections to

4822-2532-6615.4

Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

9. <u>Solicitation and Notice</u>. The Plan, Disclosure Statement, Solicitation Order, notice of the Confirmation Hearing, and an appropriate ballot (collectively, the "<u>Ballots</u>") for voting on the Plan with a return envelope or a notice of non-voting status (in substantially the forms approved pursuant to the Solicitation Order) (collectively, the "<u>Solicitation Package</u>") were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order. The solicitation of votes on the Plan complied with the solicitation procedures in the Solicitation Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

10. <u>Voting</u>. Before the Confirmation Hearing, the Debtor filed the Voting Report. Votes to accept or reject the Plan have been solicited and tabulated in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and all other applicable rules, laws, and regulations.

11. <u>Notice of Plan Supplement Documents</u>. The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Plan, the Solicitation Order, the Bankruptcy Code, and the Bankruptcy Rules.

12. <u>Rules of Interpretation</u>. This Order shall be interpreted according to the rules of interpretation set forth in Article I.B of the Plan.

THE COURT HEREBY DECREES:

## MODIFICATIONS TO THE PLAN

13.     Plan Modifications.  Subsequent to solicitation of the Plan, the Debtor made certain modifications to the Plan (the "Plan Modifications"), which are reflected in this Order, including without limitation, paragraphs 66(b), 66(c), 66(d), 66(h), 70, 79, 93, 107, 112, 113 and 114 of this Order.  All modifications to the Plan contained herein are consistent with the provisions of the Bankruptcy Code, including sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code, including any modifications disclosed on the record at the Confirmation Hearing.  Except as provided for by law, contract, or prior order of the Court, the modifications made since the commencement of solicitation either:  (a) do not materially adversely affect the recovery on account of any Claim or Interest under the Plan; or (b) have been accepted in writing by the affected holders of Claims or Interests in accordance with Bankruptcy Rule 3019(a).  Prior notice regarding the substance of the modifications, together with the filing with the Court of the Plan as modified by the Plan Modifications and the disclosure of any Plan Modifications on the record at the Confirmation Hearing, constitute due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code (especially in light of previously provided disclosures), nor do they require that holders of Claims entitled to vote be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The Plan as modified and attached hereto shall constitute the Plan submitted for Confirmation by the Court.

14.     Deemed Acceptance of Plan as Modified.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the

7

Plan as modified by the Plan Modifications. No holder of a Claim shall be permitted to change its vote as a consequence of the Plan Modifications.

15. <u>Bankruptcy Rule 3016</u>. The Plan is dated and identifies the Entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

16. <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. §§ 1122, 1123, 1125, and 1127)</u>. The Plan fully complies with sections 1122 and 1123 of the Bankruptcy Code. The Debtor has complied with section 1125 with respect to the Disclosure Statement and the Plan. The requirements of section 1127 of the Bankruptcy Code have been satisfied.

## **CONFIRMATION**

17. <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

(a) <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. Article III of the Plan designates Classes of Claims and Interests, other than Administrative Claims and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated into Classes. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).  Article III of the Plan specifies that Claims in Classes 1, 2, and 5C are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3, 4, 5A, 5B, 6, and 7. The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

(c)    No Discrimination (11 U.S.C. § 1123(a)(4)).  Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

(d)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including, without limitation: (a) the implementation of the restructuring transactions contemplated by the Plan, (b) the identification of sources of consideration from which the Debtor will make distributions under the Plan; (d) the creation and governance of the General Unsecured Claims Trust; (d) the continued corporate existence of the Debtor; (e) the vesting of assets in the Reorganized Debtor; (f) the cancellation of existing securities and agreements and surrender of existing securities (except as otherwise provided for in the Plan or any other agreement, instrument, or document incorporated in the Plan or Plan Supplement); (g) the authorization of all corporate action necessary to effectuate the Plan (including issuance of the New Equity and New Warrants, selection of the directors and officers for the Reorganized Debtor, execution and delivery of the Exit Facility Documents and the New

9

Subordinated Notes, adoption of the Management Incentive Plan, formation of the General Unsecured Claims Litigation Trust, implementation of the restructuring transactions contemplated by the Plan, and all other actions contemplate by the Plan); (h) the adoption of the Management Incentive Plan; (*i*) the adoption and filing of the New Organizational Documents; (j) the appointment of the directors and officers of the Reorganized Debtor; (k) the preservation of certain of the Debtor's Causes of Action (not including, for the avoidance of doubt, the General Unsecured Claims Litigation Trust Causes of Action); and (l) the release of the Avoidance Actions. The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

(e)     <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Article V.J of the Plan provides that the New Organizational Documents will prohibit the issuance of non-voting securities. The New Organizational Documents of Groeb Farms, Inc. shall provide that Groeb Farms, Inc. shall not issue any non-voting equity securities to the extent required by Bankruptcy Code section 1123(a)(6). The foregoing satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(f)     <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. Article V.K of the Plan describes the manner of selection of directors and officers of the Reorganized Debtor. Such provisions are entirely consistent with the interests of creditors, equity security holders, and public policy. The Plan, therefore, satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(g)     <u>Discretionary Contents of the Plan (11 U.S.C. § 1123(b))</u>. The Plan contains various provisions that may be construed as permissive, but are not required for Confirmation under the Bankruptcy Code. As set forth below, such

4822-2532-6615.4

discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code. As a result, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

(i)     *Section 1123(b)(1) — Claims and Interests.*  Pursuant to section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan specifies whether each Class of Claims or Interests is Impaired or Unimpaired.

(ii)     *Section 1123(b)(2) — Executory Contracts and Unexpired Leases.* Pursuant to section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan provides for the assumption or rejection of the Debtor's Executory Contracts and Unexpired Leases that the Debtor did not previously assume or reject pursuant to section 365 of the Bankruptcy Code.

(iii)     *Section 1123(b)(3) — Settlement, Releases, Exculpation, Injunction, and Preservation of Claims Provisions.*

(h)     <u>Cure of Defaults (11 U.S.C. § 1123(d)</u>.  Article VI.C of the Plan provides for the satisfaction of any Cure Claims under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365 of the Bankruptcy Code by payment of such Cure Claim in Cash on the Effective Date, subject to the limitations described in Article VI.C of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree with the Debtor.  The Debtor, in accordance with the Plan, distributed notices of proposed assumption and proposed amounts of Cure Claims to the applicable counterparties, which notices included procedures for objecting to (and ultimately resolving) proposed assumptions of Executory Contracts and Unexpired Leases and any amounts of Cure Claims to be paid in connection therewith.

11

18.  Compromise and Settlement.  Pursuant to Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute good faith compromises of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The compromises and settlements embodied in the Plan are in the best interests of the Debtor, its Estate, and all holders of Claims and Interests, and are fair, equitable, and reasonable.

19.  Release of Liens.  The full release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate set forth in Article IX.C of the Plan (the "Lien Release") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtor, its Estate, and holders of Claims and Interests.

20.  Releases by the Debtor.  The release and discharge of Claims, Causes of Action, and other liabilities by the Debtor and the Reorganized Debtor set forth in Article IX.D of the Plan (the "Debtor Release") releases certain parties and is a necessary and important aspect of the Plan.  The Debtor Release is based on a valid exercise of sound business judgment and is reasonable and acceptable pursuant to the standards that courts in this district generally apply. Each Released Party provided good and valuable consideration in exchange for the Debtor Release, including, among other things, the service of each Released Party in facilitating the reorganization of the Debtor and the implementation of the restructuring contemplated in the Plan.  Each Released Party played an integral role in the formulation of the Plan and has expended significant time and resources analyzing and negotiating the issues arising on account

4822-2532-6615.4

of or related to the Debtor's prepetition capital structure and certain operational and litigation matters.

21.    <u>Third Party Release by Holders of Claims and Interests</u>.  The release provided by the Released Parties and each holder of a Claim against or Interest in the Debtor that votes in favor of the Plan (or is deemed to accept the Plan) (the "<u>Third Party Release</u>") is an important aspect of the Plan.  The Third Party Release is designed to provide finality for the Released Parties regarding the parties' respective obligations under the Plan.

