# EXHIBIT 4

# LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidating trust agreement and declaration of trust (this "Agreement"), dated as of December 31, 2013, is made by and between Groeb Farms, Inc. (the "Debtor") and SltnTrst LLC (dba Solution Trust) (the "Trustee" and, together with the Debtor, the "Parties").

## RECITALS

A.     On October 1, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan Southern Division (the "Bankruptcy Court"), and its Chapter 11 Case is being administered as *In re Groeb Farms, Inc.*, Case No. 13-58200 (WS).

B.     On October 9, 2013, the Office of the United States Trustee (the "United States Trustee") appointed the official committee of unsecured creditors in the Debtor's Chapter 11 Case (Docket No. 69) (the "Committee").

C.     On November 8, 2013, the Debtor filed the Second Amended Plan of Reorganization of Groeb Farms, Inc., Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 213) (as may be amended and/or supplemented, the "Plan"), a copy of which is attached as Exhibit B hereto.

D.     On December 20, 2013, the Bankruptcy Court entered an order (the "Confirmation Order") (Docket No. 375) confirming the Plan, which became effective on the date hereof (the "Effective Date").

E.     The Plan and the Confirmation Order provide for the establishment of the liquidating trust as set forth in this Agreement (the "Trust") effective on the Effective Date of the Plan.

F.     The Plan, the Confirmation Order and this Agreement, provide for the appointment of the Trustee as the trustee of the Trust and, as necessary, any successor trustee of the Trust.

G.     The Trust is established for the benefit of the holders of Allowed Other General Unsecured Claims and Allowed Trade Claims that either do not execute a New Trade Agreement or default under a New Trade Agreement (collectively, "Beneficiaries").

H.     The Trust is established for the purpose of pursuing or liquidating the Trust Assets (defined below) for the benefit of the Beneficiaries, distributing the General Unsecured Claims Litigation Trust Distributable Proceeds, if any (the "Distributable Proceeds"), reconciling and objecting to General Unsecured Claims as provided for in the Plan and, if, as and to the extent determined by the Trustee, distributing the Distributable Proceeds to the Beneficiaries in accordance with the terms and conditions of this Agreement, the Plan, the Confirmation Order and Treasury Regulation section 301.7701-4(d), and with no objective to continue or engage in the conduct of a trade or business.

I.　　　Pursuant to the Plan, the Debtor, the Trust, the Trustee and the Beneficiaries are required to treat, for all United States federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their General Unsecured Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein; provided, however, that the Trust Assets will be subject to any post-Effective Date obligations incurred by the Trust relating to the pursuit of Trust Assets.  Accordingly, Beneficiaries shall be treated as the grantors and owners of their respective share of the Trust Assets for United States federal income tax purposes.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

J.　　　Pursuant to the Plan, the Trust is intended for federal income tax purposes (i) to be treated as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

K.　　　In accordance with the Plan, the Trust is further intended to be exempt from the requirements of (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, in each case, pursuant to section 1145 of the Bankruptcy Code, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) thereof and section 1145 of the Bankruptcy Code.

In accordance with the Plan and the Confirmation Order, and in consideration of the premises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtor and the Trustee enter into this Agreement to effectuate the Distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan, the Confirmation Order, and this Agreement, all right, title, and interest in, under, and to the Trust Assets shall be absolutely and irrevocably assigned to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, solely for the benefit of the Beneficiaries and for no other party.

# ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS AND INTERPRETATION

1.1     <u>Recitals</u>.  The recitals to this Agreement are incorporated into and made a part of the terms of this Agreement.

1.2     <u>Use of Plan Definitions</u>.  All terms which are used in this Agreement and not defined herein shall have the same meaning set forth in the Plan.

1.3     <u>Definitions</u>.  For purposes of this Agreement:

1.3.1     "<u>Disallowed General Unsecured Claim</u>" means any General Unsecured Claim, or any portion thereof, that: (a) has been disallowed by a Final Order, (b) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Proof of Interest or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (c) is not Scheduled and as to which no Proof of Claim or Proof of Interest or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been withdrawn by agreement of the Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

1.3.2     "<u>Disputed General Unsecured Claim</u>" means any General Unsecured Claim, or any portion thereof, that is not yet Allowed and is not a Disallowed General Unsecured Claim.

1.3.3     "<u>Distribution</u>" means any distribution of some or all of the Trust Assets from the Trust to a Beneficiary of the Trust.

1.3.4     "<u>Reorganized Debtor</u>" means the Debtor on and after the Effective Date and/or, if applicable, the Reorganized Parent.

1.3.5     "<u>Reorganized Parent</u>" means (a) Groeb Farms, Inc., (b) any successor thereto, by merger, consolidation, transfer of substantially all of its assets, conversion to another jurisdiction, or otherwise, in each case on or after the Effective Date, or (c) if a Holding Company Restructuring Transaction is implemented, Holdings.

1.3.6     "<u>Trust Assets</u>" means the (i) General Unsecured Claims Litigation Trust Payment, (ii) the General Unsecured Claims Litigation Trust Causes of Action (the "<u>Trust Causes of Action</u>"), and all proceeds of the foregoing, (iii) the D&O Policy, including the Debtor's rights under the D&O Policy and all proceeds under the D&O Policy, subject to all rights of covered parties to the D&O Policy to assert claims against the D&O Policy, (iv) the Trade Claim Remaining Amount, (v) any insurance policies not assumed by the Reorganized Debtor and which relate to the Trust Causes of Action; and (vi) all rights of setoff and other

defenses against General Unsecured Claims held by the Beneficiaries. For the avoidance of doubt, the Trust Assets shall not include any Claim or Cause of Action against a Released Party, including the holder of a Trade Claim that enters into a New Trade Agreement to the extent of Causes of Action released under a New Trade Agreement.

1.3.7 "Trust Expenses" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustee on account of administration of the Trust, including any reasonable administrative fees and expenses, reasonable attorney's fees and expenses, reasonable insurance fees, taxes, and reasonable escrow expenses.

1.3.8 "Trust Oversight Committee" shall consist of the three members of the Committee as of the Effective Date or their designees.

1.3.9 "Trust Waterfall" means that the Distributable Proceeds shall be distributed as follows after satisfying Trust Expenses: (i) first, on a Pro Rata basis, to Beneficiaries who are not holders of Trade Claims that entered into a New Trade Agreement until each such holder has recovered an amount equal to 10% of each such holder's Allowed General Unsecured Claim; and (ii) second, on a Pro Rata basis, to Beneficiaries on account of any unpaid Allowed General Unsecured Claim until such Allowed General Unsecured Claims have been paid in full.

1.4     Interpretation; Headings.   All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.5     Conflict Among Plan Documents.   The Confirmation Order shall govern any conflict or inconsistency between or among the Plan, the Disclosure Statement, the Confirmation Order and this Agreement.

# ARTICLE II

## ESTABLISHMENT OF TRUST

2.1     Effectiveness of Agreement; Name of Trust.   This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Groeb General Unsecured Claims Litigation Trust."

2.2     Purpose of Trust.   The Debtor and the Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Trust for the purpose of pursuing or liquidating the Trust Assets for the benefit of the Beneficiaries, distributing the Distributable Proceeds, if any, reconciling and objecting to General Unsecured Claims as provided for in the Plan and, if, as and to the extent determined by the Trustee, distributing the Distributable Proceeds to the Beneficiaries in accordance with the terms and conditions of this Agreement, the

4

Plan, the Confirmation Order and Treasury Regulation section 301.7701-4(d), and with no objective to continue or engage in the conduct of a trade or business.

2.3     Transfer of Trust Assets.

2.3.1    Conveyance of Trust Assets.  The Debtor hereby irrevocably transfers and shall be deemed to have irrevocably transferred to the Trust as of the Effective Date all of its rights, title and interest in and to the Trust Assets, in trust for the benefit of the Beneficiaries, to be administered and applied as specified in this Agreement, the Plan and the Confirmation Order. The Debtor shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtor shall take or cause to be taken such further action, as the Trustee may reasonably deem necessary or appropriate to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets

2.3.2    Title to Trust Assets.  Pursuant to the Plan, all of the Debtor's rights, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties, if any, are automatically vested in the Trust on the Effective Date, free and clear of all liens, Claims, encumbrances or interests, subject only to (a) General Unsecured Claims Litigation Trust Interests and (b) the expenses of the Trust as provided for in this Agreement, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trustee shall be authorized to obtain possession or control of, liquidate and collect all of the Trust Assets in the possession or control of third parties and pursue all of the Trust Causes of Action.  On the Effective Date, the Trustee shall stand in the shoes of the Debtor for all purposes with respect to the Trust Assets and administration of Trust Causes of Action.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Plan and the Confirmation Order.

2.3.3    Transfer of Privilege and Immunity.  In connection with the vesting and transfer of the Trust Assets (including any Trust Causes of Action) to the Trust, any attorney-client, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral) expressly transferred to the Trust shall vest in the Trust.

2.4     Capacity of Trust.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like, in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

5

2.5    Cooperation of Debtor and Reorganized Debtor.  The Debtor and Reorganized Debtor, upon reasonable notice, shall be required to provide information and access to pertinent documents, to the extent the Debtor or Reorganized Debtor has such information and/or documents, to the Trustee sufficient to enable the Trustee to perform its duties hereunder and under the Plan.  The Debtor and Reorganized Debtor shall reasonably cooperate with the Trustee in the administration of the Trust, including in providing documentation, witness testimony and other evidence in support of the prosecution of the Trust Causes of Action, at no cost or expense of the Trust other than out of pocket expenses for copying or similar expenses; provided, however, that such cooperation shall not involve violation of an attorney client privilege, unless agreed to by the Debtor or Reorganized Debtor.