22.    <u>Ballot Release Language</u>.  The Ballots sent to all holders of Impaired Claims entitled to vote on the Plan, as well as the Confirmation Hearing Notice, unambiguously provided in bold font that the Third Party Release was contained in the Plan.  Thus, all parties entitled to vote to accept or reject the Plan were provided with due, adequate, and sufficient notice that they would be bound by the Third Party Release if the Plan was approved by this Court.

23.    <u>Exculpation</u>.    The exculpation set forth in Article IX.F of the Plan (the "<u>Exculpation</u>") is appropriate under applicable law because it is part of the Plan and was proposed in good faith, was vital to the Plan formulation process, and is appropriately limited in scope.  The Exculpation, including its carve-out for gross negligence and willful misconduct, is consistent with established practice in this jurisdiction and others.

24.    <u>Injunction</u>.    The injunction provision set forth in Article IX.G of the Plan (the "<u>Injunction</u>") is necessary to preserve and enforce the Lien Release, the Debtor Release, the Third Party Release, and the Exculpation and is narrowly tailored to achieve this purpose.

25.    <u>Lien Release, Debtor Release, Third Party Release, Exculpation, and Injunction</u>, Based on the foregoing, each of the Lien Release, the Debtor Release, the Third Party Release,

the Exculpation, and the Injunction set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is necessary to implement the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtor, the Reorganized Debtor, its Estate, and the holders of Claims and Interests; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Case with respect to the Debtor and the Reorganized Debtor; and (f) is consistent with applicable law, including sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The Debtor Release and the Third Party Release each is given in exchange for and is supported by fair, sufficient, and adequate consideration provided by each of the Released Parties. The record of the Confirmation Hearing and the Chapter 11 Case is sufficient to support the Lien Release, the Debtor Release, the Third Party Release, the Exculpation, and the Injunction provisions contained in Article IX of the Plan. The failure to implement the Lien Release, the Debtor Release, the Third Party Release, the Exculpation, and the Injunction provisions of the Plan would seriously impair the Debtor's ability to confirm the Plan.

26. <u>Preservation of Causes of Action</u>. Subject to Article V.O and Article IX of the Plan, Article V.N of the Plan appropriately provides that, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The provisions regarding the

preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtor, the Reorganized Debtor, its Estate, and holders of Claims and Interests.

27.     The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor has complied with the applicable provisions of the Bankruptcy Code.   More specifically, the Debtor:  (a) is a proper debtor under section 109 of the Bankruptcy Code; (b) has complied with all applicable provisions of the Bankruptcy Code, including section 1125, 1126, and 1127, except as otherwise provided or permitted by order of the Court; and (c) has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Solicitation Package and in tabulating the votes with respect to the Plan.

28.     No Solicitation Prior to Approval of Disclosure Statement.  The Debtor and its officers, directors, employees, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, other professionals, agents, affiliates, fiduciaries, and representatives (collectively, the "Debtor's Representatives") did not solicit the acceptance or rejection of the Plan by any holders of Claims after the Petition Date and before the approval and transmission of the Disclosure Statement.  Votes to accept or reject the Plan were only solicited by the Debtor and certain of the Debtor's agents after disclosure to holders of Claims of adequate information as defined in section 1125(a) of the Bankruptcy Code.

29.     Other Solicitations.  The Debtor's Representatives as of or after the Petition Date (a) have solicited acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Solicitation Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations; (b) have participated

15

in good faith and in compliance with the applicable provisions of the Solicitation Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in the offer, issuance, and distribution of the New Subordinated Notes, the New Equity, and the New Warrants; and (c) are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code, the Debtor Release, the Third Party Release, the Exculpation, and the Injunction provisions set forth in Article IX of the Plan, as applicable.

30.     Voting.  Pursuant to section 1126 of the Bankruptcy Code, only holders of Allowed Claims in Impaired Classes of Claims that will receive or retain property under the Plan on account of such Claims voted to accept or reject the Plan.

31.     Plan Modification.  The Debtor has modified the Plan by this Order to reflect certain non-material, technical changes.  Because these changes do not materially alter the terms of the Plan, including potential recoveries to the holders of Claims and Interests, the Debtors have complied with the requirements of section 1127 of the Bankruptcy Code and no further solicitation is required.

32.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtor has proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the Plan itself, and the process leading to its Confirmation.  The good faith of each of the Entities who negotiated the Plan is evident from the facts and records of the Chapter 11 Case, the Disclosure Statement and the hearing thereon and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Case.  The Plan (including the Plan Supplement) is the product of arm's-length negotiations among the Debtor and the Debtor's key creditor constituencies, through their respective professionals.  The Plan itself and the process leading to

16

its formulation provide independent evidence of the good faith of such Entities who negotiated the Plan, serve the public interest, and assure fair treatment of holders of Claims and Interests. The Debtor and the Debtor's key creditor constituencies, through their respective professionals, negotiated with the legitimate and honest purposes of maximizing the value of the Debtor's Estate for the benefit of all creditors and affording the Debtor the ability to emerge from the Chapter 11 Case with a deleveraged capital structure and resolution of the Class Action Claims. Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Chapter 11 Case was filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtor to reorganize and emerge from chapter 11 with restructured operations that will allow the Debtor to effectively compete in the marketplace.

33.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Payments made or to be made by the Debtor or Reorganized Debtor, as applicable, for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case have been approved by, or are subject to the approval of, the Court as reasonable. The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

34.     Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)). The Debtor has disclosed the identity and affiliations of the individuals proposed to serve as the initial directors and officers of the Reorganized Debtor and the identity and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtor. The proposed directors and officers for the Reorganized Debtor are qualified, and the appointments to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of the

4822-2532-6615.4

holders of Claims and Interests and with public policy. The Debtor therefore has satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

35.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Chapter 11 Case.

36.     <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. The liquidation analysis attached as **<u>Exhibit C</u>** to the Disclosure Statement (the "<u>Liquidation Analysis</u>") and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are: (a) reasonable, persuasive, and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each holder of an Allowed Claim or Interest in such Class has voted to accept the Plan (or is conclusively presumed to have accepted the Plan) or will receive under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive if the Debtor was liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

37.     <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Section 1129(a)(8) of the Bankruptcy Code requires that each Class of claims or interests must either accept a plan or be unimpaired under a plan. Classes 1, 2, and 5C are Unimpaired Classes of Claims and Interests, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes 3, 4, 5A, and 5B, the Impaired Classes entitled to vote on the Plan, have voted to accept the Plan. Classes 6 and 7 are not receiving any

distributions under the Plan and are conclusively presumed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan, therefore, does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code. Nevertheless, the Plan may be confirmed because the Debtor has met the requirements of sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as set forth below.

38. <u>Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Claims, Fee Claims, DIP Facility Claims, and Priority Tax Claims as set forth in Article II of the Plan is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

39. <u>Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>. As set forth in the Voting Report, Classes 3, 4, 5A, and 5B, all Impaired Classes of Claims entitled to vote on the Plan, voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired and has accepted the Plan, determined without including any acceptance of the Plan by any Insider. The Plan, therefore, satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

40. <u>Feasibility of the Plan (11 U.S.C. § 1129(a)(11))</u>. Based upon the evidence proffered or adduced at or prior to the Confirmation Hearing, including the Confirmation Brief, the Irwin Declaration, the Voting Report, and the projections for the Reorganized Debtor's financial performance for the years 2014–2018, attached as **Exhibit D** to the Disclosure Statement, all of which is reasonable, persuasive, and credible and has not been controverted by other evidence, the Plan is feasible and Confirmation is not likely to be followed by the

Reorganized Debtor liquidating or requiring further financial reorganization. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

41. <u>Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))</u>. Article XIII.C of the Plan provides for the payment of all fees payable by the Debtor under 28 U.S.C. § 1930(a). The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

42. <u>Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16))</u>. The Debtor does not owe any retiree benefit obligations, or domestic support obligations, is not an individual, and is not a nonprofit corporation. Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case.

43. <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>. Despite the Debtor's inability to satisfy section 1129(a)(8) of the Bankruptcy Code, based upon the evidence proffered, adduced, and presented by the Debtor at the Confirmation Hearing, or otherwise filed or on the record in the Chapter 11 Case, including the Disclosure Statement and the exhibits thereto, the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 6 and 7 as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Furthermore, all of the Classes of Claims entitled to vote on the Plan have voted in favor of the Plan. Thus, the Plan may be Confirmed notwithstanding the deemed rejection of the Plan by Classes 6 and 7.

44. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtor in the Chapter 11 Case. The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

45. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the

Securities Act, 15 U.S.C. § 77e. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

46. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, all other filed pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

47. <u>Good Faith (11 U.S.C. § 1125(e))</u>. Based on the record in the Chapter 11 Case, the Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, but not limited to, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and will continue to act in good faith if they consummate the Plan and the agreements, settlements, transactions, and transfers thereby, and take the actions authorized and directed by this Order, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article IX.F of the Plan.

48. <u>Disclosure — Agreements and Other Documents</u>. The Debtor has disclosed all material facts regarding: (a) the New Equity; (b) the Exit Facility Documents; (c) the General Unsecured Claims Litigation Trust Agreement; (d) the form of the Management Incentive Plan; (e) the election of the directors and officers for the Reorganized Debtor; (f) the New Intercreditor Agreement; (g) the form of New Organizational Documents; (h) the form of the New Subordinated Notes; (i) the New Trade Agreement; (j) the terms of the New Warrants; (k) the

Schedule of Assumed Executory Contracts and Unexpired Leases; (l) the list of retained Causes of Action; and (m) the proposed corporate structure of the Reorganized Debtor, as set forth in the restructuring transaction memorandum filed as part of the Plan Supplement (the "Restructuring Transactions Memorandum").

49.     <u>Implementation of Necessary Documents and Agreements</u>.  All documents and agreements necessary to implement the Plan are in the best interests of the Debtor, the Reorganized Debtor, and holders of Claims and Interests, have been negotiated in good faith and at arm's-length, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.  The Debtor has exercised reasonable business judgment in determining to enter into all such documents and agreements and has provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements are fair and reasonable and are approved.  The Debtor is authorized, without any further notice to or action, order, or approval of the Court, to finalize and execute and deliver all agreements, documents, instruments, and certificates relating thereto and perform its obligations thereunder in accordance with the Plan.

50.     <u>Confirmation</u>.  All requirements for Confirmation of the Plan have been satisfied. The Plan, including all exhibits thereto, is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto and documents referred to in such papers), and the execution, delivery, and performance thereof by the Reorganized Debtor, are authorized and approved as finalized, executed, and delivered.  Without any further notice to or action, order, or approval of the Court, the Debtor, the Reorganized Debtor, and its successors

are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan. As set forth in the Plan, once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and other security interests purported to be created thereby.

51. <u>Effectiveness of All Actions</u>. All actions contemplated by the Plan are hereby authorized and approved in all respects. The approvals and authorizations specifically set forth in this Order are nonexclusive and are not intended to limit the authority of the Debtor, the Reorganized Debtor, or any manager, officer, director, trustee, agent, or professional thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate the Plan, this Order, and any and all documents or transactions contemplated by the Plan or this Order.

52. <u>Objections</u>. All objections and all reservations of rights have been withdrawn, waived, or settled.

53. <u>Omission of Reference to Particular Plan Provisions</u>. The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety. Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect of every other provision of the Plan, whether or not mentioned in this Order. In the event of any inconsistencies between the Plan and this Order, this Order shall govern.

54. <u>Plan Classifications Controlling</u>. The classification of Claims and Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; and (c) shall not be binding on the Debtor, the Reorganized Debtor, or holders of Claims for purposes other than voting on the Plan.

55. <u>Professional Fee Account</u>. On the Effective Date, in accordance with Article II.B of the Plan, the Debtor shall establish the Professional Fee Account. The Debtor shall fund the Professional Fee Account with Cash in the amount of the aggregate Professional Fee Amount (which amount, for clarity, shall include only unpaid and outstanding Fee Claims) for all Professionals. The Professional Fee Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the Debtor's Estate except as otherwise provided in Article II.B.2 of the Plan. To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall provide an estimate of their Fee Claims before and as of the Effective Date and shall deliver such estimate to the Debtor no later than five (5) Business Days before the intended Effective Date. If a Professional does not provide an estimate, the Debtor, with the consent of the Senior Lender Affiliate, may estimate the unbilled fees and expenses of such Professional and such estimate will be used to establish the Professional Fee Amount attributable to that Professional. The total amount so estimated shall be the Professional Fee Amount.

56.     <u>Final Fee Applications and Payment of Fee Claims</u>.     All final requests for payment of Fee Claims shall be Filed no later than forty-five (45) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Court orders, the Allowed amounts of Fee Claims for Professionals shall be determined by the Court.  The amount of Fee Claims owing to Professionals shall be paid in Cash to Professionals from funds held in the Professional Fee Account when such Fee Claims are Allowed by a Final Order, including pursuant to the DIP Order.  To the extent that funds held in the Professional Fee Account are unable to satisfy the amount of Fee Claims owing to the Professionals, any Professional whose estimate was lower than the Allowed amount of its Fee Claims shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II of the Plan.  After all Allowed Fee Claims have been paid in full to the extent required by Article II.B.2 of the Plan, any excess amounts in the Professional Fee Account shall be returned to or transferred to the Reorganized Debtor.

57.     <u>Post-Effective Date Fees and Expenses</u>.     Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtor, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, shall pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtor.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to any party or action, order or approval of the Bankruptcy Court.

58.     <u>DIP Facility Commitment Fee Waiver</u>.  To the extent the Commitment Fee (as defined in the DIP Agreement) has previously been paid and included as part of the DIP Facility Claim, an amount equal to the Commitment Fee shall be waived by the DIP Lender and the Allowed DIP Facility Claim paid in Cash, as set forth in Article VII.B in the Plan, shall be reduced by such amount to reflect such waiver.

59.     <u>Restructuring Transactions</u>.  On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including those described in Article V.A of the Plan and in the Restructuring Transactions Memorandum.

60.     <u>Sources of Consideration for Plan Distributions</u>.  Except to the extent otherwise set forth in Article V.B. of the Plan, all Cash consideration necessary for the Debtor or the Reorganized Debtor to make payments or distributions pursuant hereto shall be obtained from proceeds of the Exit Facility, the Debtor's other Cash on hand, and  Cash derived from business operations.  On the Effective Date, the Reorganized Parent shall issue (a) the New Equity for distribution to holders of DIP Facility Claims and Senior Loan Claims in accordance with Article II.C and Article V.B.2 of the Plan (and subject to a Holding Company Restructuring being implemented), and (b) the New Warrants for distribution to holders of the Senior Subordinate Note Claims in accordance with Article V.C of the Plan (and subject to a Holding Company Restructuring being implemented).

61.     <u>Issuance and Distribution of New Equity</u>.  The issuance of New Equity and, if applicable, the Holding Company Restructuring, in accordance with the Plan is approved.  The Debtor and the Reorganized Debtor are authorized and empowered, without further approval of

26

this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the New Equity in accordance with the Plan and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto. The New Equity to be issued is hereby deemed issued as of the Effective Date regardless of the date on which the New Equity is actually distributed. All New Equity issued by the Reorganized Debtor pursuant to the provisions of the Plan is hereby deemed to be duly authorized, validly issued, fully paid, and non-assessable. The issuance of options and other equity awards for the New Equity in accordance with and as contemplated by or in connection with the Plan is approved and the Reorganized Debtor is authorized and empowered, without further approval of this Court, to execute and perform all obligations under the Management Incentive Plan.