2.6    Acceptance by Trustee.  The Trustee accepts its appointment as Trustee of the Trust.

# ARTICLE III

### ADMINISTRATION OF TRUST

3.1    Rights, Powers and Privileges of Trustee Generally; Duties.  Except as otherwise provided in this Agreement, the Plan or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.  The Trustee shall act in the best interests of the Beneficiaries and with the same fiduciary duties as a Chapter 7 trustee.

3.1.1    Power to Contract.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in this Agreement, the Plan, or the Confirmation Order, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2    Ultimate Right to Act Based on Advice of Counsel or Other Professionals.  Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, the Confirmation Order or this Agreement.

3.2    Powers of Trustee.  Without limiting the generality of the above Section 3.1, in addition to the powers granted in the Plan and Confirmation Order, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the

purpose of the Trust without application to or approval of the Bankruptcy Court, unless otherwise specifically limited or restricted by the Plan, Confirmation Order or this Agreement:

3.2.1   hold legal title to the Trust Assets and to any and all rights of the Debtor and the Beneficiaries in or arising from the Trust Assets;

3.2.2   receive, manage, invest, supervise, protect and, where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any monies held as Trust Assets in accordance with the terms of Section 3.7 hereof;

3.2.3   open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4   cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

3.2.5   collect and liquidate all Trust Assets, including the sale of any Trust Assets;

3.2.6   protect and enforce the rights to the Trust Assets (including any Trust Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7   investigate any Trust Assets, including potential Trust Causes of Action, and any objections to General Unsecured Claims, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.2.8   cause the Trust to employ and pay professionals, claims agents, disbursing agents, and other agents and third parties pursuant to this Agreement;

3.2.9   cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets;

3.2.10  cause the Trust to institute, file, prosecute, enforce, abandon, settle, compromise, release or withdraw any Trust Causes of Action;

3.2.11  calculate and make all Distributions on behalf of the Trust to the Beneficiaries provided for in, or contemplated by, the Plan and this Agreement;

3.2.12  establish, adjust and maintain reserves for Disputed General Unsecured Claims required to be administered by the Trust;

3.2.13  cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.14 in reliance upon the Debtor's schedules and the official claims register maintained in the Debtors' bankruptcy cases, review and, where appropriate, cause the Trust to allow or object to General Unsecured Claims; and supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed General Unsecured Claims required to be administered by the Trust;

3.2.15 in reliance upon the Debtor's schedules and the official Claims Register maintained in the Chapter 11 Case, maintain a register evidencing the beneficial interest herein held by each Beneficiary, and, in accordance with Section 3.8 of this Agreement, such register may be the official General Unsecured Claims register maintained in the Chapter 11 Cases;

3.2.16 cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under section 671 of the Internal Revenue Code of 1986, as amended, and Treasury Regulation section 1.671-4(a) pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust; provided, however, that, notwithstanding any other provision of this Agreement, the Trustee shall have no responsibility for the signing or accuracy of the Debtor's income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

3.2.17 cause the Trust to abandon or donate to a not-for-profit corporation, under applicable federal and state laws selected by the Trustee, any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.18 cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.19 cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.20 cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust to maintain value of the Trust Assets or to satisfy claims and contingent liabilities;

3.2.21 cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.2.22 if any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with the terms of this Agreement;

3.2.23 undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.24 request and obtain extensions of the Claims Objection Deadline with respect to objections to General Unsecured Claims; and

3.2.25 take all other actions consistent with the provisions of the Plan, the Confirmation Order and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3 <u>Exclusive Authority to Pursue Trust Causes of Action</u>.  The Trustee shall have the exclusive right, on behalf of the Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release or withdraw any and all Trust Causes of Action without any further order of the Bankruptcy Court, except as otherwise provided in the Plan or in this Agreement; provided, however, that such rights shall be subject to the execution of joint interest, common interest, or other similar agreements reasonably acceptable to the Trustee and the Debtor.  From and after the Effective Date, the Trustee, in accordance with section 1123(b)(3) of the Bankruptcy Code, and on behalf of the Trust, shall serve as a representative of the Estate and shall retain and possess the right to commence, pursue, settle, compromise or abandon, as appropriate, any and all Causes of Action constituting Trust Causes of Action in any court or other tribunal.

3.4 <u>Abandonment; Donation</u>.  If, in the Trustee's reasonable judgment, any Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries or is insufficient to render a further distribution practicable, or exceed the amounts required to be paid under the Plan, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such remaining funds to a charitable institution qualified as a not-for-profit corporation, under applicable federal and state laws selected by the Trustee.

3.5 <u>Responsibility for Administration of General Unsecured Claims</u>.  As of the Effective Date, the Trust shall become responsible for administering and paying Distributions to Beneficiaries of the Trust in accordance with Article III.C of the Plan.  The Trust shall have the exclusive right to object to the allowance of any General Unsecured Claim on any ground and shall be entitled to assert all defenses of the Debtor and its Estate.  The Trust shall also be entitled to assert all of the Estate's rights under, without limitation, section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any Disputed General Unsecured Claims under and subject to section 502(c) of the Bankruptcy Code.

3.6 <u>Agents and Professionals</u>.  The Trustee may, but shall not be required to, without further order of the Bankruptcy Court, consult with and retain attorneys, financial advisors, accountants, appraisers, disbursing agents, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtor or the Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  Subject to the requirements of Article VIII of this Agreement, the Trustee may pay the reasonable salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of business without further order of the Bankruptcy Court.

9

3.7     Safekeeping and Investment of Trust Assets.  All monies and other assets received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan.  The Trustee shall not be under any obligation to invest Trust Assets, but any investments shall be subject to the requirements of Article VIII of this Agreement.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any monies received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any monies held by the Trust, other than those powers reasonably necessary to maintain the value of the Trust Assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements or otherwise.  For the avoidance of doubt, the provisions of Title 12, Section 3302 of the Delaware Code shall not apply to this Agreement.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8     Maintenance and Disposition of Trust Records.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust.  The Trust may engage a claims agent to continue to maintain and update the General Unsecured Claims register maintained in the Chapter 11 Case throughout the administration of the Trust, and such General Unsecured Claims register may serve as the Trustee's register of beneficial interests held by Beneficiaries.  The books and records maintained by the Trustee may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries or (ii) upon the termination and completion of the winding down of the Trust.

3.9     Trust Oversight Committee. Notwithstanding anything to the contrary in this Agreement, the powers, rights and responsibilities of the Trustee shall be subject to reporting to and oversight by the Trust Oversight Committee.

3.10     Conflicts of Interest.  The Trustee will appoint a disinterested Person as a trustee to handle any matter where the Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

3.11     No Bond Required; Procurement of Insurance.  Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee or Supplemental Trustee) shall be exempt from giving any bond or other security in any jurisdiction

and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself and its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

# ARTICLE IV

## DISTRIBUTIONS

4.1     Distribution and Reserve of Trust Assets.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to pursue, liquidate and distribute all Trust Assets, subject to the reserves required under the Plan, the Confirmation Order or this Agreement.

4.1.1     Distributions of Unrestricted Cash.  The Trustee shall distribute to the Beneficiaries on account of their interests in the Trust, in its sole discretion, the Trust's net income plus all net proceeds from the disposition of Trust Assets in accordance with the Trust Waterfall, except that the Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Trust Assets or to satisfy Claims and contingent liabilities or pay anticipated fees and expenses of the Trust and Trustee, and the retention of such amount may preclude Distributions to Beneficiaries.

4.1.2     Distributions to Beneficiaries.   The Trustee may, in its discretion, distribute any portion of the General Unsecured Claims Litigation Trust Payment to the Beneficiaries at any time and/or use such funds, provided that such distribution or use is consistent with the Trust Waterfall and is for any purpose permitted under this Agreement, the Plan and applicable law.

4.1.3     Reserves; Pooling of Reserved Funds.  Before any Distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, the fees and expenses of other professionals, and fees owed the United States Trustee.  The Trust shall also maintain as necessary a reserve for Disputed General Unsecured Claims required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any Distribution pending determination of whether to object to a General Unsecured Claim.  Any such withheld Distribution shall become part of the reserve for Disputed General Unsecured Claims and shall be distributed to the applicable Beneficiary no later than on the first Distribution date after a decision is made to not object to the pertinent General Unsecured Claim or the General Unsecured Claim becomes Allowed.  The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; provided, however, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.4 <u>Distributions Net of Reserves and Costs</u>. Distributions shall be made net of reserves in accordance with the Plan and also net of the actual and reasonable costs of making the Distributions.

4.1.5 <u>Right to Rely on Professionals</u>. Without limitation of the generality of Section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants or other professionals.

4.2 <u>Method and Timing of Distributions</u>. Distributions to Beneficiaries will be made from the Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement.