62.     <u>Exit Facility</u>.   The Reorganized Debtor's assumption of all obligations, including without limitation, all monetary obligations under, and in respect of, the Exit Facility is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan, and is in the best interests of the Debtor, the Reorganized Debtor, the Estate, and its creditors.   The financial accommodations extended to the Reorganized Debtor pursuant to the Exit Facility have been extended and implemented in good faith and for legitimate business purposes.   On the Effective Date, the Reorganized Debtor is authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including the Exit Facility Documents, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtor and the Senior Lender Affiliate may deem to be necessary to consummate the Exit Facility.   The foregoing shall

become effective in accordance with their terms on the Effective Date. On the Effective Date, all of the guarantee obligations, liens, and security interests granted in accordance with the Exit Facility are hereby deemed approved and shall be legal, valid, binding, enforceable, properly perfected, and non-avoidable liens on the collateral in accordance with the terms of the Exit Facility. All obligations of the Reorganized Debtor arising pursuant to the Exit Facility are in exchange for fair and reasonably equivalent value and do not constitute a preferential transfer or fraudulent transfer or fraudulent conveyance under applicable federal or state laws and will not subject the lender parties to the Exit Facility to any liability by reason of incurrence of such obligation or grant of such liens or security interests under applicable federal or state laws, including, but not limited to, successor or transferee liability. All documentation relating to the Exit Facility will be valid, binding, and enforceable agreements and is not in conflict with any applicable federal or state law.

63. <u>New Subordinated Notes</u>. The Reorganized Debtor's assumption of all obligations, including without limitation, all monetary obligations under, and in respect of, the New Subordinated Notes, is an exercise of reasonable business judgment, proposed in good faith, critical to the success and feasibility of the Plan, and is in the best interests of the Debtor, the Reorganized Debtor, the Estate, and its creditors. The financial accommodations extended to the Reorganized Debtor pursuant to the New Subordinated Notes have been extended and implemented in good faith and for legitimate business purposes. The issuance of the New Subordinated Notes in accordance with the Plan and the Plan Supplement is approved. As set forth in the New Subordinated Notes and the New Intercreditor Agreement, the New Subordinated Notes shall have a security interest in the same assets of the Reorganized Debtor as granted under the Exit Facility Documents; *provided*, that such security interest shall be junior to

28

the security interest granted pursuant to the Exit Facility Documents. On the Effective Date, all of the guarantee obligations, liens, and security interests granted in accordance with the New Subordinated Notes are hereby deemed approved and shall be legal, valid, binding, enforceable, properly perfected, and non-avoidable liens on the collateral in accordance with the terms of the New Subordinated Notes. All obligations of the Reorganized Debtor arising pursuant to the New Subordinated Notes are in exchange for fair and reasonably equivalent value and do not constitute a preferential transfer or fraudulent transfer or fraudulent conveyance under applicable federal or state laws and will not subject the lender parties to the New Subordinated Notes to any liability by reason of incurrence of such obligation or grant of such liens or security interests under applicable federal or state laws, including, but not limited to, successor or transferee liability. All documentation relating to the New Subordinated Notes will be valid, binding, and enforceable agreements and is not in conflict with any applicable federal or state law.

64.     <u>New Warrants</u>. The issuance of the New Warrants in accordance with the Plan and the Plan Supplement is approved. On the Effective Date, the Reorganized Debtor is authorized to execute and deliver those documents necessary or appropriate to issue the New Warrants, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtor and the Senior Lender Affiliate may deem to be necessary to issue the New Warrants. The foregoing shall become effective in accordance with their terms on the Effective Date.

65.     <u>Contingent Third Lien in Favor of Holders of Trade Claims that Enter into a New Trade Agreement</u>. For a period of 12 months starting upon the Effective Date, the Reorganized Debtor shall provide holders of Trade Claims that enter into a New Trade Agreement with a

4822-2532-6615.4

Trade Claim Contingent Third Lien to the extent that the Reorganized Debtor's new working capital falls below $2,000,000 (tested on a quarterly basis, with the first test conducted following the three-month period starting with the first full month after the Effective Date). The Reorganized Debtor shall provide such reporting to the General Unsecured Claims Litigation Trustee within 30 days following the conclusion of each quarter. On the Effective Date, any such Trade Claim Contingent Third Lien shall be deemed approved and shall be legal, valid, binding, enforceable, properly perfected, and non-avoidable liens on the collateral in accordance with the terms of the New Trade Agreement. Such Trade Claim Contingent Third Liens shall be junior to the security interests granted under the Exit Facility and the New Subordinated Notes.

66. <u>General Unsecured Claims Litigation Trust</u>.

(a) On the Effective Date, the Debtor shall transfer to the General Unsecured Claims Litigation Trust the General Unsecured Claims Litigation Trust Assets. The Debtor and the General Unsecured Claims Litigation Trustee shall execute the General Unsecured Claims Litigation Trust Agreement and shall take all steps necessary to establish the General Unsecured Claims Litigation Trust in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the General Unsecured Claims Litigation Trust Beneficiaries.

(b) On the Effective Date the Debtor shall irrevocably transfer and shall be deemed to have irrevocably transferred to the General Unsecured Claims Litigation Trust all of its rights, title, and interest in and to all of the General Unsecured Claims Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the General Unsecured Claims Litigation Trust Assets shall automatically vest in the General Unsecured Claims Litigation Trust free and clear of all Claims, liens,

4822-2532-6615.4

encumbrances, or interests subject only to: (i) General Unsecured Claims Litigation Trust Interests, and (ii) the expenses of the General Unsecured Claims Litigation Trust, as provided for in the General Unsecured Claims Litigation Trust Agreement, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax; provided however that (ii), any and all Claims settled or released pursuant to the settlement referenced in the Debtor's Motion for an Order Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a) For Approval of Settlement of Derivative Claim With Current and Former Officers and Directors and Settlement of Claims 149, 152, 154, 155 and 156 [Docket No. 336], shall not transfer to the General Unsecured Claims Litigation Trust, in the event such Motion is approved, but rather only any proceeds of such released Claims.

(c)     The General Unsecured Claims Litigation Trustee shall be the exclusive trustee of the General Unsecured Claims Litigation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The General Unsecured Claims Litigation Trust shall be governed by the General Unsecured Claims Litigation Trust Agreement and administered by the General Unsecured Claims Litigation Trustee. The powers, rights, and responsibilities of the General Unsecured Claims Litigation Trustee shall be as specified in the General Unsecured Claims Litigation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Article V.E of the Plan, subject to any required reporting to the General Unsecured Claims Litigation Trust Oversight Committee as may be set forth in the General Unsecured Claims Litigation Trust Agreement. The General

4822-2532-6615.4

Unsecured Claims Litigation Trustee shall hold and distribute the General Unsecured Claims Litigation Trust Assets in accordance with the provisions of the Plan and the General Unsecured Claims Litigation Trust Agreement. Other rights and duties of the General Unsecured Claims Litigation Trustee and the General Unsecured Claims Litigation Trust Beneficiaries shall be as set forth in the General Unsecured Claims Litigation Trust Agreement. Notwithstanding anything in the Plan or the General Unsecured Claims Litigation Trust Agreement to the contrary, the Reorganized Debtor, upon request of the General Unsecured Claims Litigation Trustee, may pursue any objections to Claims.

(d) After the Effective Date, the Debtor and the Reorganized Debtor shall have no interest in the General Unsecured Claims Litigation Trust Assets except as set forth in the General Unsecured Claims Litigation Trust Agreement. Notwithstanding anything in the Plan to the contrary, in connection with the vesting and transfer of the General Unsecured Claims Litigation Trust Assets (including any General Unsecured Claims Litigation Trust Causes of Action) to the General Unsecured Claims Litigation Trust, any attorney-client, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral) expressly transferred to the General Unsecured Claims Litigation Trust shall apply to the General Unsecured Claims Litigation Trust as well as the Debtor and the Reorganized Debtor. The Debtor and/or the Reorganized Debtor and the General Unsecured Claims Litigation Trustee are authorized to take all necessary actions to effectuate the preservation of such privileges, protections, and immunities, to the extent the Debtor and/or Reorganized Debtor so desires.

4822-2532-6615.4

(e)     The Reorganized Debtor, upon reasonable notice, shall be required to provide information and access to pertinent documents, to the extent the Reorganized Debtor has such information and/or documents, to the General Unsecured Claims Litigation Trustee sufficient to enable the General Unsecured Claims Litigation Trustee to perform its duties as set forth in Article V.E of the Plan.  The Reorganized Debtor shall reasonably cooperate with the General Unsecured Claims Litigation Trustee in the administration of the General Unsecured Claims Litigation Trust, including, in providing documentation, witness testimony, and other evidence in support of the prosecution of the General Unsecured Claims Litigation Trust Causes of Action, at no cost or expense of the General Unsecured Claims Litigation Trust other than out of pocket expenses for copying or similar expenses; *provided*, *however*, that such cooperation shall not involve violation of an attorney client privilege, unless agreed to by the Reorganized Debtor.