4.3 <u>Withholding from Distributions</u>. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld. The Reorganized Debtor and the Trustee reserve the right to allocate all Distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

4.4 <u>Tax Identification Numbers</u>. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service and may condition any Distribution to any Beneficiary upon receipt of such identification number. If a Beneficiary does not timely provide the Trustee with its taxpayer identification number in the manner and by the deadline established by the Trustee, then the General Unsecured Claim of such Beneficiary shall be deemed Disallowed and expunged, and the corresponding beneficial interests in the Trust of the Beneficiary holding such Disallowed General Unsecured Claim shall be deemed cancelled.

4.5 <u>Unclaimed and Undeliverable Distributions</u>. If any Distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further Distributions to such Beneficiary shall be made unless and until the Beneficiary claims the Distributions by timely notifying the Trustee in writing of any information necessary to make the Distribution to the Beneficiary in accordance with this Agreement, the Plan, the Confirmation Order and applicable law, including such Beneficiary's then-current address or taxpayer identification number. If the Beneficiary timely provides the Trustee such missing information, all missed Distributions shall be made to the Beneficiary as soon as is practicable, without interest. Undeliverable or unclaimed Distributions shall be administered in accordance with Article VII.B.2 of the Plan; provided, however, that, notwithstanding anything to the contrary in the Plan, with respect to General Unsecured Claims Litigation Trust Interests, all undeliverable or unclaimed Distributions deemed unclaimed property under Section 347(b) of the Bankruptcy shall not revert to the Reorganized Debtor, but rather shall revert to the Trust to be redistributed Pro Rata (determined as if the Claim underlying such unclaimed Distribution had been

Disallowed) for the benefit of the other Beneficiaries without further order of the Bankruptcy Court.

4.5.1 <u>No Responsibility to Attempt to Locate Beneficiaries</u>. The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2 <u>Disallowance of General Unsecured Claims; Cancellation of Corresponding Beneficial Interests</u>. All General Unsecured Claims in respect of undeliverable or unclaimed Distributions that pursuant to Article VII.B.2 of the Plan have become unclaimed property under section 347(b) of the Bankruptcy Code, shall be deemed Disallowed and expunged, and the corresponding beneficial interests in the Trust of the Beneficiary holding such Disallowed General Unsecured Claims shall be deemed canceled. The holder of any such Disallowed General Unsecured Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such Disallowed General Unsecured Claims. The holder of any such Disallowed General Unsecured Claim is forever barred, estopped, and enjoined from receiving any Distributions under the Plan, the Confirmation Order and this Agreement, and from asserting such Disallowed General Unsecured Claim against the Reorganized Debtor, the Trust or the Trustee.

4.5.3 <u>Inapplicability of Unclaimed Property or Escheat Laws</u>. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.6 <u>Voided Checks; Request for Reissuance</u>. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the General Unsecured Claim is discharged pursuant to Article VII.B.2 of the Plan. Distributions in respect of voided checks shall be treated as unclaimed Distributions under the Plan and administered under Section 4.5 of this Agreement and Article VII.B.2 of the Plan. The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance and the applicable General Unsecured Claim is discharged pursuant to Article VII.B.2 of the Plan without the check being reissued or cashed.

4.7 <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.7.1 The Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which

shall have exclusive jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.7.2   The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or applicable appellate court) or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.7.3   In acting or refraining from acting under and in accordance with this Section 4.7 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.7.4   <u>De Minimis Amounts</u>.  Notwithstanding anything to the contrary in the Plan or Confirmation Order, the Trustee shall not be obligated to make any distributions on account of any Allowed General Unsecured Claim if the aggregate distribution to such holder on account of such Allowed General Unsecured Claim does not exceed $50.

4.8       <u>Priority of Expenses of Trust</u>.  The Trust must pay or reserve for payment all of its expenses before making Distributions.

4.9       <u>No Recourse to Reorganized Debtor</u>.   For the avoidance of doubt and notwithstanding anything contained herein to the contrary, all (i) Distributions and (ii) fees, costs and expenses incurred in connection with the Trust shall be satisfied solely from the Trust Assets, and none of the Trust, the Trust Oversight Committee, the Trustee or the Beneficiaries shall have recourse to the Reorganized Debtor for any such amounts.

# ARTICLE V

## BENEFICIARIES

5.1       <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Debtor to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2       <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a beneficial interest herein which shall, subject to Article IV of this Agreement, the Plan and the Confirmation Order, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan, the Confirmation Order and this Agreement.

13-58200-wsd    Doc 379-4    Filed 12/31/13    Entered 12/31/13 01:02:32    Page 15 of 56

5.3     Evidence of Beneficial Interest.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4     No Right to Accounting.  None of the Beneficiaries, their successors, assigns or creditors, or any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment or Distribution out of proceeds of Trust Assets.

5.5     No Standing.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6     Requirement of Undertaking.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this Section 5.6 shall not apply to any suit by the Trustee.

5.7     Limitation on Transferability.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may rely upon such proof without the requirement of any further investigation.

5.8     Exemption from Registration.  The rights of the Beneficiaries arising under this Trust Agreement may be deemed "securities" under applicable law.  However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under the Trust Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Trust Agreement shall make a contrary or different contention.

# ARTICLE VI

## THIRD-PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing with the Trustee.  In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.

There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2 <u>Limitation of Liability</u>.  In exercising the rights granted herein, the Trustee shall exercise reasonable diligence and care, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  Notwithstanding anything herein to the contrary and without limitation of Article V.E of the Plan, none of the Trust Oversight Committee, the Trustee, or their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, or any of such Persons' successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence or willful misconduct that is found by a Final Order of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage or expense suffered by the Trust.  In no event shall the Trust Oversight Committee or the Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trust Oversight Committee or the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Without limiting the foregoing, the Trust Oversight Committee and the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and Confirmation Order.

6.3 <u>No Liability for Acts of Other Persons</u>.  None of the Persons identified in the immediately preceding Section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section 6.2.

6.4 <u>No Liability for Acts of Predecessors</u>.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5 <u>No Liability for Good Faith Error of Judgment</u>.  The Trust Oversight Committee and the Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order of a court of competent jurisdiction that the Trust Oversight Committee or the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6 <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>.  Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.  The Trustee also may engage and consult with its legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted or suffered by it in reliance upon the advice of such counsel, agents or advisors.

6.7 <u>No Liability for Acts Approved by Bankruptcy Court</u>.  The Trust Oversight Committee and the Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and Trust

13-58200-wsd    Doc 379-4    Filed 12/31/13    Entered 12/31/13 01:02:32    Page 17 of 56

Causes of Action required to be administered by the Trust. The Trust Oversight Committee and the Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence or willful misconduct.

6.8     No Personal Obligation for Trust Liabilities. Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification. The Trust Oversight Committee, the Trustee, and their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents and agents, and any of such parties' successors and assigns (collectively, the "Indemnified Parties" and, each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including reasonable counsel fees) or damage of any kind, type or nature, whether sounding in tort, contract or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense or damage is finally determined by a Final Order of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

6.9.1   Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this Section 6.9 shall be an expense of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2   Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 6.9 on submission of invoices for such amounts by the Indemnified Party. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 6.9.

13-58200-wsd    Doc 379-4    Filed 12/31/13    Entered 12/31/13 01:02:32    Page 18 of 56

6.10     No Implied Obligations.   The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.11     Confirmation of Survival of Provisions.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, incapacity, dissolution, liquidation, resignation or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

# ARTICLE VII

## TAX MATTERS

7.1     Tax Treatment of Trust.  Pursuant to and in accordance with the Plan, for all United States federal income tax purposes, the Debtor, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), and the transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their General Unsecured Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interests in the Trust; provided, however, that the Trust Assets will be subject to any post-Effective Date obligations incurred by the Trust relating to the pursuit of Trust Assets.    Accordingly, the Beneficiaries shall be treated as the grantors and owners of their respective share of the Trust Assets for United States federal income tax purposes.    The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

7.2     Annual Reporting and Filing Requirements.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

7.3     Tax Treatment of Reserves for Disputed General Unsecured Claims.  The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes any reserve for Disputed General Unsecured Claims, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a "Disputed Ownership Fund" ("DOF") within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

# ARTICLE VIII

## ADDITIONAL OPERATIONAL PROVISIONS

8.1    Compensation of Professionals.  The Trustee shall approve the bills for all of the Trustee's professionals.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 8.1.

8.2    Trustee's Conflict of Interest.  The Trustee shall disclose to the Bankruptcy Court any conflicts of interest that the Trustee has with respect to any matter arising during administration of the Trust.  In the event that the Trustee cannot take any action by reason of an actual or potential conflict of interest, the Bankruptcy Court shall appoint a non-conflicted person or entity to take such action in the Trustee's place and stead, including without limitation the retention of professionals (which may include professionals retained by the Trustee) for the purpose of taking such actions.

8.3    Quarterly Working Capital Reports.  Pursuant to Article V.D of the Plan, with respect to the 12-month period starting upon the Effective Date, the Reorganized Debtor shall provide quarterly reports to the Trustee regarding whether the Reorganized Debtor's new working capital falls below $2,000,000 (tested on a quarterly basis, with the first test conducted following the three-month period starting with the first full month after the Effective Date).  The Reorganized Debtor shall provide such reporting to the Trustee within 30 days following the conclusion of each quarter.

# ARTICLE IX

## SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE

9.1    Initial Trustee.    The Trustee has been selected by the Committee and is appointed effective as of the Effective Date.  The initial trustee shall be the Trustee.