(f)     The funding of the General Unsecured Claims Litigation Trust Payment in accordance with the Plan is authorized and approved, as of the Effective Date, in all respects, without need for the consent of or notice to any Person, notwithstanding any contrary provision in any financing and/or other agreement between the Debtor or the Reorganized Debtor and any other Person, and any such contrary provision shall be deemed null and void to the extent necessary to permit such funding. If the D&O Trust Payment is received by the General Unsecured Claims Litigation Trust on or prior to the Effective Date, then the one-time payment of $25,000 in Cash to the General Unsecured Claims Litigation Trust contemplated to the made under the Plan (the "Initial Trust Payment") shall not be made.  As provided under the Plan, the Initial Trust

Payment shall be refunded to the Reorganized Debtor if the D&O Trust Payment is received by the General Unsecured Claims Litigation Trust after the Effective Date.

(g)     The General Unsecured Claims Litigation Trustee, who is SltnTrst LLC (dba Solution Trust), is approved for all purposes under the Plan and the General Unsecured Claims Litigation Trust Agreement to be the General Unsecured Claims Litigation Trustee.

(h)     Notwithstanding any other provision of the Plan, this Order or any previously entered Order setting a date by which a Proof of Claim on account of Prepetition Claims must be filed, any Proof of Claim filed by Robert Feerick, Michael Bailey, and/or Thomas Jenkins on or before February 14, 2014 for claims for contribution or indemnification under the Debtor's bylaws or articles shall after such filing be treated as a timely filed Claim in Class 5B entitled to recovery from the General Unsecured Claims Litigation Trust.

67.     <u>Vesting of Assets in the Reorganized Debtor</u>.  Except as otherwise provided in the Plan, this Order, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date all property in the Estate, all Causes of Action (other than the General Unsecured Claims Litigation Trust Causes of Action), and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges, or other encumbrances, except for Liens securing the Exit Facility and the New Subordinated Notes.

68.     <u>Operation as of the Effective Date</u>.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of

Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

69.      <u>Cancellation of Existing Securities</u>.  Except as otherwise provided in the Plan, this Order, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date:  (a) the obligations of the Debtor under the DIP Agreement, the Senior Loan Agreement, the Senior Subordinated Notes, the Seller Notes, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest shall be cancelled solely as to the Debtor, and the Reorganized Debtor shall not have any continuing obligations thereunder; and (b) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be released and discharged; *provided*, *however*, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; *provided further*, *however*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, this Order, or the Plan or result in any expense or liability to the Reorganized Debtor, except to the extent set forth in or provided for under the Plan or this Order.  On and after the Effective Date, all duties and responsibilities of the DIP Lender under the DIP Facility

and the Senior Lender under the Senior Loan Facility shall be discharged unless otherwise specifically set forth in or provided for under the Plan or this Order.

70. <u>Corporate Action</u>. Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including, as applicable: (a) the issuance of the New Equity and New Warrants; (b) selection of the directors and officers for the Reorganized Debtor; (c) execution and delivery of the Exit Facility Documents and the new Subordinated Notes; (d) adoption of the Management Incentive Plan; (e) formation of the General Unsecured Claims Litigation Trust; (f) implementation of the restructuring transactions contemplated by the Plan and set forth in the Restructuring Transactions Memorandum; and (g) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor or the Reorganized Debtor. On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor. The authorizations and approvals contemplated by Article V.I of the Plan shall be effective notwithstanding any requirements under nonbankruptcy law and anything to the contrary in the Plan.

4822-2532-6615.4

71.    <u>Management Incentive Plan</u>.  Subject to the terms of the Management Incentive Plan, a form of which was included in the Plan Supplement, as soon as reasonably practicable after the Effective Date, the new board of directors of Reorganized Parent shall be authorized to adopt the Management Incentive Plan pursuant to which options, warrants, or another form of consideration to acquire up to 10% of the New Equity of the Reorganized Parent shall be allocable at the discretion of the New Board of the Reorganized Parent.

72.    <u>New Organizational Documents</u>.  To the extent required under the Plan or applicable nonbankruptcy law, the Reorganized Debtor will file its New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in the state, province, or country of incorporation in accordance with applicable corporate laws.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents of Groeb Farms, Inc. will prohibit the issuance of non-voting equity securities and provide for the other restrictions required therein.  After the Effective Date, the Reorganized Debtor may amend and restate its New Organizational Documents and other constituent documents as permitted by applicable corporate laws and the New Organizational Documents.

73.    <u>Directors and Officers of the Reorganized Debtor</u>.  As of the Effective Date, the term of the current members of the board of directors of the Debtor shall expire, and the initial boards of directors, including the New Board, as well as the officers of the Reorganized Debtor, shall be appointed in accordance with the New Organizational Documents and other constituent documents of the Reorganized Debtor.  The New Board shall consist of members that were disclosed in advance of Confirmation in the Plan Supplement.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtor disclosed in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New Board, as well as those

Persons that will serve as an officer of the Reorganized Debtor. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer was also disclosed. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtor.

74.     <u>Effectuating Documents; Further Transactions</u>.  On and after the Effective Date, the Reorganized Debtor, and the officers and members of the New Board, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Equity, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except those expressly required pursuant to the Plan.

75.     <u>Exemption from Certain Taxes and Fees</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and upon entry of this Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

76.     <u>Preservation of Causes of Action</u>.  In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article IX, Article V.E, and Article V.O of the Plan, the Debtor or the Reorganized Debtor, as applicable, shall retain and may enforce all rights

to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Debtor or the Reorganized Debtor, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Debtor or the Reorganized Debtor, as applicable. To the fullest extent permitted by applicable law, no Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor or the Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against it. The Debtor or the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Debtor or Reorganized Debtor, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise set forth herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtor. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action, except to the extent transferred to the General Unsecured Claims Litigation Trust under the Plan. Subject to Article V.E of the Plan, the Reorganized Debtor shall have the

exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court. For the avoidance of doubt, the provisions of this paragraph extend to the General Unsecured Claims Litigation Trust and the General Unsecured Claims Litigation Trust Causes of Action by virtue of the transfer from the Debtor to the General Unsecured Claims Litigation Trust of the General Unsecured Claims Litigation Trust Causes of Action.

77.     _Release of Avoidance Actions_.   On the Effective Date, except as otherwise set forth in the Plan, the Plan Supplement, or this Order, the Debtor shall release any and all Avoidance Actions against the Released Parties, the Debtor and the Reorganized Debtor, and any of their successors or assigns.   For the avoidance of doubt, the General Unsecured Claims Litigation Trust Causes of Action shall not be released by the Debtor upon the Effective Date and shall vest in the General Unsecured Claims Litigation Trust in accordance with Article V.E of the Plan and the General Unsecured Claims Litigation Trust Agreement.

78.     _Assumption and Rejection of Executory Contracts and Unexpired Leases_.   On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases will be deemed rejected, other than those that are identified on the Schedule of Assumed Executory Contracts and Unexpired Leases or those that are the subject of a pending motion to assume on the Effective Date.   Entry of this Order shall constitute a Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.   Entry of this

40

Order shall also constitute a Court order authorizing the Debtor or Reorganized Debtor, as applicable and in its sole discretion, to abandon any equipment, fixtures, furniture, or other personal property that may be located at the premises governed by any Unexpired Lease. Unless otherwise indicated or set forth in a motion or order relating to the same, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption under applicable federal law. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Court on or after the Effective Date.