9.2    Term of Service.    The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's death, incapacity, dissolution, liquidation, resignation or removal.  In the event the Trustee's appointment terminates by reason of death, incapacity, dissolution, liquidation, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

9.3    Removal of Trustee.  Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.

9.4    Resignation of Trustee.  The Trustee may resign at any time on written notice to the Trust Oversight Committee.  The resignation shall be effective on the later of (i) the date

specified in the notice of resignation and (ii) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court if the Bankruptcy Case is still open and served on the United States Trustee. In the event of a resignation, the resigning Trustee shall render to the successor Trustee a full and complete accounting of monies and assets received, disbursed and held during the term of office of that Trustee.

9.5     Appointment of Successor Trustee. Upon the death, incapacity, dissolution, liquidation, resignation or removal of a Trustee, a successor Trustee shall be appointed by Trust Oversight Committee. Any successor Trustee so appointed shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee.

9.6     Powers and Duties of Successor Trustee. A successor Trustee shall have all the rights, privileges, powers and duties of its predecessor under this Agreement, the Plan and the Confirmation Order.

9.7     Trust Continuance. The death, incapacity, dissolution, liquidation, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

9.8     Compensation of Trustee and Costs of Administration. The Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases, which shall be a charge against and paid out of the Trust Assets. All reasonable costs, expenses and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental or related thereto) shall be paid by the Trust from the Trust Assets prior to any Distribution to the Beneficiaries. The terms of the compensation of the Trustee are set forth on Exhibit A hereto.

9.9     Appointment of Supplemental Trustee. If any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, and a Person qualified to act as trustee in such state or other jurisdiction is required, the Trustee shall nominate and appoint a Person duly qualified to act as trustee with respect to such Trust Assets (the "Supplemental Trustee") in such state or jurisdiction and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion. The Trustee may confer upon such Supplemental Trustee all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary). The Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all Trust Assets. Subject to Article VIII of this Agreement, the Trustee may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## POST-CONSUMMATION TRUST OVERSIGHT COMMITTEE

10.1    Trust Oversight Committee. As of the Effective Date, the Oversight Committee shall be comprised of (i) Bees Brothers, LLC; (ii) Buoye Honey; (iii) Little Bee Impex; (iv) Citrofrut SA de CV; and (v) Delta Food International Inc. (each, a "Member", and, collectively, the "Members").  Should any of the Members resign from or otherwise cease to serve on the Trust Oversight Committee, replacements, if any, may be selected by the remaining Members acting by majority vote.

10.2    Trust Oversight Approval.  Except as otherwise expressly provided herein, a majority vote of the Members shall constitute an act or decision of the Trust Oversight Committee.  If the event of a tie vote, the Trustee shall be deemed a voting Member for the sole purpose of breaking any such tie vote of the Trust Oversight Committee.  The Trustee may make recommendations for the action or inaction of the Trust Oversight Committee via email on seven (7) days' notice (the "Voting Period"), and in the absence of a majority of the Members rejecting the recommendation within the Voting Period, the recommendation shall be deemed to have been approved by a majority of the Members.

10.3    Reports to Trust Oversight Committee. Notwithstanding any other provision of this  Agreement, the Trustee shall report to the Oversight Committee as may be requested by the Oversight Committee, not less than quarterly of the first year following the Effective Date, which reports shall include such matters and information as reasonably requested by the Trust Oversight Committee.  The Trust Oversight Committee shall keep all such information strictly confidential, except to the extent the Trust Oversight Committee deems it reasonably necessary to disclose such information to the Bankruptcy Court (in which case, a good faith effort shall be made to file such information under seal).

10.4    Actions Requiring Approval of the Trust Oversight Committee. Notwithstanding anything to the contrary in the Plan or herein, the Trustee shall obtain the approval of the Trust Oversight Committee prior to taking any of the following actions, which approval may be by affirmative vote of the Trust Oversight Committee or upon notice pursuant to the procedures set forth in 10.2 above:

10.4.1  The commencement of any Cause of Action against any third parties, not including claim objections;

10.4.2  The settlement, compromise, withdrawal, dismissal or other resolution of any (i) Claims or Objections to Claims by the Trust where the amount set forth in the Claim exceeds $250,000 of the amount set forth in the Trust's books and records as being owed pursuant to such Claim; and (ii) Cause of Action by the Liquidating Trust if the amount sought to be recovered in the complaint or other document initiating such Cause of Action exceeds $100,000;

10.4.3  The sale, transfer, abandonment, assignment, or other disposition of any Trust Assets having a valuation in excess of $50,000;

10.4.4  The borrowing of any funds by the Liquidating Trust or pledge of any portion of the Trust Assets;

10.4.5  The exercise of any right or action set forth in this Agreement that expressly requires approval of the Trust Oversight Committee;

10.4.6  The amount and timing of distributions from the proceeds of Trust Assets;

10.4.7  The establishment or setting of the Disputed Reserves or any other reserves in aid of distribution and opening, maintaining and administering bank accounts as necessary to discharge the duties of the Trustee under the Plan and this Agreement; or

10.4.8  The payment of the Trustee's invoices.

10.5    In the event that the Trustee cannot take any action, including, without limitation, the prosecution of any Causes of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Trustee Oversight Committee acting by a majority shall be authorized to take any such action(s) in his place and stead, including without limitation, the retention of professionals (which may include professionals retained by the Trustee) for such purpose of taking such actions.

10.6    <u>Investments</u>. The Trust Oversight Committee may authorize the Trust to invest the Trust Assets in prudent investments other than those described in Section 345 of the Bankruptcy Code.

10.7    <u>Compensation of Oversight Committee</u>.   The Trust Oversight Committee Members shall be entitled to reimbursement of reasonable out-of-pocket expenses incurred in such Member's duty on behalf of the Oversight Committee.

# ARTICLE XII

## DURATION OF TRUST

11.1    <u>Duration</u>.  Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

11.2    <u>Termination After No Further Pursuit of Causes of Action</u>.  At such time as: (a) the Trustee determines that the pursuit of additional Trust Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit of such claims, and (b) all distributions of Distributable Proceeds required to be made by the Trustee to the Beneficiaries under the Plan have been made, the Trust shall terminate and be dissolved, and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination and dissolution under relevant law.

11.3    <u>Termination After Five Years</u>.  If the Trust has not been previously terminated pursuant to Article 11.2 hereof or extended in accordance with this Section, on the fifth anniversary of the Effective Date, the Trustee shall Distribute all of the Trust Assets to the

Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall terminate and be dissolved and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 11.5 of this Agreement. Notwithstanding the foregoing, the Trust shall not terminate on the fifth anniversary of the Effective Date if the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, upon motion within the six-month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Trust Assets.

      11.4    <u>No Termination by Beneficiaries</u>. The Trust may not be terminated at any time by the Beneficiaries.

      11.5    <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the final Distribution of the Trust Assets including all excess reserves, the Trustee shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee and its employees, professionals and agents of any further duties, and discharging and releasing the Trustee from all liability related to the Trust.

# ARTICLE XIII

## MISCELLANEOUS

      12.1    <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

      12.2    <u>Notices</u>. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the books kept by the Trustee. Any notice or other communication which may be or is required to be given, served or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed), addressed as follows:

        SltnTrst  LLC
        Attn:  Peter Kravitz
        16830 Ventura Blvd., Suite 160
        Encino, CA 91436
        pkravitz@solutiontrust.net

        with a copy to

Pachulski Stang Ziehl & Jones LLP
Attn: Bradford J. Sandler
Attn:  Shirley S. Cho
919 North Market Street, 17th Floor
Wilmington, DE 19801
bsandler@pszjlaw.com
scho@pszjlaw.com

or to such other address as may from time to time be provided in written notice by the Trustee.

12.3     <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

12.4     <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

12.5     <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

12.6     <u>Execution</u>.  All funds in the Trust shall be deemed in custodia legis until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court (or applicable appellate court).  Payments will be governed solely by the Plan, the Confirmation Order and this Agreement.

12.7     <u>Amendment</u>.   This Agreement may be amended only by order of the Bankruptcy Court.

12.8     <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

12.9     <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

12.10    <u>Severability</u>.  If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

12.11    <u>Further Assurances</u>.  Without limitation of the generality of Section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent

13-58200-wsd    Doc 379-4    Filed 12/31/13    Entered 12/31/13 01:02:32    Page 25 of 56

and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

12.12     Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

12.13     Jurisdiction.  The Bankruptcy Court shall have jurisdiction over the Trust, the Trustee, and the Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have exclusive jurisdiction and venue to hear and finally determine all matters among the Parties arising out of or related to this Agreement or the administration of the Trust.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**GROEB FARMS, INC.**


By:_____
Name:
Title:


**SLTNTRST LLC**


By:_____
Name:  Peter Kravitz
Title:  Principal

# Exhibit A

## __Terms of Compensation of Trustee__

$**7,500** per month plus actual and necessary reasonable expenses, subject to periodic increases by the Trust Oversight Committee

# Exhibit B

## Plan

See attached

## LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidating trust agreement and declaration of trust (this "<u>Agreement</u>"), dated as of [_____] December 31, 2013, is made by and between Groeb Farms, Inc. (the "<u>Debtor</u>") and SltnTrst LLC (dba Solution Trust) (the "<u>Trustee</u>" and, together with the Debtor, the "<u>Parties</u>").

## RECITALS

A. On October 1, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan Southern Division (the "<u>Bankruptcy Court</u>"), and its Chapter 11 Case is being administered as *In re Groeb Farms, Inc.*, Case No. 13-58200 (WS).