79. The D&O Policy. Notwithstanding anything in the Plan or this Order to the contrary, the following shall apply. The D&O Policy shall be assumed as of the Effective Date. The Debtor or the Reorganized Debtor, as applicable, agrees that all of its rights to proceeds payable to either the Debtor or the Reorganized Debtor, as applicable, under the D&O Policy shall be payable by the same to the General Unsecured Claims Litigation Trust. Nothing in the Disclosure Statement, the Plan, the Plan Supplement, this Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way: (a) limit the General Unsecured Claims Litigation Trustee, any insured or additional insureds under the D&O Policy, the Debtor or the Reorganized Debtor from asserting a right or claim to the proceeds of any D&O insurance policy, including the D&O Policy that insures or insured the Debtor or any of the additional insureds, or was issued to the Debtor or any

4822-2532-6615.4

of the additional insureds, or (b) impact the terms and conditions of the D&O Policy. The Debtor or the Reorganized Debtor shall be authorized and directed to turn over payments they receive on account of their right to the proceeds of the D&O Policy (other than as necessary to satisfy the Settlement of the Derivative Claim With Current and Former Officers and Directors and Settlement of Claims 149, 152, 154, 155 and 156 (the "Derivative Claims Settlement Agreement"), if such settlement is approved by this Court) to the General Unsecured Claims Litigation Trust, to the extent that such action does not impair the coverage of the Debtor, the Reorganized Debtor, or any additional insured under the D&O Policy or payment of the proceeds of the D&O Policy. In the event that any of the foregoing adversely affects any rights of any insureds under, or any party entitled to the proceeds of, the D&O Policy, the Reorganized Debtor, on its own behalf or upon the request of the General Unsecured Claims Litigation Trustee, the insureds, or any other party entitled to the proceeds under the D&O Policy, shall seek a modification of this language with notice to the insureds under the D&O Policy. For the avoidance of doubt, nothing in this paragraph is intended to adversely affect the rights of any person or entity entitled to coverage under the D&O Policy, provide a defense or reason to deny coverage or payments under the D&O Policy, or to the proceeds from the D&O Policy.

80. Claims Based on Rejection of Executory Contracts or Unexpired Leases. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within thirty (30) days after the date of entry of an order of the Court (including this Order) approving such rejection; *provided*, *however*, that any such Rejection Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be subject to the cap on rejection damages imposed by section 502(b) of the Bankruptcy Code. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not

Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, the Reorganized Debtor, the Estate, or property of the foregoing parties, without the need for any objection by the Debtor or the Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of the Court. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as Other General Unsecured Claims and shall be treated in accordance with Article III.C.5 of the Plan, as applicable.

81. <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>. Any Cure Claims under an Executory Contract and Unexpired Lease, as reflected on the Cure Notice shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of such Cure Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure Claims, (b) the ability of the Reorganized Debtor or any assignee, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, payments on Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount, pursuant to the procedures set forth in Article VI.C of the Plan, will be deemed to have assented to such assumption or cure amount.

82. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether

monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtor assumes such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and for which the Cure Claim has been paid shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Court.

83. In any case, if the Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtor or the Reorganized Debtor, at the direction of the Senior Lender Affiliate, will have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

84. <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan, or subject to a motion to reject such agreement. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to

4822-2532-6615.4

alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

85.     <u>Reservation of Rights</u>.   Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.   If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor, or, after the Effective Date, the Reorganized Debtor shall have twenty-eight (28) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

86.     <u>Nonoccurrence of Effective Date</u>.   In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

87.     <u>Deferred Prosecution Agreement</u>.   Nothing in the Plan, this Order, or any other document or order in this Chapter 11 Case shall affect the respective rights and obligations of the United States and the Debtor under the Deferred Prosecution Agreement.   In accordance with the requirement set forth in section 17 of the Deferred Prosecution Agreement, the Debtor obligations under the Deferred Prosecution Agreement shall be binding upon the Reorganized Debtor and the rights and benefits of the Debtor under the Deferred Prosecution Agreement shall bestow to the benefit of the Reorganized Debtor.

88.     <u>Distributions Under the Plan</u>.   All distributions under the Plan shall be made in accordance with Article VII of the Plan.

4822-2532-6615.4

89.     <u>Undeliverable Distributions and Unclaimed Property</u>.  In the event that any distribution made on account of a Claim not subject to the General Unsecured Claims Litigation Trust is returned as undeliverable, no distribution to such holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall be redistributed Pro Rata (it being understood that, for purposes of Article VII.B.2 of the Plan, "Pro Rata" shall be determined as if the Claim underlying such unclaimed distribution had been Disallowed) without need for a further order by the Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

90.     In the event that any distribution made from the General Unsecured Claims Litigation Trust on account of a Claim subject to the General Unsecured Claims Litigation Trust is returned as undeliverable, no distribution to such holder shall be made unless and until such holder has provided evidence satisfactory to the General Unsecured Claims Litigation Trustee of such holder's then current address, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that such distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 90 days after such distribution. After such date, all unclaimed property or interests in property shall revert back to the General Unsecured Claims Litigation Trust to be redistributed Pro Rata (it being understood that, for purposes of Article VII.B.2 of the Plan, "Pro Rata" shall be determined as if the Claim

46

underlying such unclaimed distribution had been Disallowed) without need for a further order by the Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property or interest in Property shall be discharged and forever barred.

91. <u>Securities Registration Exemption</u>. Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of securities, including the New Equity, the New Warrants, and the New Subordinated Notes, as contemplated by Articles V.B and V.C of the Plan, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code, such New Equity will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, any applicable terms and limitations set forth in the New Organizational Documents and the New Warrants, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any transfer of such Securities or instruments.

92. <u>Compliance with Tax Requirements</u>. In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the General Unsecured Claims Litigation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made from the

4822-2532-6615.4

General Unsecured Claims Litigation Trust under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor and the General Unsecured Claims Litigation Trustee each reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Each Person holding an Allowed Claim is required to provide any information necessary to effect the necessary information reporting and withholding of applicable taxes with respect to distributions to be made under the Plan. The Reorganized Debtor or the General Unsecured Claims Litigation Trustee, as applicable, shall be entitled in its sole discretion to withhold any distributions to a holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing to such holder of an Allowed Claim, which timeframe shall not be less than 30 days, after which such Claim shall be deemed Disallowed without need for a further order by the Court, and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

93.    Contingent, Unliquidated, and Disputed Claims.  Subject to Paragraphs 112(a) and 113(a) herein, the procedures for resolving contingent, unliquidated, and disputed Claims shall be as set forth in Article VIII of the Plan and in this Order.

94.    Discharge of Claims and Termination of Interests.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, this Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of

4822-2532-6615.4

Action that arose prior to the Effective Date of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Proof of Interest based upon such debt, right, or interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim has accepted the Plan. Any default by the Debtor with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date, provided however that, notwithstanding anything in the Plan or this Order to the contrary, all rights and defenses pertaining to the Covenants Not to Compete, executed by Ernest Groeb, Troy Groeb and E. Jeanne Groeb, including defenses related to the Junior Subordinated Notes, are preserved to the extent such positions are consistent with the terms and conditions of the Derivative Claims Settlement Agreement. This Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

95.   <u>Release of Liens</u>.  Except as otherwise provided in the Plan, this Order, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan (including the Plan Supplement documents), on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.  In addition, the DIP Lender and the Senior Lender shall execute and deliver all documents reasonably requested by the administrative agent(s) for the Exit Facility to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtor to file UCC-3 termination statements (to the extent applicable) with respect thereto.  The Debtor and the Reorganized Debtor may, but shall not be required, to file documentation in all applicable jurisdictions evidencing the releases and discharges provided pursuant to this Paragraph 95.

96.   <u>Releases by the Debtor</u>.  Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtor, the Reorganized Debtor, and the Estate from any and all claims, obligations, rights, suits, damages, Causes of Action (including Avoidance Actions), remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor and/or the Reorganized Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or

50

otherwise, whether for tort, contract, violations of federal or state securities law, or otherwise, that the Debtor, the Reorganized Debtor, or their Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Reorganized Debtor, the other restructuring transactions contemplated in the Plan, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date; *provided, however*, the foregoing release shall not apply to any obligations arising on account of the Transshipping Claims, except as provided in this Order, nor shall the foregoing release apply to any obligations under this Order, the Plan, the Plan Supplement, the Exit Facility Documents, and any contracts, instruments, releases, and other agreements or documents delivered in connection with, or contemplated by, the foregoing; *provided further*, *however*, that the foregoing release shall not limit any counterclaims or defenses to Claims asserted against the Debtor by any Released Party; *provided further, however*, that the foregoing release shall not apply to (a) any conduct by a Released Party determined by a court of law to have arisen from acts of gross negligence, willful misconduct or bad faith, or (b) any Causes of Action (derivative or otherwise) transferred to the

51

General Unsecured Claims Litigation Trust under Article V.E of the Plan, including the Transshipping Claims.