B. On October 9, 2013, the Office of the United States Trustee (the "<u>United States Trustee</u>") appointed the official committee of unsecured creditors in the Debtor's Chapter 11 Case (Docket No. 69) (the "<u>Committee</u>").

C. On November 8, 2013, the Debtor filed the Second Amended Plan of Reorganization of Groeb Farms, Inc., Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 213) (as may be amended and/or supplemented, the "<u>Plan</u>"), a copy of which is attached as Exhibit B hereto.

D. On [_____] December 20, 2013, the Bankruptcy Court entered an order (the "<u>Confirmation Order</u>") (Docket No. [____] 375) confirming the Plan, which became effective on the date hereof (the "<u>Effective Date</u>").

E. The Plan and the Confirmation Order provide for the establishment of the liquidating trust as set forth in this Agreement (the "<u>Trust</u>") effective on the Effective Date of the Plan.

F. The Plan, the Confirmation Order and this Agreement, provide for the appointment of the Trustee as the trustee of the Trust and, as necessary, any successor trustee of the Trust.

G. The Trust is established for the benefit of the holders of Allowed Other General Unsecured Claims and Allowed Trade Claims that either do not execute a New Trade Agreement or default under a New Trade Agreement (collectively, "<u>Beneficiaries</u>").

H. The Trust is established for the purpose of pursuing or liquidating the Trust Assets (defined below) for the benefit of the Beneficiaries, distributing the General Unsecured Claims Litigation Trust Distributable Proceeds, if any (the "<u>Distributable Proceeds</u>"), reconciling and objecting to General Unsecured Claims as provided for in the Plan and, if, as and to the extent determined by the Trustee, distributing the Distributable Proceeds to the Beneficiaries in accordance with the terms and conditions of this Agreement, the Plan, the Confirmation Order and Treasury Regulation section 301.7701-4(d), and with no objective to continue or engage in the conduct of a trade or business.

I. Pursuant to the Plan, the Debtor, the Trust, the Trustee and the Beneficiaries are required to treat, for all United States federal income tax purposes, the transfer of the Trust Assets

to the Trust as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their General Unsecured Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein; provided, however, that the Trust Assets will be subject to any post-Effective Date obligations incurred by the Trust relating to the pursuit of Trust Assets. Accordingly, Beneficiaries shall be treated as the grantors and owners of their respective share of the Trust Assets for United States federal income tax purposes. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

J. Pursuant to the Plan, the Trust is intended for federal income tax purposes (i) to be treated as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

K. In accordance with the Plan, the Trust is further intended to be exempt from the requirements of (i) the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, in each case, pursuant to section 1145 of the Bankruptcy Code, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) thereof and section 1145 of the Bankruptcy Code.

In accordance with the Plan and the Confirmation Order, and in consideration of the premises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtor and the Trustee enter into this Agreement to effectuate the Distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan, the Confirmation Order, and this Agreement, all right, title, and interest in, under, and to the Trust Assets shall be absolutely and irrevocably assigned to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, solely for the benefit of the Beneficiaries and for no other party.

## ARTICLE I

### RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS AND INTERPRETATION

1.1 <u>Recitals</u>. The recitals to this Agreement are incorporated into and made a part of the terms of this Agreement.

1.2     Use of Plan Definitions.  All terms which are used in this Agreement and not defined herein shall have the same meaning set forth in the Plan.

1.3     Definitions.  For purposes of this Agreement:

1.3.1     "Disallowed General Unsecured Claim" means any General Unsecured Claim, or any portion thereof, that: (a) has been disallowed by a Final Order, (b) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or Proof of Interest or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (c) is not Scheduled and as to which no Proof of Claim or Proof of Interest or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or the Plan, (d) has been withdrawn by agreement of the Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

1.3.2     "Disputed General Unsecured Claim" means any General Unsecured Claim, or any portion thereof, that is not yet Allowed and is not a Disallowed General Unsecured Claim.

1.3.3     "Distribution" means any distribution of some or all of the Trust Assets from the Trust to a Beneficiary of the Trust.

1.3.4     "Reorganized Debtor" means the Debtor on and after the Effective Date and/or, if applicable, the Reorganized Parent.

1.3.5     "Reorganized Parent" means (a) Groeb Farms, Inc., (b) any successor thereto, by merger, consolidation, transfer of substantially all of its assets, conversion to another jurisdiction, or otherwise, in each case on or after the Effective Date, or (c) if a Holding Company Restructuring Transaction is implemented, Holdings.

1.3.6     "Trust Assets" means the (i) General Unsecured Claims Litigation Trust Payment, (ii) the General Unsecured Claims Litigation Trust Causes of Action (the "Trust Causes of Action"), and all proceeds of the foregoing, (iii) the D&O Policy, including the Debtor's rights under the D&O Policy and all proceeds under the D&O Policy, subject to all rights of covered parties to the D&O Policy to assert claims against the D&O Policy, (iv) the Trade Claim Remaining Amount, (v) any insurance policies not assumed by the Reorganized Debtor and which relate to the Trust Causes of Action; and (vi) all rights of setoff and other defenses against General Unsecured Claims held by the Beneficiaries.  For the avoidance of doubt, the Trust Assets shall not include any Claim or Cause of Action against a Released Party, including the holder of a Trade Claim that enters into a New Trade Agreement to the extent of Causes of Action released under a New Trade Agreement.

1.3.7     "Trust Expenses" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Trustee on account of administration of the Trust, including any reasonable administrative fees and expenses, reasonable attorney's fees and expenses, reasonable insurance fees, taxes, and reasonable escrow expenses.

3

1.3.8   "Trust Oversight Committee" shall consist of the three members of the Committee as of the Effective Date or their designees.

1.3.9   "Trust Waterfall" means that the Distributable Proceeds shall be distributed as follows after satisfying Trust Expenses: (i) first, on a Pro Rata basis, to Beneficiaries who are not holders of Trade Claims that entered into a New Trade Agreement until each such holder has recovered an amount equal to 10% of each such holder's Allowed General Unsecured Claim; and (ii) second, on a Pro Rata basis, to Beneficiaries on account of any unpaid Allowed General Unsecured Claim until such Allowed General Unsecured Claims have been paid in full.

1.4   Interpretation; Headings.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.5   Conflict Among Plan Documents.  The Confirmation Order shall govern any conflict or inconsistency between or among the Plan, the Disclosure Statement, the Confirmation Order and this Agreement.

# ARTICLE II

## ESTABLISHMENT OF TRUST

2.1   Effectiveness of Agreement; Name of Trust.  This Agreement shall become effective on the Effective Date.  The Trust shall be officially known as the "Groeb General Unsecured Claims Litigation Trust."

2.2   Purpose of Trust.  The Debtor and the Trustee, pursuant to the Plan and in accordance with the Bankruptcy Code, hereby create the Trust for the purpose of pursuing or liquidating the Trust Assets for the benefit of the Beneficiaries, distributing the Distributable Proceeds, if any, reconciling and objecting to General Unsecured Claims as provided for in the Plan and, if, as and to the extent determined by the Trustee, distributing the Distributable Proceeds to the Beneficiaries in accordance with the terms and conditions of this Agreement, the Plan, the Confirmation Order and Treasury Regulation section 301.7701-4(d), and with no objective to continue or engage in the conduct of a trade or business.

2.3   Transfer of Trust Assets.

2.3.1   Conveyance of Trust Assets.  The Debtor hereby irrevocably transfers and shall be deemed to have irrevocably transferred to the Trust as of the Effective Date all of its rights, title and interest in and to the Trust Assets, in trust for the benefit of the Beneficiaries, to be administered and applied as specified in this Agreement, the Plan and the Confirmation Order. The Debtor shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtor shall take or cause to be taken such further action, as the

Trustee may reasonably deem necessary or appropriate to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets

        2.3.2   <u>Title to Trust Assets</u>.  Pursuant to the Plan, all of the Debtor's rights, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties, if any, are automatically vested in the Trust on the Effective Date, free and clear of all liens, Claims, encumbrances or interests, subject only to (a) General Unsecured Claims Litigation Trust Interests and (b) the expenses of the Trust as provided for in this Agreement, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trustee shall be authorized to obtain possession or control of, liquidate and collect all of the Trust Assets in the possession or control of third parties and pursue all of the Trust Causes of Action.  On the Effective Date, the Trustee shall stand in the shoes of the Debtor for all purposes with respect to the Trust Assets and administration of Trust Causes of Action.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtor to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in Section 2.2, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  By executing this Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement, the Plan and the Confirmation Order.

        2.3.3   <u>Transfer of Privilege and Immunity</u>.  In connection with the vesting and transfer of the Trust Assets (including any Trust Causes of Action) to the Trust, any attorney-client, work-product protection, or other privilege or immunity attaching to any documents or communications (whether written or oral) expressly transferred to the Trust shall vest in the Trust.

      2.4     <u>Capacity of Trust</u>.  Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like, in all adversary proceedings, contested matters, and other state or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

      2.5     <u>Cooperation of Debtor and Reorganized Debtor</u>.  The Debtor and Reorganized Debtor, upon reasonable notice, shall be required to provide information and access to pertinent documents, to the extent the Debtor or Reorganized Debtor has such information and/or documents, to the Trustee sufficient to enable the Trustee to perform its duties hereunder and under the Plan.  The Debtor and Reorganized Debtor shall reasonably cooperate with the Trustee in the administration of the Trust, including in providing documentation, witness testimony and other evidence in support of the prosecution of the Trust Causes of Action, at no cost or expense of the Trust other than out of pocket expenses for copying or similar expenses; provided, however, that such cooperation shall not involve violation of an attorney client privilege, unless agreed to by the Debtor or Reorganized Debtor.