97. <u>Third Party Release</u>. As of the Effective Date, each Released Party and each holder of a Claim against the Debtor that voted in favor of the Plan (or was deemed to accept under the Plan) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, equity interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, existing or hereafter arising, in law, at equity, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Reorganized Debtor, the restructuring transactions contemplated in the Plan, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of claims and equity interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Restructuring Support Agreement, the Plan, the Disclosure Statement, the Plan Supplement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence, in each case, taking place on or before the Effective Date; *provided, however*, the foregoing release shall not apply to any obligations arising under this Order, the Plan, the Plan Supplement, the Exit Facility Documents, and any contracts, instruments, releases,

and other agreements or documents delivered in connection with, or contemplated by, the foregoing, or to any Causes of Action (derivative or otherwise) transferred to the General Unsecured Claims Litigation Trust under Article V.E of the Plan, including the Transshipping Claims.

98. <u>Exculpation</u>. Except as otherwise specifically provided in the Plan or Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any: (a) Exculpated Claim; and (b) any obligation, Cause of Action, or liability for any Exculpated Claim, except for gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the Securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

99. <u>Injunction</u>. FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THIS ORDER. FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN ARTICLE IX OF THE PLAN, ALL ENTITIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY

BE, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO ARTICLE IX OF THE PLAN.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE IX.D OR ARTICLE IX.E OF THE PLAN, DISCHARGED PURSUANT TO ARTICLE IX.B OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE IX.F OF THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE RELEASED PARTIES OR THE EXCULPATED PARTIES:  (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (D) ASSERTING ANY RIGHT OF SUBROGATION, SETOFF, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE INTERESTS, PROPERTY

OR ESTATE OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN. THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS PURSUANT TO THE PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR, ANY OF ITS ASSETS OR PROPERTY, OR ITS ESTATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE. ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE ESTATE, THE REORGANIZED DEBTOR, THE GENERAL UNSECURED CLAIMS LITIGATION TRUSTEE, THE GENERAL UNSECURED CLAIMS LITIGATION TRUST, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS

AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

100.    <u>Subordination Rights</u>.    Any distributions under the Plan to holders shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination rights.    Any such subordination rights shall be waived, and this Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

101.    <u>Conditions to Effective Date</u>.    The Plan shall become effective upon satisfaction or waiver of the conditions set forth in Article X.B of the Plan.    If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtor; (b) prejudice in any manner the rights of the Debtor, any holders of a Claim or Interest or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any holders, or any other Entity in any respect.

102.    <u>Retention of Jurisdiction</u>.    The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters, arising in, under, and related to, the Chapter 11 Case and the Plan, as set forth in Article XII of the Plan and section 1142 of the Bankruptcy Code.

56

103.     <u>Immediate Binding Effect</u>.     Subject to Article X.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and this Order shall be immediately effective and enforceable and deemed binding upon the Debtor or the Reorganized Debtor, as applicable, and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are Impaired or whether such holders are deemed to have accepted or rejected the Plan or received consideration under the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.     All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

104.     <u>Additional Documents</u>.     On or before the Effective Date, the Debtor may File with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.     The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

105.     <u>Payment of Statutory Fees</u>.     All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtor (prior to or on the Effective Date) or the Reorganized Debtor (after the Effective Date) for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

106. _Dissolution of the Committee_. On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Case.

107. _Indemnification Provisions_. The Indemnification Provisions shall not be discharged or impaired by Confirmation, shall survive Confirmation and shall remain unaffected thereby after the Effective Date; _provided_, _however_, that, notwithstanding the foregoing, the right of an indemnified Person to receive any indemnities, reimbursements, advancements, payments, or other amounts arising out of, relating to, or in connection with the Indemnification Provisions shall be limited to, and an indemnified Person's sole and exclusive remedy to receive any of the foregoing shall be exclusively from, the D&O Policy or any other applicable insurance policy, and no indemnified Person shall seek, or be entitled to receive, any of the foregoing from (directly or indirectly) the Reorganized Debtor or the General Unsecured Claims Litigation Trust. Entry of this Order will constitute the Court's approval of the Debtor's foregoing assumption of each of the Indemnification Provisions. This paragraph shall not affect the allowance of Claims or any rights of Robert Feerick, Michael Bailey, and/or Thomas Jenkins with respect to their Proofs of Claim for Class 5B Claims filed pursuant to paragraph 66(h), or distributions upon Claims allowed for such Proofs of Claim, if any, from the General Unsecured Claims Litigation Trust.

108. _Successors and Assigns_. The rights, benefits, and obligations of any Entity named or referred to in the Plan or this Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

109. <u>Term of Injunctions or Stays</u>. Unless otherwise provided in the Plan or this Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

110. <u>Plan Supplement</u>. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtor at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtor, are authorized and approved when they are finalized, executed, and delivered. Without further order or authorization of the Court, the Debtor, Reorganized Debtor, and its successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan. Execution versions of the documents comprising the Plan Supplement shall constitute legal, valid, binding, and authorized obligation of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security interests purported to be created thereby.

111. <u>Return of Adequate Assurance Deposit</u>. No later than five business days following the date of entry of this Order, all funds in the Adequate Assurance Deposit Account established by the Debtor pursuant to the *Order Pursuant to Bankruptcy Code Sections 105 and 366 (I) Prohibiting Utilities from Altering Refusing or Discontinuing Service to the Debtor and*

*(II) Establishing Certain Procedures to Determine Request for Adequate Assurance of Payment* [Docket No. 125] shall be returned to the Debtor.

112.    <u>Class Action</u>.  The following subparagraphs shall apply only to holders of Claims set forth in Proof of Claim Number 139 (the "<u>PCR Claims</u>"); *provided*, *however*, that for the avoidance of doubt, the following subparagraphs shall not include any absent class members to the Class Action that have elected to opt-out of the Class Action, assuming such opt-outs are permitted by the United States District Court for the Northern District of Illinois or any other court adjudicating the Class Action and capitalized terms defined in this paragraph shall apply only with respect to this paragraph.

(a)     Notwithstanding Section VIII.C of the Plan, any estimation of the PCR Claims for voting purposes shall not affect the amount of the PCR Claims for purposes of distribution under the Plan, or for any other purpose; *provided*, *however*, that for the avoidance of doubt, nothing herein shall impair or otherwise affect the rights of the Debtor or the General Unsecured Claims Litigation Trust, as applicable, to object to the PCR Claims.

(b)     The second sentence of Article VII.H.1 of the Plan shall be deemed deleted from the Plan and be of no force or effect.

(c)     Notwithstanding anything to the contrary herein (including without limitation Paragraphs 94, 97, 99, and 108 herein) or in the Plan (including without limitation Sections IX.B, E, and G, and Section XIII.G of the Plan), or in the restructuring support agreement (the "<u>RSA</u>") by and among the Debtor, Senior Lender, Senior Lender Affiliate, and the Court-appointed Interim Co-Lead Counsel (as defined in the RSA) dated as of October 1, 2013, the Disclosure Statement, or the ballot relating to

the PCR Claims (including without limitation the ballot (the "PCR Ballot") submitted by Adee Honey Farms, Bill Rhodes Honey Company, LLC, and Hackenberg Apiaries (collectively, the "PCRs"), the Discharge, Third Party Release, and Injunction provisions provided under the Plan and approved pursuant to this Order shall apply to holders of the PCR Claims only with respect to the: (i) Debtor and the Debtor's current officers and employees, and the Debtors' advisors, attorneys, and other professionals engaged in connection with the Chapter 11 Case; (ii) Senior Lender and its Affiliates; (iii) Reorganized Debtors, which shall consist of Natural American Foods Holdings LLC, Natural American Foods Topco, Inc., Natural American Foods Midco, Inc., and Natural American Foods, Inc. (or such other entity names as may be selected in advance of the Effective Date), and any successor to the Reorganized Debtors; *provided*, *however*, that any such successor shall not be released from liability for any Claim within the scope of the Third Party Release (as opposed to the Discharge) relating to any causes of action arising out of the facts set forth in the Consolidated Amended Class Action Complaint (the "Consolidated Complaint") filed on November 22, 2013 in *In re Honey Transshipping Litigation*, Case No. 13 C 2905 (ND. Ill.); and (iv) with respect to (ii) and (iii), such parties' current (as of immediately after the Effective Date in the case of the Reorganized Debtors) officers, directors, members, managers serving on a board of managers, employees, advisors, attorneys, and other professionals, in each case, solely in their capacity as such (collectively, the "Class Action Released Parties"). For the avoidance of doubt, Claims held by holders of the PCR Claims against Persons other than the Class Action Released Parties shall not be discharged or in any way affected by entry of this Order, and nothing in this Order, or the Plan, or the RSA, or the Disclosure

Statement, or the PCR Ballot shall release any Claims held by holders of the PCR Claims against any Persons that are not the Class Action Released Parties.