      2.6     <u>Acceptance by Trustee</u>.  The Trustee accepts its appointment as Trustee of the Trust.

# ARTICLE III

## ADMINISTRATION OF TRUST

3.1     Rights, Powers and Privileges of Trustee Generally; Duties.  Except as otherwise provided in this Agreement, the Plan or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.  The Trustee shall act in the best interests of the Beneficiaries and with the same fiduciary duties as a Chapter 7 trustee.

3.1.1     Power to Contract.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in this Agreement, the Plan, or the Confirmation Order, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2     Ultimate Right to Act Based on Advice of Counsel or Other Professionals. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, the Confirmation Order or this Agreement.

3.2     Powers of Trustee.  Without limiting the generality of the above Section 3.1, in addition to the powers granted in the Plan and Confirmation Order, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust without application to or approval of the Bankruptcy Court, unless otherwise specifically limited or restricted by the Plan, Confirmation Order or this Agreement:

3.2.1     hold legal title to the Trust Assets and to any and all rights of the Debtor and the Beneficiaries in or arising from the Trust Assets;

3.2.2     receive, manage, invest, supervise, protect and, where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any monies held as Trust Assets in accordance with the terms of Section 3.7 hereof;

3.2.3     open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4     cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

3.2.5    collect and liquidate all Trust Assets, including the sale of any Trust Assets;

3.2.6    protect and enforce the rights to the Trust Assets (including any Trust Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7    investigate any Trust Assets, including potential Trust Causes of Action, and any objections to General Unsecured Claims, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004;

3.2.8    cause the Trust to employ and pay professionals, claims agents, disbursing agents, and other agents and third parties pursuant to this Agreement;

3.2.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets;

3.2.10   cause the Trust to institute, file, prosecute, enforce, abandon, settle, compromise, release or withdraw any Trust Causes of Action;

3.2.11   calculate and make all Distributions on behalf of the Trust to the Beneficiaries provided for in, or contemplated by, the Plan and this Agreement;

3.2.12   establish, adjust and maintain reserves for Disputed General Unsecured Claims required to be administered by the Trust;

3.2.13   cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.14   in reliance upon the Debtor's schedules and the official claims register maintained in the Debtors' bankruptcy cases, review and, where appropriate, cause the Trust to allow or object to General Unsecured Claims; and supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed General Unsecured Claims  required to be administered by the Trust;

3.2.15   in reliance upon the Debtor's schedules and the official Claims Register maintained in the Chapter 11 Case, maintain a register evidencing the beneficial interest herein held by each Beneficiary, and, in accordance with Section 3.8 of this Agreement, such register may be the official General Unsecured Claims register maintained in the Chapter 11 Cases;

3.2.16   cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under section 671 of the Internal Revenue Code of 1986, as amended, and Treasury Regulation section 1.671-4(a) pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust; provided, however, that, notwithstanding any other provision of this Agreement, the Trustee shall have no

7

responsibility for the signing or accuracy of the Debtor's income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto;

3.2.17 cause the Trust to abandon or donate to a not-for-profit corporation, under applicable federal and state laws selected by the Trustee, any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.18 cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.19 cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.20 cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust to maintain value of the Trust Assets or to satisfy claims and contingent liabilities;

3.2.21 cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

3.2.22 if any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction in accordance with the terms of this Agreement;

3.2.23 undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

3.2.24 request and obtain extensions of the Claims Objection Deadline with respect to objections to General Unsecured Claims; and

3.2.25 take all other actions consistent with the provisions of the Plan, the Confirmation Order and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     Exclusive Authority to Pursue Trust Causes of Action.  The Trustee shall have the exclusive right, on behalf of the Trust, to institute, file, prosecute, enforce, abandon, settle, compromise, release or withdraw any and all Trust Causes of Action without any further order of the Bankruptcy Court, except as otherwise provided in the Plan or in this Agreement; provided, however, that such rights shall be subject to the execution of joint interest, common interest, or other similar agreements reasonably acceptable to the Trustee and the Debtor.  From and after the Effective Date, the Trustee, in accordance with section 1123(b)(3) of the Bankruptcy Code, and on behalf of the Trust, shall serve as a representative of the Estate and shall retain and possess the right to commence, pursue, settle, compromise or abandon, as appropriate, any and all Causes of Action constituting Trust Causes of Action in any court or other tribunal.

3.4     Abandonment; Donation.  If, in the Trustee's reasonable judgment, any Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries or is insufficient to render a further distribution practicable, or exceed the amounts required to be paid under the Plan, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such remaining funds to a charitable institution qualified as a not-for-profit corporation, under applicable federal and state laws selected by the Trustee.

3.5     Responsibility for Administration of General Unsecured Claims.  As of the Effective Date, the Trust shall become responsible for administering and paying Distributions to Beneficiaries of the Trust in accordance with Article III.C of the Plan.  The Trust shall have the exclusive right to object to the allowance of any General Unsecured Claim on any ground and shall be entitled to assert all defenses of the Debtor and its Estate.  The Trust shall also be entitled to assert all of the Estate's rights under, without limitation, section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any Disputed General Unsecured Claims under and subject to section 502(c) of the Bankruptcy Code.

3.6     Agents and Professionals.  The Trustee may, but shall not be required to, without further order of the Bankruptcy Court, consult with and retain attorneys, financial advisors, accountants, appraisers, disbursing agents, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously retained by the Debtor or the Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  Subject to the requirements of Article VIII of this Agreement, the Trustee may pay the reasonable salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of business without further order of the Bankruptcy Court.

3.7     Safekeeping and Investment of Trust Assets.  All monies and other assets received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan.  The Trustee shall not be under any obligation to invest Trust Assets, but any investments shall be subject to the requirements of Article VIII of this Agreement.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any monies received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any monies held by the Trust, other than those powers reasonably necessary to maintain the value of the Trust Assets and to further the Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; provided, however, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements or otherwise.  For the avoidance of doubt, the provisions of Title 12, Section 3302

of the Delaware Code shall not apply to this Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8     Maintenance and Disposition of Trust Records.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust.  The Trust may engage a claims agent to continue to maintain and update the General Unsecured Claims register maintained in the Chapter 11 Case throughout the administration of the Trust, and such General Unsecured Claims register may serve as the Trustee's register of beneficial interests held by Beneficiaries.  The books and records maintained by the Trustee may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries or (ii) upon the termination and completion of the winding down of the Trust.

3.9     Trust Oversight Committee. Notwithstanding anything to the contrary in this Agreement, the powers, rights and responsibilities of the Trustee shall be subject to reporting to and oversight by the Trust Oversight Committee.

3.10    Conflicts of Interest.  The Trustee will appoint a disinterested Person as a trustee to handle any matter where the Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

3.11    No Bond Required; Procurement of Insurance.  Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee or Supplemental Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself and its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

# ARTICLE IV

## DISTRIBUTIONS

4.1     Distribution and Reserve of Trust Assets.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to pursue, liquidate and distribute all Trust Assets, subject to the reserves required under the Plan, the Confirmation Order or this Agreement.

4.1.1   Distributions of Unrestricted Cash.  The Trustee shall distribute to the Beneficiaries on account of their interests in the Trust, in its sole discretion, the Trust's net income

13-58200-wsd    Doc 379-4    Filed 12/31/13    Entered 12/31/13 01:02:32    Page 39 of 56

plus all net proceeds from the disposition of Trust Assets in accordance with the Trust Waterfall, except that the Trust may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Trust Assets or to satisfy Claims and contingent liabilities or pay anticipated fees and expenses of the Trust and Trustee, and the retention of such amount may preclude Distributions to Beneficiaries.

        4.1.2   <u>Distributions to Beneficiaries</u>.  The Trustee may, in its discretion, distribute any portion of the General Unsecured Claims Litigation Trust Payment to the Beneficiaries at any time and/or use such funds, provided that such distribution or use is consistent with the Trust Waterfall and is for any purpose permitted under this Agreement, the Plan and applicable law.

        4.1.3   <u>Reserves; Pooling of Reserved Funds</u>.  Before any Distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, the fees and expenses of other professionals, and fees owed the United States Trustee.  The Trust shall also maintain as necessary a reserve for Disputed General Unsecured Claims required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any Distribution pending determination of whether to object to a General Unsecured Claim.  Any such withheld Distribution shall become part of the reserve for Disputed General Unsecured Claims and shall be distributed to the applicable Beneficiary no later than on the first Distribution date after a decision is made to not object to the pertinent General Unsecured Claim or the General Unsecured Claim becomes Allowed.  The Trustee need not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; provided, however, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

        4.1.4   <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and also net of the actual and reasonable costs of making the Distributions.

        4.1.5   <u>Right to Rely on Professionals</u>.  Without limitation of the generality of Section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's financial advisors, accountants or other professionals.

      4.2     <u>Method and Timing of Distributions</u>.  Distributions to Beneficiaries will be made from the Trust in accordance with the terms of the Plan, the Confirmation Order and this Agreement.