(d)     The United States District Court for the Northern District of Illinois shall maintain jurisdiction over the PCR Claims asserted against any individual or entity other than the Debtor and the General Unsecured Claims Litigation Trust; *provided*, *however*, that nothing in this Order or in the Plan, or the fact that the Plan is confirmed, shall affect in any way the rights of holders of the PCR Claims, to lift the automatic stay with respect to the Class Action.

(e)     The last paragraph of Article VIII.A of the Plan shall be deemed deleted, and, for the avoidance of doubt, subject to subparagraph (a) above, the PCR Claims constitute Other General Unsecured Claims, as set forth in the Plan.

113.     <u>Producer/Packer Claimants</u>:   The following subparagraphs shall apply only to holders of Claims (the "<u>Producer/Packer Claimants</u>") set forth in Proofs of Claim Numbered 132, 134, 136, 137, 138, 141, 142, 143, 144, 145, 146, 147, 148, and 150   (the "<u>Producer/Packer Claims</u>"), and capitalized terms defined in this paragraph shall apply only with respect to this paragraph:

(a)     Notwithstanding Section VIII.C of the Plan, any estimation of the Producer/Packer Claims for voting purposes shall not affect the amount of the Producer/Packer Claims for purposes of distribution under the Plan, or for any other purpose; provided, however, that for the avoidance of doubt, nothing herein shall impair or otherwise affect the rights of the Debtor or the General Unsecured Claims Litigation Trust, as applicable, to object to the Producer/Packer Claims.

(b)     The second sentence of Article VII.H.1 of the Plan shall be deemed deleted from the Plan and be of no force or effect.

(c)     Notwithstanding anything to the contrary herein (including without limitation Paragraphs 94, 97, 99, and 108 herein) or in the Plan (including without limitation Sections IX.B, E, and G, and Section XIII.G of the Plan), or in, the Disclosure Statement, or the Ballot (including without limitation any Ballot submitted by the Producer/Packer Claimants), the Discharge, Third Party Release, and Injunction provisions provided under the Plan and approved pursuant to this Order shall apply to holders of the Producer/Packer Claims only with respect to the:  (i) Debtor and the Debtor's current officers and employees, and the Debtor's advisors, attorneys, and other professionals engaged in connection with the Chapter 11 Case; (ii) Senior Lender and its Affiliates; (iii) Reorganized Debtors, which shall consist of Natural American Foods Holdings LLC, Natural American Foods Topco, Inc., Natural American Foods Midco, Inc., and Natural American Foods, Inc. (or such other entity names as may be selected in advance of the Effective Date), and any successor to the Reorganized Debtors; provided, however, that any such successor shall not be released from liability for any Claim within the scope of the Third Party Release (as opposed to the Discharge) relating to any causes of action arising out of the facts set forth in the Consolidated Class Action Complaint or the Proposed Individual Action; and (iv) with respect to (ii) and (iii), such parties' current (as of immediately after the Effective Date in the case of the Reorganized Debtors) officers, directors, members, managers serving on a board of managers, employees, advisors, attorneys, and other professionals, in each case, solely in their capacity as such (collectively, the "Class Action Released Parties").  For the avoidance of doubt, Claims

63

held by holders of the Producer/Packer Claims against Persons other than the Class Action Released Parties shall not be discharged or in any way affected by entry of this Order, and nothing in this Order, or the Plan, or the Disclosure Statement, or the Ballot submitted by the Producer/Packer Claimants shall release any Claims held by holders of the Producer/Packer Claims against any Persons that are not the Class Action Released Parties.

(d) The United States District Court for the Northern District of Illinois shall maintain jurisdiction over the Producer/Packer Claims asserted against any individual or entity other than the Debtor and the General Unsecured Claims Litigation Trust; provided, however, that nothing in this Order or in the Plan, or the fact that the Plan is confirmed, shall affect in any way the rights of holders of the Producer/Packer Claims, to lift the automatic stay with respect to the Honey Transshipping Litigation or the Proposed Individual Action.

(e) The last paragraph of Article VIII.A of the Plan shall be deemed deleted, and, for the avoidance of doubt, subject to subparagraph (a) above, the Producer/Packer Claims constitute Other General Unsecured Claims, as set forth in the Plan.

114. <u>New Trade Agreements</u>.  Notwithstanding anything to the contrary herein or in the Plan, including within the definition of "New Trade Agreement," the Debtor may execute New Trade Agreements with holders of Trade Claims at any time up to the Effective Date.  In addition, the definition of Trade Claim in Article I.A.137. shall be restated in its entirety as follows:

> "Trade Claim" means a General Unsecured Claim of a holder that arises on account of products or services provided to the Debtor on an ongoing basis with which the Debtor will continue to conduct business during the chapter 11 Case and/or after the Effective Date.

4822-2532-6615.4

115. <u>Governmental Approvals Not Required</u>. Except as otherwise specifically provided herein, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

116. <u>Effectiveness of All Actions</u>. All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Order, without further application to, or order of the Court, or further action by the respective officers, directors, members, or stockholders of the Debtor or Reorganized Debtor and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

117. <u>Plan and Confirmation Order Mutually Dependent</u>. This Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with Article XI.K of the Plan, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (c) nonseverable and mutually dependent.

118. <u>Reversal</u>. If any of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligations incurred undertaken pursuant to, and in reliance on, this Order prior to the effective

date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan, and any amendments or modifications to any of the foregoing.

119. <u>Confirmation Order Supercedes</u>. It is hereby ordered that this Order shall supercede any Court orders issued prior to the Confirmation Date that may be inconsistent with this Order.

120. <u>Notice of Entry of Confirmation Order</u>. The Reorganized Debtor shall serve notice of entry of this Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all holders of Claims and Interests, the United States Trustee for the Eastern District of Michigan, and other parties in interest, by causing notice of entry of this Order to be delivered to such parties by first-class mail, postage prepaid, within 15 business days after entry of this Order. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

121. <u>Notice of Effective Date</u>. As soon as reasonably practicable after the occurrence of the Effective Date, the Reorganized Debtor shall file notice of the Effective Date and shall serve a copy of same on all creditors and interest holders, the United States Trustee for the Eastern District of Michigan, and other parties in interest. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

122. <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

123. <u>Recording</u>. The Debtor and the Reorganized Debtor hereby are authorized to deliver a notice or short form of this Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging

66

4822-2532-6615.4

13-58200-wsd    Doc 375    Filed 12/20/13    Entered 12/20/13 17:41:37    Page 66 of 67

any stamp tax, recording tax, or other similar tax.  Such notice:  (a) shall have the effect of an order of the Court; (b) shall constitute sufficient notice of the entry of this Order to such filing and recording officers; and (c) shall be a reasonable instrument notwithstanding any contrary provision of non-bankruptcy law.  The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

124.  <u>Conflicts Between This Order and the Plan</u>.  The provisions of the Plan and of this Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Order shall govern and any such provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.

125.  <u>Waiver of Stay</u>.  The stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rules 3020(e), 6004(h) and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and this Order shall be effective and enforceable immediately upon its entry by the Court.  This Order is and shall be deemed to be a separate order with respect to the Debtor for all purposes.

126.  <u>Final Order</u>.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.


Signed on December 20, 2013               /s/ Walter Shapero
                                          Walter Shapero
                                          United States Bankruptcy Judge

4822-2532-6615.4