      4.3     <u>Withholding from Distributions</u>.  The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.  The Reorganized Debtor and the Trustee reserve the

right to allocate all Distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

4.4     Tax Identification Numbers.  The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service and may condition any Distribution to any Beneficiary upon receipt of such identification number.  If a Beneficiary does not timely provide the Trustee with its taxpayer identification number in the manner and by the deadline established by the Trustee, then the General Unsecured Claim of such Beneficiary shall be deemed Disallowed and expunged, and the corresponding beneficial interests in the Trust of the Beneficiary holding such Disallowed General Unsecured Claim shall be deemed cancelled.

4.5     Unclaimed and Undeliverable Distributions.  If any Distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further Distributions to such Beneficiary shall be made unless and until the Beneficiary claims the Distributions by timely notifying the Trustee in writing of any information necessary to make the Distribution to the Beneficiary in accordance with this Agreement, the Plan, the Confirmation Order and applicable law, including such Beneficiary's then-current address or taxpayer identification number.  If the Beneficiary timely provides the Trustee such missing information, all missed Distributions shall be made to the Beneficiary as soon as is practicable, without interest.  Undeliverable or unclaimed Distributions shall be administered in accordance with Article VII.B.2 of the Plan; provided, however, that, notwithstanding anything to the contrary in the Plan, with respect to General Unsecured Claims Litigation Trust Interests, all undeliverable or unclaimed Distributions deemed unclaimed property under Section 347(b) of the Bankruptcy shall not revert to the Reorganized Debtor, but rather shall revert to the Trust to be redistributed Pro Rata (determined as if the Claim underlying such unclaimed Distribution had been Disallowed) for the benefit of the other Beneficiaries without further order of the Bankruptcy Court.

4.5.1     No Responsibility to Attempt to Locate Beneficiaries.  The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2     Disallowance of General Unsecured Claims; Cancellation of Corresponding Beneficial Interests.  All General Unsecured Claims in respect of undeliverable or unclaimed Distributions that pursuant to Article VII.B.2 of the Plan have become unclaimed property under section 347(b) of the Bankruptcy Code, shall be deemed Disallowed and expunged, and the corresponding beneficial interests in the Trust of the Beneficiary holding such Disallowed General Unsecured Claims shall be deemed canceled.  The holder of any such Disallowed General Unsecured Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such Disallowed General Unsecured Claims.  The holder of any such Disallowed General Unsecured Claim is forever barred, estopped, and enjoined from receiving any Distributions under the Plan, the Confirmation Order and this Agreement, and from asserting such Disallowed General Unsecured Claim against the Reorganized Debtor, the Trust or the Trustee.

4.5.3     Inapplicability of Unclaimed Property or Escheat Laws.  Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.6     Voided Checks; Request for Reissuance.   Distribution checks issued to Beneficiaries shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check.  All such requests shall be made promptly and in time for the check to be reissued and cashed before the General Unsecured Claim is discharged pursuant to Article VII.B.2 of the Plan.  Distributions in respect of voided checks shall be treated as unclaimed Distributions under the Plan and administered under Section 4.5 of this Agreement and Article VII.B.2 of the Plan.  The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance and the applicable General Unsecured Claim is discharged pursuant to Article VII.B.2 of the Plan without the check being reissued or cashed.

4.7     Conflicting Claims.  If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.7.1   The Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.7.2   The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court (or applicable appellate court) or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.7.3   In acting or refraining from acting under and in accordance with this Section 4.7 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.7.4   De Minimis Amounts.  Notwithstanding anything to the contrary in the Plan or Confirmation Order, the Trustee shall not be obligated to make any distributions on account of any Allowed General Unsecured Claim if the aggregate distribution to such holder on account of such Allowed General Unsecured Claim does not exceed $50.

4.8　　Priority of Expenses of Trust.  The Trust must pay or reserve for payment all of its expenses before making Distributions.

4.9　　No Recourse to Reorganized Debtor.　For the avoidance of doubt and notwithstanding anything contained herein to the contrary, all (i) Distributions and (ii) fees, costs and expenses incurred in connection with the Trust shall be satisfied solely from the Trust Assets, and none of the Trust, the Trust Oversight Committee, the Trustee or the Beneficiaries shall have recourse to the Reorganized Debtor for any such amounts.

# ARTICLE V

## BENEFICIARIES

5.1　　Interest Beneficial Only.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary or the Debtor to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2　　Ownership of Beneficial Interests Hereunder.  Each Beneficiary shall own a beneficial interest herein which shall, subject to Article IV of this Agreement, the Plan and the Confirmation Order, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan, the Confirmation Order and this Agreement.

5.3　　Evidence of Beneficial Interest.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4　　No Right to Accounting.  None of the Beneficiaries, their successors, assigns or creditors, or any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment or Distribution out of proceeds of Trust Assets.

5.5　　No Standing.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6　　Requirement of Undertaking.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this Section 5.6 shall not apply to any suit by the Trustee.

5.7　　Limitation on Transferability.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement

13-58200-wsd    Doc 379-4    Filed 12/31/13    Entered 12/31/13 01:02:32    Page 43 of 56

except by operation of law. An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The Trustee may rely upon such proof without the requirement of any further investigation.

5.8     Exemption from Registration. The rights of the Beneficiaries arising under this Trust Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under the Trust Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Trust Agreement shall make a contrary or different contention.

# ARTICLE VI

## THIRD-PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Parties Dealing with the Trustee. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2     Limitation of Liability. In exercising the rights granted herein, the Trustee shall exercise reasonable diligence and care, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded. Notwithstanding anything herein to the contrary and without limitation of Article V.E of the Plan, none of the Trust Oversight Committee, the Trustee, or their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, or any of such Persons' successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence or willful misconduct that is found by a Final Order of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage or expense suffered by the Trust. In no event shall the Trust Oversight Committee or the Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trust Oversight Committee or the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trust Oversight Committee and the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and Confirmation Order.

6.3     No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding Section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that Section 6.2.

6.4     No Liability for Acts of Predecessors.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5     No Liability for Good Faith Error of Judgment.  The Trust Oversight Committee and the Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a Final Order of a court of competent jurisdiction that the Trust Oversight Committee or the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6     Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.  The Trustee also may engage and consult with its legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted or suffered by it in reliance upon the advice of such counsel, agents or advisors.

6.7     No Liability for Acts Approved by Bankruptcy Court.  The Trust Oversight Committee and the Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and Trust Causes of Action required to be administered by the Trust.  The Trust Oversight Committee and the Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence or willful misconduct.

6.8     No Personal Obligation for Trust Liabilities.  Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification.  The Trust Oversight Committee, the Trustee, and their respective firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents and agents, and any of such parties' successors and assigns (collectively, the "Indemnified Parties" and, each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including reasonable counsel fees) or damage of any kind, type or nature, whether sounding in tort, contract or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense or damage is finally determined by a Final Order of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

6.9.1     Expense of Trust; Limitation on Source of Payment of Indemnification.  All indemnification liabilities of the Trust under this Section 6.9 shall be an expense of the Trust.  The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2     Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay.  The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this Section 6.9 on submission of invoices for such amounts by the Indemnified Party. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 6.9.

6.10     No Implied Obligations.     The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.11     Confirmation of Survival of Provisions.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, incapacity, dissolution, liquidation, resignation or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

# ARTICLE VII

## TAX MATTERS

7.1     Tax Treatment of Trust.     Pursuant to and in accordance with the Plan, for all United States federal income tax purposes, the Debtor, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), and the transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtor to the Beneficiaries in satisfaction of their General Unsecured Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interests in the Trust; provided, however, that the Trust Assets will be subject to any post-Effective Date obligations incurred by the Trust relating to the pursuit of Trust Assets. Accordingly, the Beneficiaries shall be treated as the grantors and owners of their respective share of the Trust Assets for United States federal income tax purposes.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

7.2     Annual Reporting and Filing Requirements.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

13-58200-wsd     Doc 379-4     Filed 12/31/13     Entered 12/31/13 01:02:32     Page 46 of 56

7.3     Tax Treatment of Reserves for Disputed General Unsecured Claims.     The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes any reserve for Disputed General Unsecured Claims, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a "Disputed Ownership Fund" ("DOF") within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

# ARTICLE VIII

## ADDITIONAL OPERATIONAL PROVISIONS

8.1     Compensation of Professionals.  The Trustee shall approve the bills for all of the Trustee's professionals.   The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 8.1.

8.2     Trustee's Conflict of Interest.   The Trustee shall disclose to the Bankruptcy Court any conflicts of interest that the Trustee has with respect to any matter arising during administration of the Trust.  In the event that the Trustee cannot take any action by reason of an actual or potential conflict of interest, the Bankruptcy Court shall appoint a non-conflicted person or entity to take such action in the Trustee's place and stead, including without limitation the retention of professionals (which may include professionals retained by the Trustee) for the purpose of taking such actions.

8.3     Quarterly Working Capital Reports.  Pursuant to Article V.D of the Plan, with respect to the 12-month period starting upon the Effective Date, the Reorganized Debtor shall provide quarterly reports to the Trustee regarding whether the Reorganized Debtor's new working capital falls below $2,000,000 (tested on a quarterly basis, with the first test conducted following the three-month period starting with the first full month after the Effective Date).   The Reorganized Debtor shall provide such reporting to the Trustee within 30 days following the conclusion of each quarter.

# ARTICLE IX

## SELECTION, REMOVAL, REPLACEMENT AND COMPENSATION OF TRUSTEE

9.1     Initial Trustee.  The Trustee has been selected by the Committee and is appointed effective as of the Effective Date.  The initial trustee shall be the Trustee.

9.2     Term of Service.   The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's death, incapacity, dissolution, liquidation, resignation or removal.  In the event the Trustee's appointment terminates by reason of

death, incapacity, dissolution, liquidation, resignation or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

9.3     Removal of Trustee.  Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause.

9.4     Resignation of Trustee.  The Trustee may resign at any time on written notice to the Trust Oversight Committee.  The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty days (30) after the date such notice is filed with the Bankruptcy Court if the Bankruptcy Case is still open and served on the United States Trustee.  In the event of a resignation, the resigning Trustee shall render to the successor Trustee a full and complete accounting of monies and assets received, disbursed and held during the term of office of that Trustee.

9.5     Appointment of Successor Trustee.  Upon the death, incapacity, dissolution, liquidation, resignation or removal of a Trustee, a successor Trustee shall be appointed by  Trust Oversight Committee.  Any successor Trustee so appointed shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee.

9.6     Powers and Duties of Successor Trustee.  A successor Trustee shall have all the rights, privileges, powers and duties of its predecessor under this Agreement, the Plan and the Confirmation Order.

9.7     Trust Continuance.  The death, incapacity, dissolution, liquidation, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

9.8     Compensation of Trustee and Costs of Administration.  The Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases, which shall be a charge against and paid out of the Trust Assets. All reasonable costs, expenses and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental or related thereto) shall be paid by the Trust from the Trust Assets prior to any Distribution to the Beneficiaries.  The terms of the compensation of the Trustee are set forth on Exhibit A hereto.

9.9     Appointment of Supplemental Trustee.  If any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, and a Person qualified to act as trustee in such state or other jurisdiction is required, the Trustee shall nominate and appoint a Person duly qualified to act as trustee with respect to such Trust Assets (the "Supplemental Trustee") in such state or jurisdiction and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  The Trustee may confer upon such Supplemental Trustee all of the rights, powers, privileges and duties of the

Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary). The Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all Trust Assets. Subject to Article VIII of this Agreement, the Trustee may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## POST-CONSUMMATION TRUST OVERSIGHT COMMITTEE

10.1    <u>Trust Oversight Committee</u>. As of the Effective Date, the Oversight Committee shall be comprised of (i) Bees Brothers, LLC; (ii) Buoye Honey; (iii) Little Bee Impex; (iv) Citrofrut SA de CV; and (v) Delta Food International Inc. (each, a "Member", and, collectively, the "Members"). Should any of the Members resign from or otherwise cease to serve on the Trust Oversight Committee, replacements, if any, may be selected by the remaining Members acting by majority vote.

10.2    <u>Trust Oversight Approval</u>.    Except as otherwise expressly provided herein, a majority vote of the Members shall constitute an act or decision of the Trust Oversight Committee. If the event of a tie vote, the Trustee shall be deemed a voting Member for the sole purpose of breaking any such tie vote of the Trust Oversight Committee. The Trustee may make recommendations for the action or inaction of the Trust Oversight Committee via email on seven (7) days' notice (the "Voting Period"), and in the absence of a majority of the Members rejecting the recommendation within the Voting Period, the recommendation shall be deemed to have been approved by a majority of the Members.

10.3    <u>Reports to Trust Oversight Committee</u>. Notwithstanding any other provision of this Agreement, the Trustee shall report to the Oversight Committee as may be requested by the Oversight Committee, not less than quarterly of the first year following the Effective Date, which reports shall include such matters and information as reasonably requested by the Trust Oversight Committee. The Trust Oversight Committee shall keep all such information strictly confidential, except to the extent the Trust Oversight Committee deems it reasonably necessary to disclose such information to the Bankruptcy Court (in which case, a good faith effort shall be made to file such information under seal).

10.4    <u>Actions Requiring Approval of the Trust Oversight Committee</u>. Notwithstanding anything to the contrary in the Plan or herein, the Trustee shall obtain the approval of the Trust Oversight Committee prior to taking any of the following actions, which approval may be by affirmative vote of the Trust Oversight Committee or upon notice pursuant to the procedures set forth in 10.2 above:

10.4.1 The commencement of any Cause of Action against any third parties, not including claim objections;

10.4.2 The settlement, compromise, withdrawal, dismissal or other resolution of any (i) Claims or Objections to Claims by the Trust where the amount set forth in the Claim exceeds $250,000 of the amount set forth in the Trust's books and records as being owed pursuant to such Claim; and (ii) Cause of Action by the Liquidating Trust if the amount sought to be recovered in the complaint or other document initiating such Cause of Action exceeds $100,000;

10.4.3 The sale, transfer, abandonment, assignment, or other disposition of any Trust Assets having a valuation in excess of $50,000;

10.4.4 The borrowing of any funds by the Liquidating Trust or pledge of any portion of the Trust Assets;

10.4.5 The exercise of any right or action set forth in this Agreement that expressly requires approval of the Trust Oversight Committee;

10.4.6 The amount and timing of distributions from the proceeds of Trust Assets;

10.4.7 The establishment or setting of the Disputed Reserves or any other reserves in aid of distribution and opening, maintaining and administering bank accounts as necessary to discharge the duties of the Trustee under the Plan and this Agreement; or

10.4.8 The payment of the Trustee's invoices.

10.5 In the event that the Trustee cannot take any action, including, without limitation, the prosecution of any Causes of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Trustee Oversight Committee acting by a majority shall be authorized to take any such action(s) in his place and stead, including without limitation, the retention of professionals (which may include professionals retained by the Trustee) for such purpose of taking such actions.

10.6 <u>Investments</u>. The Trust Oversight Committee may authorize the Trust to invest the Trust Assets in prudent investments other than those described in Section 345 of the Bankruptcy Code.

10.7 <u>Compensation of Oversight Committee</u>. The Trust Oversight Committee Members shall be entitled to reimbursement of reasonable out-of-pocket expenses incurred in such Member's duty on behalf of the Oversight Committee.

# ARTICLE XII

## DURATION OF TRUST

11.1 <u>Duration</u>. Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

11.2 <u>Termination After No Further Pursuit of Causes of Action</u>. At such time as: (a) the Trustee determines that the pursuit of additional Trust Causes of Action is not likely to yield

sufficient additional proceeds to justify further pursuit of such claims, and (b) all distributions of Distributable Proceeds required to be made by the Trustee to the Beneficiaries under the Plan have been made, the Trust shall terminate and be dissolved, and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination and dissolution under relevant law.

11.3    Termination After Five Years.  If the Trust has not been previously terminated pursuant to Article 11.2 hereof or extended in accordance with this Section, on the fifth anniversary of the Effective Date, the Trustee shall Distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall terminate and be dissolved and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in Section 11.5 of this Agreement.  Notwithstanding the foregoing, the Trust shall not terminate on the fifth anniversary of the Effective Date if the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, upon motion within the six-month period before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Trust Assets.

11.4    No Termination by Beneficiaries.  The Trust may not be terminated at any time by the Beneficiaries.

11.5    Continuance of Trust for Winding Up; Discharge and Release of Trustee.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the final Distribution of the Trust Assets including all excess reserves, the Trustee shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee and its employees, professionals and agents of any further duties, and discharging and releasing the Trustee from all liability related to the Trust.

# ARTICLE XIII

## MISCELLANEOUS

12.1    Cumulative Rights and Remedies.  The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

12.2    Notices.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Beneficiaries at the addresses appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed), addressed as follows:

13-58200-wsd    Doc 379-4    Filed 12/31/13    Entered 12/31/13 01:02:32    Page 51 of 56

SltnTrst  LLC
Attn:  Peter Kravitz
16830 Ventura Blvd., Suite 160
Encino, CA 91436
pkravitz@solutiontrust.net

with a copy to

Pachulski Stang Ziehl & Jones LLP
Attn: Bradford J. Sandler
Attn:  Shirley S. Cho
919 North Market Street, 17th Floor
Wilmington, DE 19801
bsandler@pszjlaw.com
scho@pszjlaw.com

or to such other address as may from time to time be provided in written notice by the Trustee.

12.3 <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

12.4 <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

12.5 <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

12.6 <u>Execution</u>.  All funds in the Trust shall be deemed in custodia legis until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court (or applicable appellate court).  Payments will be governed solely by the Plan, the Confirmation Order and this Agreement.

12.7 <u>Amendment</u>.  This Agreement may be amended only by order of the Bankruptcy Court.

12.8 <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

12.9 <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

12.10    Severability.  If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

12.11    Further Assurances.  Without limitation of the generality of Section 2.4 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

12.12    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

12.13    Jurisdiction.  The Bankruptcy Court shall have jurisdiction over the Trust, the Trustee, and the Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.  The Bankruptcy Court shall have exclusive jurisdiction and venue to hear and finally determine all matters among the Parties arising out of or related to this Agreement or the administration of the Trust.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**GROEB FARMS, INC.**


By:
Name:
Title:


**SLTNTRST LLC**


By:
Name:  Peter Kravitz
Title:  Principal

# Exhibit A

## Terms of Compensation of Trustee

$**7,500** per month **plus actual and necessary reasonable expenses**, subject to periodic increases by the Trust Oversight Committee

**Exhibit B**

**Plan**

See attached